No. 12-3433

# UNITED STATES COURT OF APPEALS
# FOR THE
# THIRD CIRCUIT

DOE, *et al*,
*Plaintiffs-Appellants*,

v.

WILMINGTON HOUSING AUTHORITY, *et al*,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Delaware,
No. 1:10-cv-00473 (Hon. Leonard P. Stark)

## OPENING BRIEF FOR APPELLANTS
## JANE DOE AND CHARLES BOONE

Francis G.X. Pileggi
Penelope O'Connell
Jill Agro
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667

*Attorneys for Appellants Jane Doe and
Charles Boone*

Dated: October 23, 2012

**Request for Oral Argument**

Pursuant to Local Appellate Rule 34.1, Appellants respectfully request oral argument. Oral argument will likely assist the parties in explaining their positions to the Court. Additionally, oral argument will assist the Court in obtaining a response to questions it may have concerning the proceedings below and issues presented, and in deciding this appeal, which involve novel issues under Delaware law which the Delaware courts have not addressed, including fundamental constitutional rights.

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... v

Jurisdictional Statement ............................................................................. 1

Statement of Issues Presented for Review ................................................. 2

Statement of the Case ................................................................................ 4

Statement of Facts ..................................................................................... 7

Summary of the Argument .......................................................................... 11

Argument ................................................................................................... 14

I.  RESIDENTS' MOTION FOR CERTIFICATION OF QUESTIONS
    OF STATE LAW TO THE SUPREME COURT OF THE STATE OF
    DELAWARE ......................................................................................... 14

    A.  Only The State-Law Issues are Presented in this Appeal and
        they Should be Certified to the Delaware Supreme Court ................... 14

II. RESIDENTS' QUESTIONS OF STATE LAW ARE APPROPRIATE
    FOR CERTIFICATION TO THE DELAWARE
    SUPREME COURT ............................................................................. 15

    A.  Do the Common Area and Reasonable Cause Provisions
        Violate the Delaware Constitution? ................................................. 18

    B.  Are WHA's Provisions Preempted by State Law? .............................. 20

    C.  Did the WHA Exceed the Scope of the Authority Granted
        to it by its State Enabling Statute? ................................................. 21

III. SHOULD THE STATE-LAW ISSUES NOT BE CERTIFIED TO,
     AND ACCEPTED FOR DECISION BY, THE DELAWARE
     SUPREME COURT, THIS CASE SHOULD BE REMANDED TO
     THE DISTRICT COURT AND DISMISSED WITHOUT
     PREJUDICE ........................................................................................ 22

IV. THE TRIAL COURT ERRONEOUSLY APPLIED FEDERAL
    INTERMEDIATE SCRUTINY ANALYSIS TO STATE-LAW
    CONSTITUTIONAL CLAIMS THAT THE COMMON AREA AND
    REASONABLE CAUSE PROVISIONS VIOLATE ARTICLE I,
    SECTION 20 OF THE DELAWARE CONSTITUTION ............................ 25

  A.  The District Court Incorrectly Applied Federal Intermediate
      Scrutiny to Residents' State-Law Claims ...............................................26

  B.  The Delaware Constitution Affords Broader Protection of the
      Fundamental Right to Bear Arms than the Second Amendment
      of the United States Constitution .............................................................33

V.  BECAUSE SECTION 20 IS NOT A "MIRROR IMAGE" OF THE
    SECOND AMENDMENT, DELAWARE COURTS WILL NOT
    FOLLOW IN "LOCK STEP" WITH FEDERAL INTERPRETATIONS
    OF THE SECOND AMENDMENT ...........................................................35

  A.  The Common Area Provision Cannot Survive Strict Scrutiny ..............35

  B.  Neither the Common Area Provision Nor the Reasonable Cause
      Provision Can Survive Intermediate Scrutiny .......................................39

  C.  The Common Area Provision is Constitutionally Infirm Because
      It Requires Residents to Trade a Fundamental Right for a
      Government Benefit ................................................................................40

VI. THE COMMON AREA AND REASONABLE CAUSE
    PROVISIONS ARE PREEMPTED BY STATE LAW ...............................42

  A.  Implied Preemption: The Delaware General Assembly has
      Passed a Comprehensive Regulatory Scheme in the Field
      of Firearm Possession ...........................................................................43

  B.  Express Preemption: The General Assembly has Reserved
      Its Own Exclusive Authority to Regulate in the Field of
      Firearm Possession ...............................................................................45

      1.  The Reserve Clause preempts the WHA's Provisions .............45

      2.  The WHA is preempted as a municipal government ...............46

  C.  The Reasonable Cause Provision is Also Preempted ...........................50

VII. THE WHA HAS EXCEEDED THE SCOPE OF ITS AUTHORITY ..........51

Conclusion ...............................................................................................53

# TABLE OF AUTHORITIES

**CASES**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ..................................40

*A.W. Fin. Servs., S.A. v. Empire Res., Inc.,*
    981 A.2d 1114 (Del. 2009)..................................................................20

*Application of Wolstenholme*, 1992 WL 207245
    (Del. Super. Aug. 20, 1992) ...............................................................26

*Blinder, Robinson & Co. v. Bruton,* 552 A.2d 466 (Del. 1989) ...........................26

*Cantinca v. Fontana*,
    884 A.2d 468 (Del. 2005).............................................................43, 44

*Combs v. Homer Center Sch. Dist.*,
    468 F. Supp. 2d 738 (W.D. Pa. 2006) ...................................................23

*Combs v. Homer-Center Sch. Dist.*,
    540 F.3d 231 (3d Cir. 2008) ........................................................23, 24

*Delaware v. Bender*, 293 A.2d 551 (Del. 1972) .....................................46

*Delaware v. Chuchola*, 120 A. 212 (Del. Gen. Sess. 1922) ....................................46

*Delaware v. Griffin*,
    2011 WL 2083893 (Del. Super. May 16, 2011)......................................... *passim*

*Delaware v. Mitchell*,
    2001 WL 1729134 (Del. Super. Nov. 27, 2001) ........................................ 29-30

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...........................28, 32, 34, 35

*Doe v. Portland Hous. Auth.*, 656 A.2d 1200 (Me. 1995).................................48, 49

*Doe v. Wilmington Hous. Auth.*,
    2012 WL 3065285 (D. Del. July 27, 2012) ..................................................*passim*

*Dorsey v. Delaware*, 761 A.2d 807 (Del. 2000).........................................29, 30, 32

*DuPont v. DuPont*, 85 A.2d 724 (1951) ...................................................46

*Elrod v. Burns*, 427 U.S. 347 (1976) .............................................. 40-41

*Fiat Motors of N. Am. v. Wilmington*, 498 A.2d 1062 (Del. 1985) ........................47

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) ................................ 24-25

*Griffin v. Delaware*, 47 A.3d 487 (Del. 2012) ................................*passim*

*Guy Montag Doe, et al. v. San Francisco Hous. Auth., et al.*,
No. CV-08-03112 (N.D. Cal. Jan. 12, 2009) ........................................40

*Hetherton v. Sears, Roebuck & Co.*, 652 F.2d 1152 (3d Cir. 1981)........................41

*Holt v. Richmond Redev. & Hous. Auth.*,
266 F. Supp. 397 (E.D. Va. 1966)........................................................41

*Hudson United Bank v. LiTenda Mortg. Corp.*,
142 F.3d 151 (3d Cir. 1998)................................................................23

*Jones v. Delaware*, 745 A.2d 856 (Del. 1999) ...................................29, 32

*Kerns v. Dukes*, 707 A.2d 363 (Del. 1998) ............................................17

*Konstantopoulos v. Wastvaco Corp.*, 690 A.2d 936 (Del. 1996) ..................... 17-18

*Kreshtool v. Delmarva Power & Light Co.*,
310 A.2d 649 (Del. Super. 1973) ........................................... 49-50, 52

*Mason v. Delaware*, 534 A.2d 242 (Del. 1987)........................................19

*Massie v. United States HUD*, 620 F.3d 340 (3d Cir. 2010) ...................................48

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) ...................................*passim*

*Orr v. Orr*, 440 U.S. 268 (1979) ............................................................28

*Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146 (Del. 1997) ............................17

*Rickards v. Delaware*, 45 Del. 573 (Del. 1950) .......................................20

*Salve Regina College v. Russell*, 499 U.S. 225 (1991)................................26, 42, 51

*Sanders v. Delaware*, 585 A.2d 117 (Del. 1990) ...................................29

*Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*,
730 F.2d 910 (3d Cir. 1984)................................................................24

*Skomorucha v. Wilmington Hous. Auth.*,
504 F. Supp. 831 (D. Del. 1980) .......................................................47

*Turnbull v. Fink*, 668 A.2d 1370 (Del. 1995) ...................................*passim*

*United States v. Anderson*, 669 A.2d 73 (Del. 1995) ...........................................15

*United States v. Gatlin*, 613 F.3d 374 (3d Cir. 2010) ..............................................50

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)................................36, 39

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011).................................32

*United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009) ...........................................39

*Wilmington Hous. Auth. v. Williamson*, 228 A.2d 782 (Del. 1967) ......................47

*Wilmington Med. Ctr., Inc. v. Bradford*, 382 A.2d 1338 (Del. 1978) ....................26

*Wilmington Vitamin & Cosmetic Corp. v. Tigue*,
  183 A.2d 731 (Del. Super. 1962) .......................................................................52

*Wisconsin v. Hamdan*, 665 N.W. 2d 785 (Wis. 2003)......................................27, 38

## <span style="font-variant: small-caps">Statutes and Constitutions</span>

28 U.S.C. § 1291 (West 2012)..................................................................................1

28 U.S.C. § 1331 (West 2012)..................................................................................1

28 U.S.C. § 1367 (West 2012)....................................................................1, 22, 23

Del. Code Ann. tit. 9, § 330 (West 2012) ...............................................................42

Del. Code Ann. tit. 10, § 7102 (West 2012) ...........................................................45

Del. Code Ann. tit. 11, § 1441 (West 2012) ................................................8, 44, 50

Del. Code Ann. tit. 11, § 1441A (West 2012) ...................................................44, 50

Del. Code Ann. tit. 11, § 1442 (West 2012) ...............................................30, 44, 50

Del. Code Ann. tit. 11, § 1444 (West 2012) ...........................................................44

Del. Code Ann. tit. 11, § 1448 (West 2012) ...........................................................44

Del. Code Ann. tit. 11, § 1448A (West 2012) .........................................................44

Del. Code Ann. tit. 11, § 1457 (West 2012) ....................................................... 44-45

Del. Code Ann. tit. 14, § 9004 (West 2012) ...........................................................45

Del. Code Ann. tit. 22, § 111 (West 2012) ..................................................42, 48, 49

Del. Code Ann. tit. 22, § 835 (West 2012) ..............................................................48

Del. Code Ann. tit. 24, § 901 (West 2012) ...........................................44

Del. Code Ann. tit. 24, § 902 (West 2012) ...........................................44

Del. Code Ann. tit. 24, § 903 (West 2012) ...........................................44

Del. Code Ann. tit. 24, § 904 (West 2012) ...........................................44

Del. Code Ann. tit. 24, § 904A (West 2012) .........................................44

Del. Code Ann. tit. 31, § 4002 (West 2012) .........................................46

Del. Code Ann. tit. 31, § 4301 (West 2012) .........................................47

Del. Code Ann. tit. 31, § 4302 (West 2012) ....................................7, 51

Del. Code Ann. tit. 31, § 4303 (West 2012) .........................................47

Del. Code Ann. tit. 31, § 4304 (West 2012) .........................................46

Del. Code Ann. tit. 31, § 4308 (West 2012) ..............................7, 47, 51

Del. Code Ann. tit. 31, § 4314 (West 2012) .........................................47

Me. Rev. Stat. Ann. tit. 25, § 2011 (2012).............................................49

U.S. Const. amend. II ..........................................................................9

Del. Const. art. I, § 6 .........................................................................32

Del. Const. art. I, § 7 (1897) ..............................................................26

Del. Const. art. I, § 20 ..................................................................*passim*

Del. Const. art. I (end) .......................................................................45

Del. Const. art. IV, § 11, cl. 8 ...........................................................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ................................................................................1

Del. Supr. Ct. R. 41 .............................................................. 14-50, 20

L.A.R. Misc. 110.1.......................................................................14, 16

Memorandum from Chief Justice Myron T. Steele to Panel Members of the 2009 Third Circuit Judicial Conference (http://thirdcircuitbar.org/2009_conference_materials/Certified_Questions_Memo_-_DE.pdf) ...............................................18

Del. Op. Att'y Gen., No. 79-F013, 1979 WL 29005 (Nov. 30, 1979) ................................................... 47-48

Tx. Op. Att'y Gen., No. DM-71, 1991 WL 527492 (Dec. 31, 1991) .............................................. 48-49

Stephen P. Halbrook, *Securing Civil Rights: Freedmen, The Fourteenth Amendment and the Right to Bear Arms* (2010) ...................................................32

Randy J. Holland, *The Delaware State Constitution: A Reference Guide* (2002).....................................................................................19, 33

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............................................................32

## Jurisdictional Statement

The District Court had jurisdiction over the trial court proceedings based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. The District Court exercised supplemental jurisdiction over Plaintiffs-Appellants' state-law claims pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment granting Wilmington Housing Authority's motion for summary judgment under Federal Rule of Civil Procedure 56.

The District Court entered a final judgment on July 30, 2012, disposing of all parties' claims. Plaintiffs-Appellants filed their Notice of Appeal on August 27, 2012.

**Statement of Issues Presented for Review**

1.  The Wilmington Housing Authority's lease provisions prohibit lawful

    possession of a firearm in common areas of the public housing facility, and

    require residents to make available for inspection copies of any

    documentation required by law for possession of a firearm. This raises the

    following complex issues of Delaware law:

    a.  Whether the provisions violate the right to keep and bear arms under

        Article I, § 20 of the Delaware Constitution, which provides broader

        protection than that provided by the Second Amendment of the United

        States Constitution. A341-A342 (D.I. 40, Second Am. Compl. ¶¶ 48-

        53); A480-A481 (D.I. 95, Opening Br. in Support of Pls.' Mot. for

        Summ. J. at 17-18).

    b.  Whether the provisions exceed the Authority's powers granted by

        state law. A345 (D.I. 40, Second Am. Compl. ¶¶ 63-66); A616-A617

        (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at

        37-38).

    c.  Whether the provisions are preempted by state law. A342-A345 (D.I.

        40, Second Am. Compl. ¶¶ 54-62); A613-A616 (D.I. 103, Pls.'

        Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 34-37).

2.  Whether, given that the Delaware courts have not spoken to the above

    issues, this Court should certify these questions of state law to the Delaware

Supreme Court, or alternatively remand the case to the district court with directions to dismiss the state-law claims without prejudice on the basis that its dismissal of the federal claims left that court without supplemental jurisdiction to decide the state-law claims.

**Statement of the Case**

Plaintiff-Appellant Jane Doe filed the initial complaint in this case in the Delaware Court of Chancery on May 26, 2010, challenging the Wilmington Housing Authority's ("WHA") policies barring the possession of firearms in residents' homes; Plaintiff-Appellant Charles Boone joined the action on August 6, 2010. A52-A61 (D.I. 1 Ex. A, Verified Compl.); A290-A301 (D.I. 23, Am. Compl.). Defendants-Appellees removed the case to the United States District Court for the District of Delaware on June 1, 2010. A47-A49 (D.I. 1, Notice of Removal).

At Defendants' request, the District Court stayed the proceedings pending the WHA's board meeting on October 25, 2010, at which the WHA adopted a new firearms policy in response to Plaintiffs-Appellants complaint, but retained restrictions that unlawfully limit the rights of residents.[1] A365-A366 (WHA Firearms and Weapons Policy).

Plaintiffs-Appellants filed an amended complaint on December 6, 2010, challenging the constitutionality based on both the Delaware Constitution and the United States Constitution, of two amended provisions of the WHA's firearms policy that prohibit the lawful possession of a firearm in the common areas of their

---

[1] Defendant Purnell notified the WHA board of directors that the WHA's original weapons policy would have to be amended to comply with Delaware law on February 3, 2010, but the revised weapons policy was not adopted until October 25, 2010, after the complaint in this case was filed. A389, A393-A394 (Dep. Tr. of Frederick S. Purnell, Sr. at 27, 39-40).

public housing facilities and require residents to present a firearms license on demand. A340-A342 (D.I. 40, Second Am. Compl. ¶¶ 38-53). Plaintiffs further alleged that the WHA exceeded the scope of its statutorily granted authority by implementing these provisions, and also that the WHA's provisions are preempted by Delaware law. A342-A345 (D.I. 40, Second Am. Compl. ¶¶ 54-66).

The parties filed cross-motions for summary judgment on all counts of the complaint on February 21, 2011. (D.I. 86; D.I. 88). The District Court, by opinion and order dated July 27, 2012, denied Plaintiffs' motion for summary judgment and granted Defendants' motion for summary judgment. A4-A28 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285 (D. Del. July 27, 2012)); A2 (D.I. 115, Order). In its opinion, the District Court ruled that: (i) the common area provision is constitutional based on an intermediate scrutiny analysis under both the federal and Delaware constitutions, A22, A23-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 17, * 19-* 21); (ii) it predicted that the Delaware Supreme Court would construe Article I, § 20 of the Delaware Constitution to be identical with federal jurisprudence construing rights guaranteed by the Second Amendment, A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21); and (iii) the WHA has authority to restrict, and is not preempted from restricting the lawful use and possession of firearms, A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22).

The District Court issued an implementing judgment on July 30, 2012. A3

(D.I. 116). This appeal followed, in which only state-law issues are being argued.

**Statement of Facts**

Plaintiffs-Appellants Jane Doe and Charles Boone ("Residents") reside in public housing facilities owned or managed by the Wilmington Housing Authority ("WHA") in Delaware. A107 (D.I. 20, Decl. by Frederick S. Purnell, Sr. ¶¶ 2-3); A333 (D.I. 40, Second Am. Compl. ¶¶ 1, 2).

Defendant-Appellee WHA is a non-profit agency of the state of Delaware, created pursuant to 31 *Del. C.* § 4303, that provides housing to low-income families and individuals in the City of Wilmington. A107 (D.I. 20, Decl. by Frederick S. Purnell, Sr. ¶ 1). Delaware statutes confer upon the WHA the power to acquire property, improve conditions, construct facilities, borrow money, and sue and be sued. *See* 31 *Del. C.* §§ 4302, 4308. A465 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 2). Defendant-Appellant Frederick S. Purnell, Sr. is the WHA's executive director.[2] A107 (D.I. 20, Decl. by Frederick S. Purnell, Sr. ¶ 1).

All residents of the WHA facilities must abide by the WHA Firearms and Weapons Policy (as amended after Residents filed this lawsuit), which states in pertinent part:

Residents, members of a resident's household, and guests:
*        *        *
 3. Shall not display or carry a firearm or other weapon in any common area, except where the firearm or other weapon is being

---

[2] Purnell and WHA are collectively referred to as "WHA" for the reader's convenience.

transported to or from the resident's unit, or is being used in self-defense [the "Common Area Provision"].

4. Shall have available for inspection a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership, possession, or transportation of any firearm or other weapon, including a license to carry a concealed weapon as required by 11 *Del. C.* § 1441, upon request, when there is reasonable cause to believe that the law or this Policy has been violated [the "Reasonable Cause Provision"].[3]

\*　　\*　　\*

Noncompliant residents are subject to immediate eviction.

A365-A366 (WHA Firearms and Weapons Policy).

Residents initially challenged the constitutionality of these provisions under both Article I, § 20 of the Delaware Constitution and the Second Amendment of the United States Constitution, both of which guarantee the fundamental right to keep and bear arms—but the Delaware Constitution provides more extensive protection. A340-A342 (D.I. 40, Second Am. Compl. ¶¶ 38-53).

Only those state-law issues are being challenged now on appeal. The more expansive language of Article I, Section 20 of the Delaware Constitution provides: "A person has the right to keep and bear arms for *the defense of self, family, home and State, and for hunting and recreational use*." Del. Const. art. I, § 20 (emphasis

---

[3] The Common Area Provision and the Reasonable Cause Provision are collectively referenced as the "Provisions."

added).[4] Comparatively, the Second Amendment only provides that " . . . the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II.

The Delaware courts have "recognize[d] the breadth of Article I, Section 20 of the Delaware Constitution" but the Delaware Supreme Court has not specifically addressed the issue presented here: whether Delaware provides greater rights to its citizens to bear arms than the federal constitution—a "critical issue" presented to the District Court.[5] A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21). Without authoritative guidance from the Delaware Supreme Court, the District Court "predict[ed] that, if faced with the instant dispute, the Delaware Supreme Court, in interpreting the Delaware Constitution, would look to [recent federal case law] and other authority from the U.S. Supreme Court and Third Circuit construing the Second Amendment." A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21).

Based on that prediction, the District Court applied the same federal "intermediate scrutiny" standard to Residents' claims under both the state and federal constitutions, and did not recognize greater rights under the Delaware Constitution (despite the broader scope of its text), in finding that the WHA's

---

[4] The text of each statute and constitutional provision cited herein is included in an addendum to this brief.

[5] *Delaware v. Griffin*, 2011 WL 2083893, at * 8 (Del. Super. May 16, 2011) (hereinafter "*Griffin I*") ("This Court recognizes the breadth of Article I, Section 20 of the Delaware Constitution . . . .") (conviction reversed and case remanded at *Griffin v. Delaware,* 47 A.3d 487 (Del. 2012) (hereinafter "*Griffin II*") (holding that Delaware recognizes the right to carry a concealed weapon in the home) (*see infra* Section IV(A)).

Common Area and Reasonable Cause Provisions are constitutional. A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21).

Likewise, the District Court's prediction of how the Delaware Supreme Court would decide the unchartered issues of whether the WHA had power to impose the restrictions at issue, or whether the restrictions are preempted by state law, led to findings that state law authorized, and did not preempt, the restrictions. A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22).

**Summary of the Argument**

This Court should certify the fundamental state-law issues, to which this appeal is limited, for a determination by the Delaware Supreme Court. The key state constitutional issues are based on Article I, Section 20 of the Delaware Constitution, which is more extensive than its federal counterpart in the Second Amendment of the United States Constitution, and protects a Delaware citizen's "right to keep and bear arms for the defense of **self, family, home, and State, and for hunting and recreational use.**" Del. Const. art. I, § 20 (emphasis added). The Second Amendment guarantees the "right to bear arms" without the additional express references to the protection of family or to activities outside the home.

The District Court in this case predicted incorrectly that the Supreme Court of Delaware would follow federal court precedent interpreting the more limited scope of the Second Amendment to construe the protections afforded by the broader scope of Article I, Section 20 of the Delaware Constitution. The central issue raised in the trial court was whether Article I, Section 20 protects the rights of low-income public-housing residents to keep and bear arms in the "common areas" of the public-housing facilities where they reside—a right that is expressly prohibited by the WHA's lease provisions.

The District Court incorrectly held that the prohibitive lease provisions do not run afoul of the fundamental rights provided for in the Delaware Constitution, based on an analysis using the intermediate level of constitutional scrutiny rather

than the more rigorous strict scrutiny standard, which we argue is the appropriate level of scrutiny for state action that infringes, as here, on guaranteed, fundamental rights. The District Court erred further by: (a) misclassifying the WHA as a "state agency" empowered with the authority to regulate firearm use and possession—a power that the Delaware General Assembly reserved for itself; and (b) determining that the restrictions on the use of firearms were not preempted by Delaware's comprehensive regulatory scheme in the field of firearm use and possession.

Moreover, the WHA's foray into firearm regulation overstepped the scope of its state enabling statute by which it was granted limited authority to provide public housing.

These quintessential issues of Delaware law are presented without any controlling state authority to guide this Court, and in the absence of any remaining issues of federal law on appeal, these issues are well-suited for certification to the Delaware Supreme Court—the state's highest court. This is especially true because these novel issues require the interpretation of fundamental rights enshrined by the Delaware Constitution's Bill of Rights.

While the District Court exercised supplemental jurisdiction over the state-law claims raised in this matter, supplemental jurisdiction no longer exists, and the remaining issues of state law should be certified to the Delaware Supreme Court for resolution. Likewise, due to the absence of any federal issues or controlling federal law, if this Court refuses to certify the state-law issues on appeal to the

Delaware Supreme Court, or if the Delaware Supreme Court refuses to accept certification, this Court should remand this case to the District Court with instructions to dismiss the state-law issues without prejudice in order to allow the complaining parties to assert their rights in Delaware's state courts.

**Argument**

## I.   RESIDENTS' MOTION FOR CERTIFICATION OF QUESTIONS OF STATE LAW TO THE SUPREME COURT OF THE STATE OF DELAWARE[6]

Residents hereby move this Honorable Court to certify questions of state law to the Supreme Court of Delaware, pursuant to this Court's Local Appellate Rule 110.1, and Article IV, § 11, cl. 8 of the Delaware Constitution, as well as Delaware Supreme Court Rule 41.

### A.   Only State-Law Issues are Presented in this Appeal and they Should be Certified to the Delaware Supreme Court

Local Appellate Rule 110.1 provides, in part:

> When the procedures of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court . . . may certify such a question to the state court in accordance with the procedures of that court, and will stay the case in this court to await the state court's decision whether to accept the question certified . . . .

L.A.R. Misc. 110.1.

Delaware's Constitution permits various state and federal courts to certify questions of law to the Delaware Supreme Court where "there are important and urgent reasons for an immediate determination of such questions by it . . . ." Del. Const. art. IV, § 11, cl. 8. Further, Delaware Supreme Court Rule 41(a)(ii) provides for certification of questions of law to it by this Court by motion of a

---

[6] Pursuant to Local Appellate Rule 110.1, this motion for certification must be part of Appellant's Opening Brief. L.A.R. Misc. 110.1 ("The certification will be made after the briefs are filed in this court. A motion for certification must be included in the moving party's brief.")

party "if there is an important and urgent reason for an immediate determination of such question or questions by [the Supreme Court of Delaware] and the certifying court . . . has not decided the question or questions in the matter."

Delaware's Supreme Court accepts certification in its own discretion. Del. Supr. Ct. R. 41(b). *See, e.g., United States v. Anderson*, 669 A.2d 73, 79 (Del. 1995) ("Generally, this Court should answer certified questions only when the answer may be determinative of the outcome of the underlying litigation in the certifying court and there is no controlling precedent of this Court."). Among the reasons why the Supreme Court would accept certification from this Court include those situations where there exists:

> (i) [an] original question of law. The question of law is of the first instance in [Delaware];" or "(iii) [an] unsettled question. The question of law relates to the constitutionality, construction or application of a statute of [Delaware] which has not been, but should be, settled by the Court.

Del. Supr. Ct. R. 41(b)(i), (iii).

## II. RESIDENTS' QUESTIONS OF STATE LAW ARE APPROPRIATE FOR CERTIFICATION TO THE DELAWARE SUPREME COURT

This appeal is taken following the denial of Residents' motion for summary judgment and granting of the WHA's motion for summary judgment in which the District Court erroneously predicted that: (i) the Delaware Supreme Court would not protect Residents' right to bear arms under the Delaware Constitution in the face of the WHA's Provisions; (ii) Delaware's comprehensive statutory scheme for regulating firearms would not preempt the WHA from adopting unconstitutional

policies; and (iii) the WHA did not exceed the authority granted to it by its state enabling statute. A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21-* 22).

Only state-law issues are presented in this appeal. The very nature of this appeal is based on questions arising under the laws of Delaware that will "control the outcome of a case pending in . . . [this] court . . . ." L.A.R. Misc. 110.1. No federal issues are presented in this appeal.

Residents posit that the following questions need to be certified to the Delaware Supreme Court, and that they fall squarely within the Supreme Court's requirements under its Rule 41:

(1) Whether the WHA's Provisions (a) forbidding Residents to possess firearms in the housing facilities' common areas, and (b) requiring presentation of firearm licenses on demand by WHA personnel, violate Article I, Section 20 of the Delaware Constitution. A480-A481 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 17-18); A341-A342 (D.I. 40, Second Am. Compl. ¶¶ 48-53 ). Section 20 provides: "A person has the right to keep and bear arms for the defense of self, family, home, and State, and for hunting and recreational use." Del. Const. art. I, § 20.

(2) Whether the WHA's Common Area and Reasonable Cause Provisions are preempted by state law. A613-A616 (D.I. 103, Pls.' Answering Br. in Opp'n to

Defs.' Mot. for Summ. J. at 34-37); A342-A344 (D.I. 40, Second Am. Compl. ¶¶ 54-62).

(3) Whether the WHA exceeded the authority granted to it by its state enabling statute. A616-A617 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 37-38); A345 (D.I. 40, Second Am. Compl. ¶¶ 63-66).

These are all questions of state law only and are matters of first impression in Delaware, as they have never before been decided by a Delaware state court, and there is very little case law or commentary in general regarding Article I, Section 20.

There is no controlling federal law applicable to these state-law issues on appeal.

This Court has certified questions to the Delaware Supreme Court in the past and has used those state-law determinations with success.[7] The appeal before this

---

[7] In 1998, the Delaware Supreme Court accepted certification from this Court in *Kerns v. Dukes*, 707 A.2d 363, 366-67 (Del. 1998) (on appeal from dismissal from the District Court, asking the Supreme Court to consider whether the trial courts in Delaware had jurisdiction over the plaintiffs' claims following a dismissal from the District Court and in light of "a potential tension" between Superior Court and Court of Chancery decisions as to whether the courts of Delaware could provide plaintiffs with "a plain, speedy, and efficient" remedy). In 1997, this Court certified four issues of first impression to the Delaware Supreme Court. *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1148-50 (Del. 1997) (asking the Delaware Supreme Court to apply Delaware law to contract principles in a diversity case on appeal and applying the "first manifest doctrine" as a defense to liability). In 1996, this Court certified two state-law questions asking for an interpretation of Delaware's Workers' Compensation Act in an appeal of a sexual harassment case where the District Court dismissed plaintiff's state-law claims and held a bench trial on the federal claims. *Konstantopoulos v. Wastvaco Corp.*, 690 A.2d 936 (Del.

Court currently necessitates an examination of questions and interpretations at the heart of the Delaware Constitution. No Delaware court has decided the state-law issues pending before this Court. Residents urge this Court to seek guidance from the Delaware Supreme Court, which is inherently best suited to address them.

### A. Do the Common Area and Reasonable Cause Provisions Violate the Delaware Constitution?

The District Court held that the WHA's Provisions do not violate Residents' rights under Section 20, stating:

> Nothing in the language of the Delaware constitutional provision speaks directly to the possession of firearms in common areas of public housing facilities. Thus, the Court predicts that, if faced with the instant dispute, the Delaware Supreme Court, in interpreting the Delaware Constitution, would look to . . . [federal authority] . . . construing the Second Amendment."

A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21).

Residents disagree.[8] The Delaware Constitution affords more and broader

---

1996). *See also Memorandum to Panel Members of the 2009 Third Circuit Judicial Conference*, by Chief Justice Myron T. Steele, available at http://thirdcircuitbar.org/2009_conference_materials/Certified_Questions_Memo_-_DE.pdf) (Memorandum to the Panel Members, in which Chief Justice Steele addresses the process by which the Delaware Supreme Court accepts certified questions (included in the addendum to this brief).

[8] The District Court held that Residents have standing to assert their constitutional claims because they "suffer an actual and imminent threat of an injury-in-fact that is personal to them by being threatened with eviction solely as a result of engaging in what they contend are protected Second Amendment rights." A13-A14 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 6). Indeed, the District Court recognized that Residents' standing was not eviscerated because they do not currently possess firearms or because they testified that the WHA Firearms and Weapons Policy is reasonable. A13-A14 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 6). Rather, Residents have

protection than the Second Amendment, and the District Court erroneously predicted how the Delaware Supreme Court would rule on the state-law issues now on appeal.[9]

The WHA's Common Area and Reasonable Cause Provisions violate Residents' rights under the Delaware Constitution, and are offensive to the laws of Delaware. A341-A342 (Second Am. Compl. ¶¶ 48-53). The Common Area Provision forbids Residents to possess firearms in the common areas of the housing facilities. A473, A476 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 10, 13 n. 17). The Reasonable Cause Provision requires Residents to present firearm licenses if suspected of carrying a firearm in violation of the Common Area Provision. A365 (WHA Firearms and Weapons Policy ¶ 4). These Provisions violate Section 20, as asserted *infra* at Sections IV and V.[10]

---

standing because they "believe the WHA policies are unconstitutional and violate their constitutional rights—regardless of whether these policies are 'good' or 'reasonable' policies," which is evident by their initiation and prosecution of this action. A13-A14 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 6).

[9] Indeed, Justice Randy Holland of the Delaware Supreme Court explained in his treatise on the Delaware Constitution published in 2002 that Section 20 "affords greater protections under the Delaware Constitution than the protection of the Second Amendment…." A650 (Randy J. Holland, *The Delaware State Constitution: A Reference Guide* 67 (2002)).

[10] *Compare generally* Delaware and federal law regarding unreasonable searches and seizures. *Mason v. Delaware*, 534 A.2d 242, 248 (Del. 1987) ("The expressed terms of the State and federal Constitutions provide that right [to be secure in one's home] is to be secure against 'unreasonable searches and seizures.' Nonetheless, the history of the constitutional provisions limiting searches and seizures leaves little doubt that searches and seizures are presumptively 'unreasonable' unless they are authorized by warrants, issued upon probable cause, and supported by oath or

Accordingly, Residents ask this Court to certify the state-law questions presented in this appeal to the Delaware Supreme Court as matters of first impression, that are the only issues on appeal. It is "important and urgent" (*see* Del. Supr. Ct. R. 41(a)(ii)), that the Supreme Court address the state-law implications of this constitutional challenge, for otherwise Delaware's High Court will not have an opportunity to address these state-law issues of life and liberty before this Court rules. A fundamental and natural right of the citizens of Delaware who reside in government-supplied housing is being infringed upon, and there are few jurisprudential issues more important than protection of our citizens' fundamental constitutional rights.

### B.     Are WHA's Provisions Preempted by State Law?

"'Preemption' refers to circumstances where the law of a superior sovereign takes precedence over the laws of a lesser sovereign." *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1121 (Del. 2009). The District Court erred in predicting that, because the WHA is not expressly preempted by Delaware statutory provisions, the Delaware Supreme Court would not find that the "WHA's firearms policies are implicitly preempted." A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22).

---

affirmation before a neutral judicial officer, subject to a few exceptions justified by absolute necessity."); *Rickards v. Delaware*, 45 Del. 573, 583-85 (Del. 1950) ("We believe that as long as the Constitution of this state contains the guarantees to the citizen referred to, we have no choice but to use every means at our disposal to preserve those guarantees.").

Residents argue that this question, too, needs to be certified to the Delaware Supreme Court, as this is an issue of first impression under Delaware law. As argued *infra* in Section VI, this issue presents an important question of Delaware law that should be presented to the Delaware Supreme Court in the first instance, especially in light of there being no federal-law issue presented in this appeal.

## C. Did the WHA Exceed the Scope of the Authority Granted to it by its State Enabling Statute?

The District Court disagreed with Residents' preemption claim that the WHA exceeded its statutorily granted authority. A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22). As argued *infra* in Section VII, this issue presents an important question of Delaware law that should be presented to the Delaware Supreme Court, as it impacts thousands of Delaware citizens living in WHA facilities, as well as many more who visit those residential locations.

Residents ask this Court to certify the state-law question of whether the WHA exceeded the scope of its statutorily granted authority because it is an issue of first impression, and the District Court erroneously predicted that the Delaware Supreme Court would find that the WHA did not exceed the authority granted in its enabling statute by unilaterally restricting Residents' fundamental right to bear arms.[11]

---

[11] Should this Court decide to certify these questions to the Delaware Supreme Court, this Court need not address the substantive issues in the remainder of this brief at this time.

## III. SHOULD THE STATE-LAW ISSUES NOT BE CERTIFIED TO, AND ACCEPTED FOR DECISION BY, THE DELAWARE SUPREME COURT, THIS CASE SHOULD BE REMANDED TO THE DISTRICT COURT AND DISMISSED WITHOUT PREJUDICE

In the alternative, should this Court choose not to certify the questions above to the Delaware Supreme Court, or should the Delaware Supreme Court decline to accept certification, Residents ask this Court to remand this case to the District Court, where the state claims should be dismissed without prejudice, based on applicable law.

Section 1367(a) of Title 28 of the United States Code provides that where a district court has original jurisdiction of a civil action, it also has supplemental jurisdiction over related claims. 28 U.S.C. § 1367(a). However, § 1367(c) provides in part that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law" or "the district court has dismissed all claims over which it has original jurisdiction . . . ."

In this case, the District Court rejected the federal claims over which it had original jurisdiction, and decided the state-law claims over which it had supplemental jurisdiction. A23-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 19 - * 22). Those claims, however, involve novel and complex issues of Delaware law that should be decided by the Delaware Supreme Court.

Although § 1367 addresses action by the district courts, it has also been used as a guidepost by the courts of appeals. In this case, if this Court does not certify

the state-law issues to the Delaware Supreme Court, or if it does so but that court declines to accept the case, this Court should remand the state-law claims to the District Court with directions to dismiss them without prejudice based on the authority in § 1367.

This Circuit took that approach in *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231 (3d Cir. 2008) (*per curiam*), *cert. denied*, 555 U.S. 1138 (2009).[12] *Combs* affirmed the district court's grant of summary judgment on the federal-law issues, over which it had original jurisdiction. *Id.* at 253. However, the Court noted that the state law at issue – the Pennsylvania Religious Protection Act – "is an issue of first impression and a matter of Pennsylvania law." *Id.* (citing § 1367(c)(1), (3)). *Combs* clarified that § 1367 provides courts "the discretion to refuse to exercise supplemental jurisdiction when 'values of judicial economy, convenience, fairness, and comity' counsel that the district court remand state claims to a state forum." *Id.* at 253-54 (citing *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir. 1998)). *Combs* then held:

> A decision to remand under section 1367 "reflects the court's judgment . . . that at the present stage of litigation it would be best for supplemental jurisdiction to be declined so that state issues may be adjudicated by a state court." [citation omitted]
>     [The] only remaining claim involves the interpretation of a state statute on which there is no Pennsylvania precedent. Because all federal issues have been decided on summary judgment and since [the] RFPA claim raises a novel and potentially complex issue of

---

[12] The district court had dismissed all federal claims as well as a state-law claim on the merits, rather than declining to exercise jurisdiction on the state-law claim. *Combs v. Homer Center Sch. Dist.*, 468 F. Supp. 2d 738, 780 (W.D. Pa. 2006).

State law, we will decline to exercise supplemental jurisdiction over [the] pendent state law claim. 28 U.S.C. § 1367(c).

*Id*. at 254.

So too, in the instant appeal, supplemental jurisdiction over the state-law issues should be declined. The Third Circuit added in *Combs*: "we found that 'where the underlying issue of state law is a question of first impression with important implications for public education in Pennsylvania, factors weighing in favor of state court adjudication certainly predominate.'" *Id*. at 254 n.33 (quoting *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.,* 730 F.2d 910, 912-13 (3d Cir. 1984) (confirming that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances'")). Accordingly, the Third Circuit affirmed the district court's judgment on the federal constitutional claims **and vacated its holding on the state-law claim**. *Id*. at 254. That should be the same result in the instant case, based on similar circumstances.

Other circuits follow the same rule. The Eighth Circuit in *Gregory v. Dillard's, Inc*., upheld the dismissal of federal civil rights claims, and remanded to modify the judgment to dismiss the state-law claim without prejudice. 565 F.3d 464, 466 (8th Cir. 2009) (*en banc*), *cert. denied*, 130 S. Ct. 628 (2009). The state-law claim, over which the district court had exercised supplemental jurisdiction, concerned the Missouri Human Rights Act ("MHRA"), which raised "a novel question of state law." *Id*. at 477. Because the federal claims were properly dismissed, the court explained: "we remand the case with directions to modify the

final judgment so as to dismiss the claims under the MHRA *without* prejudice, so they may be decided by the courts of Missouri." *Id.*

The Court added: "In most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state claims are dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity and to promote justice between the parties." *Id.* (citations omitted). That situation is nearly identical to the instant case before this Circuit.

Accordingly, if the questions presented in this case are not certified to the Delaware Supreme Court, or if that court declines to accept certification, the state-law issues should be remanded to the District Court, consistent with the weight of authority, with instructions to vacate its judgment dismissing the state-law claims and to enter judgment dismissing the state-law claims without prejudice, in order to permit Residents to assert their state-law claims in the Delaware state court.

## IV. THE TRIAL COURT ERRONEOUSLY APPLIED FEDERAL INTERMEDIATE SCRUTINY ANALYSIS TO STATE-LAW CONSTITUTIONAL CLAIMS THAT THE COMMON AREA AND REASONABLE CAUSE PROVISIONS VIOLATE ARTICLE I, SECTION 20 OF THE DELAWARE CONSTITUTION[13]

The District Court improperly applied federal "intermediate scrutiny" in analyzing Residents' claims that the Common Area and Reasonable Cause Provisions violate the Delaware Constitution. The Common Area Provision, which

---

[13] The following arguments move beyond Residents' requests for certification or remand, and address Residents' substantive arguments.

prohibits Residents from carrying or possessing a firearm in the common areas of

their low-income housing complex unless it is being transported to or from their

units, violates Residents' core fundamental right to bear arms pursuant to Article I,

§ 20 of the Delaware Constitution in contravention of Delaware law.[14] A591 (D.I.

103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 12).

A. **The District Court Incorrectly Applied Federal Intermediate Scrutiny to Residents' State-Law Claims**

A court of appeals reviews a district court's determination of state law *de novo*, and owes no deference to the District Court's statutory interpretation analysis. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

The Delaware Supreme Court reviews a challenge to the constitutionality of

a statute in "'varying but consonant' terms." *Wilmington Med. Ctr., Inc. v.

Bradford*, 382 A.2d 1338, 1342 (Del. 1978). Historically, Delaware affords due

process protection that is "coextensive with the due process protection of the

United States Constitution." *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 472

(Del. 1989) (*citing* Del. Const. art. I, § 7 (1897)). While it is not clear that

---

[14] *Compare Griffin II*, 47 A.3d at 490 ("[T]he right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use" is a fundamental right in Delaware as is the right to a concealed weapon in one's home), *with Application of Wolstenholme*, 1992 WL 207245, at * 1 (Del. Super. Aug. 20, 1992) (granting with restrictions plaintiff's application for a license to carry a concealed weapon), *appeal dismissed*, 620 A.2d 859 (Del. Jan. 11, 1993) (a **license** to carry a concealed deadly weapon is not a fundamental right). The Delaware Supreme Court's decision in *Griffin II* and the U.S. Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), challenge the validity of the ruling in the *Wolstenholme* case.

Delaware courts utilize the same levels of scrutiny used by the federal courts to analyze the constitutionality of challenged state statutes, even under the federal standards, the District Court should have applied strict scrutiny to Residents' state-law claims challenging the constitutionality of the Provisions under the Delaware Constitution.[15] A473-A476 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 10-13). For the purpose of this appeal, Residents assume that the Delaware courts would choose from among the same levels of scrutiny in analyzing the constitutionality of the Provisions as prescribed by the federal courts.

The District Court reviewed Residents' state-law claims under federal "intermediate scrutiny," which, in Delaware, is "intended primarily for cases involving classifications based upon gender or illegitimacy," and thus, was not the

---

[15] For instance, in *Griffin II*, the Delaware Supreme Court did not use a "level of scrutiny" analysis to determine if Delaware's "concealed carry" statute was constitutional under the Delaware Constitution. 47 A.3d at 490-91. Rather, the court adopted a three-part test used by the Wisconsin Supreme Court to decide:

> whether the CCDW statute is unconstitutional as applied. First, the court must compare the strength of the state's interest in public safety with the individual's interest in carrying a concealed weapon. Second, if the individual interest outweighs the state interest, the court must determine, 'whether an individual could have exercised the right in a reasonable, alternative manner that did not violate the statute.' Third, the individual must be carrying the concealed weapon for a lawful purpose.

*Id.* (citing *Wisconsin v. Hamdan*, 665 N.W. 2d 785 (Wis. 2003)). *But see Turnbull v. Fink*, 668 A.2d 1370, 1379 (Del. 1995) (discussing the strict, intermediate, and rational basis standards of scrutiny in determining the constitutionality of liability limitation statutes under the Delaware Constitution).

appropriate standard of scrutiny in this case.[16] *Turnbull*, 668 A.2d at 1379. For instance, intermediate scrutiny is appropriate when a statute provides different rights for men than it does for women. *See, e.g., Orr v. Orr*, 440 U.S. 268 (1979) (invalidating statute that required husbands, but not wives, to pay alimony upon divorce). Here, the Provisions do not create classifications; rather, the Provisions infringe on Residents' fundamental rights. A336 (D.I. 40, Second Am. Compl. ¶ 18).

"[W]here the state action infringes upon a 'fundamental right' . . . , the more rigorous 'strict scrutiny' test will be applied." *Turnbull*, 668 A.2d at 1379. The core, fundamental purpose of the right to bear arms is to allow citizens to protect themselves in their homes. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). Indeed, the United States Supreme Court found that "'the need for defense of self, family, and property is most acute' in the home." *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3036, 3042 (2010) (citing *Heller*, 554 U.S. at 679) (holding that "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty").

The Provisions infringe on Residents' fundamental rights; accordingly, the Delaware Supreme Court would apply strict scrutiny in assessing the validity of

---

[16] To survive intermediate scrutiny, the Provisions must "serve important governmental objectives and [must be] substantially related to achievement of those objectives." *Turnbull*, 668 A.2d at 1379.

the Common Area Provision and the Reasonable Cause Provision under the Delaware Constitution.[17] *Turnbull*, 668 A.2d at 1379 ("where the state action infringes upon a 'fundamental right' . . . , the more rigorous 'strict scrutiny' test will be applied").

Further, the District Court erred in its analysis of the more robust rights guaranteed by the Delaware Constitution. The Delaware Constitution is not a mirror image of the federal constitution, therefore, Delaware courts must construe the rights guaranteed by the Delaware Constitution separately from the rights guaranteed by the federal constitution. *Dorsey v. Delaware,* 761 A.2d 807, 814 (Del. 2000); *see also Sanders v. Delaware*, 585 A.2d 117, 145 (Del. 1990) (following federal constitutional jurisprudence in lockstep "would be relinquishing an important incident of this State's sovereignty").

Especially where Delaware protections have been found to be more expansive than their federal counterparts, courts must separately construe federal and state constitutional provisions. *Jones v. Delaware*, 745 A.2d 856, 863 (Del. 1999). For instance, in *Jones*, the Delaware Supreme Court concluded that the search and seizure provisions in the Delaware Constitution reflected different and broader protections than those guaranteed by the Fourth Amendment. *See also Delaware v. Mitchell*, 2001 WL 1729134, at * 2 (Del. Super. Nov. 27, 2001)

---

[17] Residents are not appealing the District Court's application of intermediate scrutiny to Residents' Second Amendment claims (as compared to the claims based on the broader Delaware Constitution).

(analyzing "Delaware constitutional standards for police investigatory and detention stops first because, in this area, the Delaware constitution provides greater protection to its citizens than the Federal Constitution"); *Dorsey*, 761 A.2d 807, 814 (Del. 2000) (holding that "Delaware's citizens enjoy more rights, more constitutional protections, than the Federal Constitution extends to them" regarding protection from unreasonable governmental search and seizures).

Delaware's current scope of constitutional recognition of an individual right to bear arms was not incorporated into the Delaware Constitution until 1987, and it is just now beginning to be interpreted. *See Griffin II*, 47 A.3d 487. In *Griffin I* and *Griffin II*, the Delaware courts confirmed that Delaware provides a constitutional right to carry a concealed weapon in the home. *Griffin II*, 47 A.3d at 488. In that case, Griffin was convicted of carrying a concealed deadly weapon after he was arrested in his home while carrying a concealed knife. *Id.* at 489. After his conviction, he moved for a judgment of acquittal based on the right to bear arms found in Section 20. *Griffin I*, 2011 WL 2083893, at * 2. The sole issue considered by the trial court was whether Article I, Section 20 of the Delaware Constitution creates a "home-possession" exception to the general prohibition on carrying a concealed deadly weapon without a license found in 11 *Del. C.* § 1442. *Id.* at * 1. Under § 1442, "A person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so . . . ." *Id.* at * 3.

The trial court found that—assuming a "home-possession" exception to § 1442—Griffin's conviction should not be overturned because he did "not have a 'substantial' interest in carrying a concealed deadly weapon while belligerently defying lawful police orders and resisting a lawful arrest," even if he was in his home. *Id.* at * 10.

On appeal, the Delaware Supreme Court held that Delaware does recognize a "home-possession" exception, and that the Delaware Constitution "allow[s] a person to carry a concealed deadly weapon in his home, under certain circumstances." *Griffin II*, 47 A.3d at 488. Further, the court reversed Griffin's conviction for carrying a concealed deadly weapon and remanded the case because the jury was not properly instructed (i) about the home-possession exception, or (ii) to decide whether Griffin was given the opportunity to disclose that he was carrying the knife, and, if so, whether he did so truthfully. *Id.* at 491-92.

Federal case law interpreting the full measure of the Second Amendment is so recent, and relatively sparse, that the District Court refrained from taking a position on whether the right to "bear arms" exists outside the home.[18] However, despite the limited precedent available concerning Section 20, it should be read in a manner consistent with Delaware's tradition of robustly interpreting state

---

[18] "[T]he Court declines to determine whether Second Amendment rights extend outside of the 'hearth and home.'" A18 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 12). Of course, unlike the Second Amendment, Section 20 explicitly references the word "home," as well as activities for which a gun can be used outside the home, including self-defense, hunting, and recreational use.

constitutional rights as superseding the often less protective federal jurisprudence.

*Dorsey*, 761 A.2d at 820. This reasoning applies to Section 20—a fundamental right equally as compelling as the right to be free from unreasonable searches and seizures (Article I, § 6 of the Delaware Constitution), which the Delaware Supreme Court prioritized over the federal Fourth Amendment in *Jones*, 745 A.2d at 863 (holding that the search and seizure provisions in the Delaware Constitution reflected different and broader protections than those guaranteed by the Fourth Amendment). *See United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 756 (2011) (comparing Second Amendment rights to those provided by the First Amendment and holding that "any law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny").[19]

---

[19] Reviewing the historical context in which a constitutional provision was written has been described as a helpful approach to understanding the text. *See generally* A640-A641 (Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 400-01 (2012)) (discussing the historical context in which the Second Amendment was written to help one understand that the reference to the right to keep and bear arms was a recognition of a preexisting fundamental right, as opposed to conferring a new right) (citing *Heller*, 554 U.S. 570 (2008) (per Scalia, J.)); *see also* A644 (Stephen P. Halbrook, *Securing Civil Rights: Freedmen, The Fourteenth Amendment and the Right to Bear Arms* 95 (2010)) ("By passing the [second Freedmen's Bureau Act of 1868], Congress reaffirmed, during the same period in which the States would complete ratification of the Fourteenth Amendment, that the rights of personal security and personal liberty included 'the constitutional right to bear arms.'"). In his concurrence to the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), Justice Clarence Thomas referred to states that "enacted legislation prohibiting blacks from carrying firearms without a license," *Id*. at 3082, and quoted Frederick Douglass as stating that "the black man has never had the right either to keep or

**B.     The Delaware Constitution Affords Broader Protection of the Fundamental Right to Bear Arms than the Second Amendment of the United States Constitution**

Article I, Section 20 of the Delaware Constitution provides: "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." Del. Const. art. I, § 20. Delaware courts recognize "the breadth of Article I, § 20" as "more explicit and extensive than many other states' counterparts," but few cases have construed Section 20, leaving jurisprudence in this area virtually absent. *Griffin I*, 2011 WL 2083893, at * 8 (reversed and remanded on other grounds; *see supra* Section IV(A)).

Nonetheless, this constitutional provision is far more extensive and "affords greater protections" than the Second Amendment of the United States Constitution. *See* A650 (Randy J. Holland, *The Delaware State Constitution: A Reference Guide* 67 (2002)).

Recent United States Supreme Court decisions on Second Amendment rights are instructive, but they do not consider the expanded scope of Section 20, which provides an enhanced right to keep and bear arms beyond the more limited phraseology of the Second Amendment. A612 (D.I. 103, Pls.' Answering Br. in

---

bear arms," which would be remedied by adoption of the Fourteenth Amendment. *Id*. at 3083 (Thomas, J., concurring). (Parenthetically, when the National Association for the Advancement of Colored People ("NAACP") vindicated the rights of Rosa Parks in civil rights litigation, we do not recall arguments based on the collaboration between Ms. Parks and the NAACP's lawyers, as WHA suggested in this case in the District Court regarding the support of the minority Residents by another civil rights group.)

Opp'n to Defs.' Mot. for Summ. J. at 33). That minimum protection—the "right to keep and bear arms for lawful purposes, most notably for self-defense within the home"—was the core holding of *Heller*, 554 U.S. at 630. *See also McDonald*, 130 S. Ct. at 3044.

The Common Area Provision prohibits Residents from carrying a firearm in the common areas unless it is being transported to or from the Resident's unit or—while being transported it is being used in self-defense (*i.e.,* it cannot otherwise be used for self-defense in the common areas). A365 (WHA Firearms and Weapons Policy ¶ 3). In effect, this provision exposes Residents to robbery or other attacks when they are most vulnerable—without the ability to exercise their right to self-defense: while walking to visit another resident in another part of their building or housing complex at night, preparing meals in the communal kitchen, watching movies in the community room, or folding clothes in the laundry room. A587, A592 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 8, 13 n.16). Senior citizens such as the appealing Residents are more vulnerable to more youthful and "less well-behaved" occupants of public housing in such circumstances, as human nature and experience would suggest. A598 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 19).

The Reasonable Cause Provision requires Residents to present a firearms license on demand if they are suspected of violating the Common Area Provision. A365 (WHA Firearms and Weapons Policy ¶ 4).

The Common Area and Reasonable Cause Provisions infringe on Residents'
core, fundamental right to bear arms guaranteed by Section 20 by prohibiting
Residents from lawfully carrying a weapon for self-defense in their homes.
Accordingly, the District Court erred in applying "intermediate scrutiny," as
opposed to the more rigorous "strict scrutiny," to Plaintiffs' state-law claims.

## V. BECAUSE SECTION 20 IS NOT A "MIRROR IMAGE" OF THE SECOND AMENDMENT, DELAWARE COURTS WILL NOT FOLLOW IN "LOCK STEP" WITH FEDERAL INTERPRETATIONS OF THE SECOND AMENDMENT

### A. The Common Area Provision Cannot Survive Strict Scrutiny

The Common Area Provision effectively eliminates a WHA resident's
ability to defend herself with a firearm in the "common areas" of her residential
facility, making it virtually impossible for her to use firearms for the core lawful
purpose of self defense in those other parts of the building which should also be
viewed as part of her residence. *See Heller*, 554 U.S. at 630. The Common Area
Provision does not merely "regulat[e] the manner in which persons may lawfully
exercise their Second Amendment Rights," as the District Court held, A20-A21
(*Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 16); it infringes on a
fundamental right protected by the Delaware Constitution. Accordingly, strict
scrutiny is warranted. *Turnbull*, 668 A.2d at 1379 ("where the state action infringes
upon a 'fundamental right'. . . , the more rigorous 'strict scrutiny' test will be
applied").

"A governmental action survives strict scrutiny only where the state demonstrates that the test is narrowly tailored to advance a compelling government interest." *Turnbull*, 668 A.2d at 1379; *see also United States v. Marzzarella*, 614 F.3d 85, 97 n.14 (3d Cir. 2010) (same).[20] Residents have conceded that Delaware has an interest in the safety of its citizens, (D.I. 110, Summ. J. Hearing Tr. at 21:23-24); however, the Delaware Supreme Court has held that "[a] person's interest in keeping a concealed weapon is strongest when the weapon is in one's home or business and is being used for security. The state's interest is weakest in those circumstances because the concealed weapon presents a relatively minimal threat to public safety." *Griffin II*, 47 A.3d at 490-91.

The District Court held that "the 'common areas' covered by the Common Area Provision are not the 'hearth and home,'" such that those areas fall within the "core" of the Second Amendment's protections. A17 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 11). However, **the District Court also held that "the 'common areas' are also part of Plaintiffs' residences. The laundry rooms and TV rooms, for instance, are like similar rooms that are typically found in private residences."** A20 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 15).

---

[20] *Marzzarella* held that a ban on firearms with obliterated serial numbers did not have "the effect of prohibiting the possession of any class of firearms," and thus the ban "should merit intermediate, rather than strict, scrutiny." 614 F.3d at 97.

Despite this lack of symmetry, which suggests that the common areas do in fact fall within the "core" of the Second Amendment, the District Court applied intermediate scrutiny and determined that the Provisions did not violate the Second Amendment or the Delaware Constitution. A21-A22 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 17). However, because the common areas are more appropriately classified as part of Residents' "home," the District Court should have applied strict scrutiny in assessing the constitutionality of the Provisions.

The Delaware Superior Court's analysis of "what constitutes an individual's 'home'" for purposes of the home-possession exception to Delaware's concealed-carry law in *Griffin I*, also suggests that the District Court should have applied strict scrutiny. 2011 WL 2083893, at * 7 n.59 (reversed and remanded on different grounds; *see supra* Section IV(A)). There, the court stated: "Treatises construing statutory exceptions to carrying a concealed deadly weapon indicate that, generally, the exception is implicated if one **'lives on' the premises at issue.**" *Id.* (emphasis added); *see also Griffin II*, 47 A.3d at 491 ("it would be unreasonable to 'restrict the manner in which one could carry a legal weapon from room to room within one's home . . .'"). This reasoning should apply to rooms within an apartment building, as here, that are part of one's living spaces even if they are not private or exclusive areas.

The Common Area Provision cannot satisfy the "narrow tailoring" requirement because it violates Residents' core fundamental right to protection in the home. A604 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 25). Denying Residents the right to bear arms when they are in the common areas of their apartment buildings is an infringement of their core, fundamental right to protect themselves in their residences. In this case their residences happen to include residential units within a high rise apartment building. A589 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 10 n.14); s*ee also* A642 (http://www.whadelaware. org/Communities/parkview.php) (describing the building where Jane Doe resides as a "high rise building"). Even if the Common Area Provision enhances the public welfare to a "slight degree, the offending statute is void as an invalid exercise of the police power." *Wisconsin v. Hamdan*, 665 N.W. 2d 785, 805 (Wis. 2003) (reasoning of *Hamdan* was subsequently adopted by the Delaware Supreme Court in *Griffin II*, 47 A.3d at 491).

The state's interest in the safety of its public housing facilities should not justify the heavy-handed effect of the Common Area Provision, *i.e.,* only allowing Residents to exercise the right to self-defense when they are on the inside of the door to their units, but not recognizing their rights on the other side—within the same building.[21] Moreover, the Common Area Provision imposes a burden on

---

[21] WHA did not consider or review any relevant crime statistics in formulating the WHA Firearms and Weapons Policy. A604 (D.I. 103, Pls.' Answering Br. in

conduct protected by Section 20, and is not narrowly tailored to achieve a compelling state interest. Accordingly, it should be invalidated.

**B.    Neither the Common Area Provision Nor the Reasonable Cause Provision Can Survive Intermediate Scrutiny**

Alternatively, if this Court determines that the District Court correctly applied "intermediate scrutiny," the Common Area Provision still would not pass constitutional muster under the heightened rights recognized in Section 20. To withstand intermediate scrutiny, the WHA must establish that the Common Area Provision serves an "important," "significant," or "substantial" government interest (in this case, safety), and that there is a "reasonable fit" between the Common Area Provision and that interest. *See Marzzarella*, 614 F.3d at 98.

There is no evidence that there is a "reasonable fit" between the Common Area Provision and safety, or the Reasonable Cause Provision and safety. A604-A605 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 25-26). It does not suffice merely to utter the word "safety" without establishing a nexus between the asserted governmental objective and the Common Area Provision. *United States v. Skoien*, 587 F.3d 803, 814 (7th Cir. 2009) ("[T]he public benefits of the restrictions must be established by evidence, and not just asserted[;] . . . lawyers' talk is insufficient.") (quotation omitted). Critically, the WHA neglected to review any data, such as crime statistics or other information

---

Opp'n to Defs.' Mot. for Summ. J. at 25); A395-A396 (Dep. Tr. of Frederick S. Purnell, Sr. at 79-80).

regarding the policies of other public housing authorities,[22] which might have informed its decision as to whether the Common Area and Reasonable Cause Provisions would likely achieve any safety objective. A604 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 25). The statistical data Residents provided to the trial court indicate that the WHA's Common Area Provision actually makes Residents **less** safe. A607 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 28).

## C. The Common Area Provision is Constitutionally Infirm Because It Requires Residents to Trade a Fundamental Right for a Government Benefit

Finally, the Common Area Provision violates the Delaware Constitution because it improperly requires Residents to relinquish their fundamental right to bear arms in order to receive a public benefit (*i.e.,* housing). (Plaintiffs' Opening Brief at 14-15, D.I. 95); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996) (holding that conferral of governmental benefits may not be conditioned on the surrender of a constitutional right). "The denial of a public

---

[22] The WHA Firearms and Weapons Policy, which provides that WHA residents "Shall comply with all local, state, and federal legal requirements applicable to the ownership, possession, transportation, and use of firearms or other weapons. . . ," would have been sufficient to serve the WHA's interest in safety without infringing on Residents' fundamental right to bear arms. A365 (WHA Firearms and Weapons Policy ¶ 1). In a similar situation in California, the San Francisco Housing Authority, in response to a Second Amendment challenge, amended its firearms policy to prohibit only those activities which violate applicable law. *See* A645-A648 (*Guy Montag Doe, et al. v. San Francisco Hous. Auth., et al.*, No. CV-08-03112 (N.D. Cal. Jan. 12, 2009) (stipulation of settlement and dismissal); *see also* A473 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 10 n.13).

benefit may not be used by the government for the purpose of creating an incentive enabling it to achieve what it may not command directly." *Elrod v. Burns*, 427 U.S. 347, 361 (1976).

Residents, who by definition are living at WHA's residences because they cannot afford to live outside of public housing, cannot be forced to trade a fundamental constitutional right for a specific governmental benefit, *i.e.,* the benefit of living in low-rent facilities. *See, e.g., Holt v. Richmond Redev. & Hous. Auth.*, 266 F. Supp. 397, 401 (E.D. Va. 1966) ("[A] tenant's continued occupancy in a public housing project cannot be conditioned upon the tenant's foregoing his [First Amendment] rights.").

Residents seek only the same rights as other citizens in being able to keep and bear arms in full compliance with federal, state, and local law. There was a time, before adoption of the Delaware arms guarantee, when Delaware law imposed restrictions on purchase of a handgun by leaseholders that did not apply to freeholders. Even though it (incorrectly in hindsight) opined that no constitutional right was at stake, this Court in *Hetherton v. Sears, Roebuck & Co.*, 652 F.2d 1152, 1158-59 (3d Cir. 1981), invalidated the restriction, noting that "many very responsible citizens in Delaware do not own property," and concluding that "there is no rational basis to conclude that a freeholder would take the responsibility of identifying weapons purchasers more seriously than a leaseholder." Nor is there

any basis for the WHA to restrict the constitutional rights of Residents in a manner not applicable to persons who are not in need of public housing.

In sum, this Court should invalidate the Common Area Provision because it violates Section 20.

## VI. THE COMMON AREA AND REASONABLE CAUSE PROVISIONS ARE PREEMPTED BY STATE LAW

The District Court erred in holding that the WHA has the authority to regulate the use and possession of firearms despite the Delaware General Assembly's comprehensive regulatory scheme governing those protections. A court of appeals reviews a district court's determination of state law *de novo*, and owes no deference to the District Court's statutory interpretation analysis. *Salve Regina College*, 499 U.S. at 231.

The Delaware General Assembly has enacted a comprehensive regulatory scheme regulating the lawful possession and use of firearms thereby preempting the WHA's Common Area and Reasonable Cause Provisions. A613-A614 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 34-35). Additionally, Delaware expressly prohibits municipalities, counties, and county governments from regulating firearm possession. 22 *Del. C.* § 111; 9 *Del. C.* § 330(c). Although the WHA is neither a municipality nor a county government, it is not reasonable to suggest that the General Assembly intended to allow the WHA or other housing authorities in the state to restrict fundamental constitutional rights that cities and counties (sovereigns that are far superior to the WHA in the

governmental hierarchy) cannot lawfully restrict. A614-A616 (D.I. 103, Pls.'

Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 35-37).

The test in Delaware for determining whether a statute preempts a local

regulation is whether the General Assembly intended the state statute to be

exclusive of any regulation of the same subject. *Cantinca v. Fontana*, 884 A.2d

468, 473 (Del. 2005). Preemption may be express or implied. *Id.* Implied

preemption exists where the state and local regulations are inconsistent; or where,

as here, the legislature has enacted a comprehensive regulatory scheme "in such a

manner as to demonstrate a legislative intention that the field is preempted by state

law." *Id.* at 473 n.23. Express preemption "exists where the statutory text or

legislative history explicitly . . . demonstrates that the state statute is intended to

replace or prevail over any pre-existing laws or ordinances that govern the same

subject matter." *Id.* In this case, the General Assembly expressly preempted the

WHA from legislating gun laws through the Reserve Clause of the Delaware

Constitution.

Because the WHA is implicitly and expressly preempted from enacting the

Common Area and Reasonable Cause Provisions, they must be invalidated.

### A.    Implied Preemption: The Delaware General Assembly has Passed a Comprehensive Regulatory Scheme in the Field of Firearm Possession

The Delaware General Assembly's comprehensive regulatory scheme

regulating the lawful possession and use of firearms preempts the Common Area

and Reasonable Cause Provisions. *See Cantinca*, 884 A.2d at 473 n.23 (holding that preemption may be evidenced, *inter alia*, "where the legislature has enacted a comprehensive regulatory scheme in such a manner as to demonstrate a legislative intention that the field is preempted by state law.") (quotation omitted)).

Delaware's comprehensive regulatory scheme is comprised of many statutes governing the possession and use of firearms, including, but not limited to: a licensing requirement (24 *Del. C.* §§ 901, 902); prohibition of sales to minors or intoxicated persons (24 *Del. C.* § 903); requiring record keeping and criminal history checks (24 *Del. C.* §§ 904, 904A); requiring a license to carry a concealed weapon (11 *Del. C.* §§ 1441, 1441A, 1442); restrictions on the sale, use, and possession of sawed-off shotguns and machine guns (11 *Del. C.* § 1444); prohibiting certain persons from owning, using or purchasing firearms (11 *Del. C.* § 1448); and requiring a criminal background check prior to purchase/sale of a firearm (11 *Del. C.* § 1448A). A481-A482 (D.I. 95, Opening Br. in Support of Pls.' Mot. for Summ. J. at 18-19) .

This regulatory scheme includes specified *places* where firearms may not be possessed, which do not include public housing. For instance, firearms are restricted at a Safe School and Recreation Zone, which is defined to include "[a]ny building, structure, athletic field, sports stadium or real property owned, operated,

leased or rented by any public or private school . . . ." 11 *Del. C.* § 1457(c)(1).[23] A

criminal nuisance action may be brought "to abate the criminal nuisance existing

on those properties where illegal firearms exist and those who use illegal firearms

congregate. It is not intended to interfere with the right to lawful possession or use

of firearms by law abiding citizens." 10 *Del. C.* § 7102(c). This comprehensive

regulatory scheme demonstrates that the General Assembly intended to occupy the

field of gun control within the state, thus not allowing state agencies to contradict

such law.

The Common Area and Reasonable Cause Provisions are regulations of

firearms in a field that was intended to be occupied and regulated only by the

General Assembly. Thus, WHA's Provisions are preempted.

### B. Express Preemption: The General Assembly has Reserved Its Own Exclusive Authority to Regulate in the Field of Firearm Possession

#### 1. The Reserve Clause preempts the WHA's Provisions

Section 20, as the most recently adopted provision of the Delaware Bill of

Rights,[24] is immediately followed by the following declaration: "WE DECLARE

THAT EVERYTHING IN THIS ARTICLE IS RESERVED OUT OF THE

GENERAL POWERS OF GOVERNMENT HEREINAFTER MENTIONED."

Del. Const., art. I (end) (capitalization in original). This language creates a strong

---

[23] *See also* 14 *Del. C.* § 9004(b)(6) ("Rules and regulations governing the possession and use of firearms on campus by employees, students and visitors.").
[24] Article I of the Delaware Constitution is entitled "Bill of Rights."

presumption against restrictions on the fundamental rights contained in Article I, including Section 20.

The WHA, as a public housing authority created pursuant to "the general powers of government," is subject to the Delaware Bill of Rights. *See* 31 *Del. C.* §§ 4002, 4304 (2012) (statutes enabling creation of the WHA). Although this "reserve clause" has been only rarely mentioned by the courts,[25] it consists of "impressive words" and is based on Delaware's historical experiences that caution against wavering on fundamental liberties. *Delaware v. Chuchola*, 120 A. 212, 218 (Del. Gen. Sess. 1922) (Rodney, J., dissenting). However, even without reference to the reserve clause, it is fundamentally understood that the Delaware Constitution—and particularly the Bill of Rights—secures "certain unchangeable rights and remedies," including the right to bear arms. *DuPont v. DuPont*, 85 A.2d 724, 728 (1951).

### 2. The WHA is preempted as a municipal government

In addition, the District Court in this case improperly found that the WHA is a state agency, as opposed to an entity more akin to a municipal government for present purposes—that is expressly preempted from regulating the possession of firearms. A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22).

---

[25] *See generally*, *Delaware v. Bender*, 293 A.2d 551, 552 (Del. 1972) (holding that the Bill of Rights may be amended by the General Assembly).

The Delaware courts and the Attorney General have classified the WHA as either a "state agency" or a "municipal corporation," depending on the circumstances that make such a classification necessary, such as here. *See, e.g.,* A655-A657 (Del. Op. Att'y Gen., No. 79-F013, 1979 WL 29005 (Nov. 30, 1979)) (determining that the WHA is **not** a state agency for the purposes of representation by the Department of Justice); *Skomorucha v. Wilmington Hous. Auth.*, 504 F. Supp. 831, 836 (D. Del. 1980) (holding that the WHA is **not** a state agency for purposes of suit under § 1983); *but see Wilmington Hous. Auth. v. Williamson*, 228 A.2d 782, 788 (Del. 1967) (**superseded by statute on other grounds** as stated in *Fiat Motors of N. Am. v. Wilmington*, 498 A.2d 1062 (Del. 1985)) (holding that the WHA **is** a state agency entitled to raise the defense of sovereign immunity).

"Entities that constitute state agencies for some purposes do not necessarily do so for all purposes." Del. Op. Att'y Gen., No. 79-F013, 1979 WL 29005, at * 1. The Delaware Attorney General, in the opinion cited, considered several factors in deciding that the WHA is not a "state agency" that is entitled to be represented by the Delaware Department of Justice:

> It is manifest from the statutory scheme creating the WHA that it does not act as alter ego of the State. The WHA is a corporation [31 *Del. C.* § 4301(2)]; it has the power to sue and be sued [31 *Del. C.* § 4308(a)(5)]; and it may enter into contracts [*Id.*]. Significantly, the WHA has autonomy over its operations [31 *Del. C.* §§ 4303, 4308] and its creditors have no recourse against the State [31 *Del. C.* § 4314]. Furthermore, the WHA's area of operation is geographically limited; it does not extend throughout the State [*See* 31 *Del. C.* §§ 4303, 4308].

*Id.* at * 4. The same rationale requires this Court to distinguish the WHA and to treat it for this analysis as a municipal corporation without the power to enact rules that are expressly reserved for the state. A614-A616 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 35-37).

The Delaware General Assembly has expressly preempted "municipal governments" from regulating firearm possession:

> The municipal governments shall enact no law, ordinance or regulation prohibiting, restricting or licensing the ownership, transfer, possession or transportation of firearms or components of firearms or ammunition except that the discharge of a firearm may be regulated.

22 *Del. C.* § 111; *see also* 22 *Del. C.* § 835(a)(6) (prohibiting municipalities from passing laws restricting possession and use of firearms). These express statutes demonstrate the General Assembly's intent to occupy the field of firearm possession restrictions, thus not allowing "municipal governments" to contradict such law. *See Massie v. United States HUD*, 620 F.3d 340, 352 (3d Cir. 2010).

In the context of firearm regulation, other states have similarly held that public housing authorities are "municipal governments" (or the equivalent thereof) that they are preempted from regulating firearm usage where the legislature has demonstrated its intent to regulate the field. *See Doe v. Portland Hous. Auth.*, 656 A.2d 1200, 1204 (Me. 1995) (holding that the Portland Housing Authority is a "political subdivision" and preempted from regulating firearms); *see also Tx. Op. Att'y Gen.*, No. DM-71, 1991 WL 527492 (Dec. 31, 1991) (determining that public

housing authorities are municipal subdivisions and are subject to the same rules as municipalities).

In *Portland Housing Authority*, the Maine Supreme Court found that the Portland Housing Authority ("PHA") was considered a "political subdivision" for purposes of Maine's preemption statute, and was therefore preempted from regulating gun control through its lease provisions. *Portland Hous. Auth.*, 656 A.2d at 1205; A616 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 37). Maine's preemption statute, which is analogous to 22 *Del. C.* § 111, preempts political subdivisions from regulating matters pertaining to firearms. 25 Me. Rev. Stat. Ann. tit. 25, § 2011 (2012). As a "political subdivision," the PHA was statutorily preempted from regulating firearms through its lease provisions. *See Portland Hous. Auth.*, 656 A.2d at 1205. Accordingly, this Court should interpret § 111 broadly to prohibit state agencies from enacting forms of gun control, and likewise hold that the WHA is expressly preempted from doing so pursuant to this statute. A616 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 37).

In the alternative, if the Court finds that the WHA is a state agency, Delaware case law has held that a state agency has no authority other than that which is expressly conferred to it by the legislature. *See Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 654 (Del. Super. 1973) ("The powers of an

administrative agency must be exercised in accordance with the statute conferring power upon it.").

## C.    The Reasonable Cause Provision is Also Preempted

The WHA's Reasonable Cause Provision is also preempted by the Delaware General Assembly's comprehensive regulatory scheme. A314-A616 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 35-37). That provision requires residents of WHA facilities to "have available for inspection" "upon request" any weapons permit or license "when there is reasonable cause to believe that the law or [the WHA's lease provisions have] been violated." A365 (WHA Firearms and Weapons Policy ¶ 4). Residents are not aware of any legal authority (and the WHA has provided none), nor did the District Court rely on any, that would authorize a private citizen, such as a WHA employee, to demand to inspect another private citizen's license or permit based on a suspected lease violation. WHA employees do not have the authority that a law enforcement officer might in certain circumstances to require the showing of a firearm permit. *See United States v. Gatlin*, 613 F.3d 374, 378-79 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 534 (2010) (affirming conviction for possession of a concealed firearm, and holding that the police had reasonable suspicion to search defendant).

Because the Reasonable Cause Provision is far more restrictive than the state regulations requiring concealed weapons permits, it is preempted. *See* 11 *Del. C.* §§ 1441, 1441A, 1442.

In sum, the Delaware General Assembly has preempted the field of firearms regulation and would not have expected or allowed the various housing authorities throughout the state to develop their own firearms regulations.

## VII. THE WHA HAS EXCEEDED THE SCOPE OF ITS AUTHORITY

The WHA has acted outside the scope of its authority in enacting rules pertaining to gun control. A345 (D.I. 40, Second Am. Compl. ¶¶ 63-66). The District Court incorrectly held that the WHA did not exceed the scope of its authority by adopting the Common Area and Reasonable Cause Provisions. A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 22). A court of appeals reviews a district court's determination of state law *de novo*, and owes no deference to the District Court's statutory interpretation analysis. *Salve Regina College*, 499 U.S. at 231.

No authority has been granted to the WHA, through Chapter 43 of Title 31, or elsewhere, to enact forms of gun control. A617 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 38). Sections 4302 and 4308 of Title 31 enumerate the full extent of the WHA's powers:

> all powers necessary or appropriate in order that they may engage in low-rent housing and slum clearance projects . . . including the power to acquire property, to remove unsanitary or substandard conditions, to construct and operate housing accommodations and to borrow, expend and repay moneys for the purposes set forth in this chapter….

31 *Del. C.* § 4302. While § 4308 adds that the WHA is granted "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of

this chapter,"[26] there is not a single provision in Chapter 43 relating to the field of gun control. A617 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 38).

The WHA does not have any authority beyond that which is expressly conferred to it by the legislature. *See Kreshtool*, 310 A.2d at 654 ("The powers of an administrative agency must be exercised in accordance with the statute conferring power upon it. An agency's authority to act depends upon compliance with the procedural provisions laid down in the statute"). *See also Wilmington Vitamin & Cosmetic Corp. v. Tigue*, 183 A.2d 731, 740 (Del. Super. 1962) (citations omitted) (finding an agency may not decide matters outside of its statutorily granted authority).

Importantly, there exists no specific (or general) grant of power to the WHA to enact firearm regulations or rules. A617 (D.I. 103, Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. at 38). Had the General Assembly intended to grant the WHA the authority to enact forms of gun control, it would have specifically done so in § 4308. Accordingly, by implementing the Common Area and Reasonable Cause Provisions, the WHA exceeded the scope of its statutory authority.

---

[26] The more delineated powers conferred by § 4308 do not relate to the issues presented herein, but are included in the addendum to this brief.

## Conclusion

This Court should certify the questions of state law in this case to the Delaware Supreme Court. In the alternative, this Court should reverse the judgment of the district court regarding the state-law claims and remand the case to the district court with directions to dismiss the state-law claims without prejudice.

Respectfully submitted,

By: */s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Del. No. 2624)
Penelope O'Connell (Del. No. 4898)
Jill Agro (Del. No. 4629)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667

*Attorneys for Appellants Jane Doe*
Dated: October 23, 2012    *and Charles Boone*

## CERTIFICATE OF BAR MEMBERSHIP

I certify that I am a member of the bar of the United States Court of Appeals for the Third Circuit and am authorized to practice in this Court.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 31.1(c), I certify that the text of the electronic brief is identical to the text in the paper copies, and that the virus detection program, Symantec version 10.1.5, has been run on each file electronically filed via CM/ECF and that no virus was detected.

Pursuant to Fed. R. App. P. 32(a)(7)(c), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,809 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 7 in 14-point Times New Roman font.

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Del. No. 2624)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667
*Attorney for Appellants Jane Doe*
*and Charles Boone*

Dated: October 23, 2012