No. 12-3433

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DOE, *et al*,
*Plaintiffs-Appellants*,

v.

WILMINGTON HOUSING AUTHORITY, *et al*,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Delaware,
No. 1:10-cv-00473 (Hon. Leonard P. Stark)

## APPELLANTS' ADDENDUM OF STATUTES, CONSTITUTIONAL PROVISIONS, AND COURT RULES

Francis G.X. Pileggi
Penelope O'Connell
Jill Agro
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667

*Attorneys for Appellants Jane Doe and Charles Boone*

Dated: October 23, 2012

# TABLE OF CONTENTS

## STATUTES

28 U.S.C. § 1291 (West 2012) ...................................................................................1

28 U.S.C. § 1331 (West 2012) ...................................................................................2

28 U.S.C. § 1367 (West 2012) ...................................................................................3

Del. Code Ann. tit. 9, § 330 (West 2012) ................................................................5

Del. Code Ann. tit. 10, § 7102 (West 2012) ............................................................7

Del. Code Ann. tit. 11, § 1441 (West 2012) ............................................................9

Del. Code Ann. tit. 11, § 1441A (West 2012) ....................................................... 14

Del. Code Ann. tit. 11, § 1442 (West 2012) .......................................................... 18

Del. Code Ann. tit. 11, § 1444 (West 2012) .......................................................... 19

Del. Code Ann. tit. 11, § 1448 (West 2012) .......................................................... 20

Del. Code Ann. tit. 11, § 1448A (West 2012) ....................................................... 24

Del. Code Ann. tit. 11, § 1457 (West 2012) .......................................................... 29

Del. Code Ann. tit. 14, § 9004 (West 2012) .......................................................... 32

Del. Code Ann. tit. 22, § 111 (West 2012) ............................................................ 34

Del. Code Ann. tit. 22, § 835 (West 2012) ............................................................ 35

Del. Code Ann. tit. 24, § 901 (West 2012) ............................................................ 37

Del. Code Ann. tit. 24, § 902 (West 2012) ............................................................ 38

Del. Code Ann. tit. 24, § 903 (West 2012) ............................................................ 39

Del. Code Ann. tit. 24, § 904 (West 2012) ............................................................ 40

Del. Code Ann. tit. 24, § 904A (West 2012) ......................................................... 41

Del. Code Ann. tit. 31, § 4002 (West 2012) .......................................................... 42

Del. Code Ann. tit. 31, § 4301 (West 2012) .......................................................... 44

Del. Code Ann. tit. 31, § 4302 (West 2012) .......................................................... 46

Del. Code Ann. tit. 31, § 4303 (West 2012) .......................................................... 47

Del. Code Ann. tit. 31, § 4304 (West 2012) .......................................................... 49

Del. Code Ann. tit. 31, § 4308 (West 2012) .......................................................... 50

Del. Code Ann. tit. 31, § 4314 (West 2012) .......................................... 52

Me. Rev. Stat. Ann. tit. 25, § 2011 (2012)............................................. 53

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ................................................................. 55

Del. Const. art. I, § 6 ................................................................ 56

Del. Const. art. I, § 7 (1897) ........................................................ 57

Del. Const. art. I, § 20 .............................................................. 58

Del. Const. art. I (end)............................................................... 59

Del. Const. art. IV, § 11, cl. 8 ...................................................... 61

## COURT RULES

Del. Supr. Ct. R. 41 ................................................................. 63

Memorandum from Chief Justice Myron T. Steele to Panel Members
    of the 2009 Third Circuit Judicial Conference (http://thirdcircuitbar.org/
    2009_conference_materials/Certified_Questions_Memo_-_DE.pdf) ............ 65

**c**

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)
        → → **§ 1291. Final decisions of district courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)
      → → **§ 1331. Federal question**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 930; July 25, 1958, Pub.L. 85-554, § 1, 72 Stat. 415; Oct. 21, 1976, Pub.L. 94-574, § 2, 90 Stat. 2721; Dec. 1, 1980, Pub.L. 96-486, § 2(a), 94 Stat. 2369.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

▷

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
   ⌐▤ Part IV. Jurisdiction and Venue (Refs & Annos)
     ⌐▤ Chapter 85. District Courts; Jurisdiction (Refs & Annos)
       →→ **§ 1367. Supplemental jurisdiction**

**(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**(b)** In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

**(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

  **(1)** the claim raises a novel or complex issue of State law,

  **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

  **(3)** the district court has dismissed all claims over which it has original jurisdiction, or

  **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**(d)** The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.


CREDIT(S)

(Added Pub.L. 101-650, Title III, § 310(a), Dec. 1, 1990, 104 Stat. 5113.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 9. Counties
    Part I. Provisions Affecting All Counties
      ↱▣ Chapter 3. County Governments Generally
      ↱▣ Subchapter II. County Governments
      →→ **§ 330. General powers and duties**

(a) The county government of each county shall:

(1) Except as otherwise provided by law, have the direction, management and control of the business and finances of the respective counties; and

(2) Have full and complete jurisdiction over all matters and things now or hereafter vested by law in the county governments of the respective counties, or in, or appertaining to, the office of the county governing officials of each county; and

(3) Have and exercise every power, privilege, right and duty which belongs and appertains to the county governments of the respective counties, or to the office of the county governing officials of the county; and

(4) Have the power and authority to impose and collect by ordinance a tax upon the transfer of real property situate within unincorporated areas of the county, subject to the conditions and limitations provided in § 8102 of this title.

(b) The county governments of the several counties shall take care that:

(1) The affairs of the respective counties are administered with efficiency and economy; and

(2) The officers and employees of the counties, chosen and appointed by the county governments, shall faithfully perform the duties imposed upon them.

(c) The county governments shall enact no law or regulation prohibiting, restricting or licensing the ownership, transfer, possession or transportation of firearms or components of firearms or ammunition except that the discharge of a firearm may be regulated; provided any law, ordinance or regulation incorporates the justification

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

defenses as found in Title 11 of the Delaware Code.


CREDIT(S)

22 Laws 1901, ch. 54, § 5; 28 Laws 1915, ch. 76, § 4; 31 Laws 1920, ch. 13, § 17; 40 Laws 1935, ch. 126, § 6; 65 Laws 1985, ch. 133, § 2; 67 Laws 1990, ch. 415, § 1.

**Codifications:** Rev. Stat. Del. 1915, §§ 1018, 1048; Rev. Code Del. 1935, §§ 1153, 1219, 1230; 9 Del.C. 1953, § 341

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: August 3, 2011**

West's Delaware Code Annotated Currentness
  Title 10. Courts and Judicial Procedure
    Part IV. Special Proceedings
      Chapter 71. Criminal Nuisance Abatement
        → → § 7102. Purpose; construction

(a) This chapter shall be liberally construed and applied so as to promote its underlying purposes, which are:

(1) To authorize temporary and permanent abatement relief and other remedies to abate any criminal nuisance as defined herein;

(2) To eliminate locations that otherwise attract criminals, violence and the threat of violence associated with either illegal drug trade or any of the other nuisances defined herein;

(3) To abate drug nuisances and illegal drug activity as well as the other nuisances defined herein that otherwise reduce property values, injure legitimate businesses and commerce and erode the quality of life for law-abiding persons working or residing in or near these locations;

(4) To ensure that the civil actions and remedies authorized by this chapter be heard by the courts on a priority basis to expeditiously identify and abate all nuisances, particularly those involving illegal drug trade or activity; and

(5) To encourage owners, landlords, operators and managers of buildings, places or premises (hereinafter referred to as "premise") to take the affirmative steps necessary to prevent violations on their properties involving any of the above nuisances, particularly those involving illegal drug trade or activity.

(b) Any action brought pursuant to this chapter, regardless of the remedy or remedies sought or ordered, is intended to be by the General Assembly and shall be deemed to be an action for abatement of a criminal nuisance.

(c) Any action brought on the basis of a criminal nuisance defined at § 7103(5)b. of this title is intended to abate the criminal nuisance existing on those properties where illegal firearms exist and those who use illegal firearms congregate. It is not intended to interfere with the right to lawful possession or use of firearms by law abiding citizens.

CREDIT(S)

72 Laws 2000, ch. 484, § 1, eff. Aug. 4, 2000; 78 Laws 2011, ch. 161, §§ 3-7, eff. Aug. 3, 2011.

Current through 78 Laws 2012, chs. 204 - 363. Revisions by the Delaware Code Revisors were unavailable at the time of publication.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**c**

**Effective: February 3, 2010**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
          → → **§ 1441. License to carry concealed deadly weapons**

(a) A person of full age and good moral character desiring to be licensed to carry a concealed deadly weapon for personal protection or the protection of the person's property may be licensed to do so when the following conditions have been strictly complied with:

(1) The person shall make application therefor in writing and file the same with the Prothonotary of the proper county, at least 15 days before the then next term of the Superior Court, clearly stating that the person is of full age and that the person is desirous of being licensed to carry a concealed deadly weapon for personal protection or protection of the person's property, or both, and also stating the person's residence and occupation. The person shall submit together with such application all information necessary to conduct a criminal history background check. The Superior Court may conduct a criminal history background check pursuant to the procedures set forth in Chapter 85 of Title 11 for the purposes of licensing any person pursuant to this section.

(2) At the same time the person shall file, with the Prothonotary, a certificate of 5 respectable citizens of the county in which the applicant resides at the time of filing the application. The certificate shall clearly state that the applicant is a person of full age, sobriety and good moral character, that the applicant bears a good reputation for peace and good order in the community in which the applicant resides, and that the carrying of a concealed deadly weapon by the applicant is necessary for the protection of the applicant or the applicant's property, or both. The certificate shall be signed with the proper signatures and in the proper handwriting of each such respectable citizen.

(3) Every such applicant shall file in the office of the Prothonotary of the proper county the application verified by oath or affirmation in writing taken before an officer authorized by the laws of this State to administer the same, and shall under such verification state that the applicant's certificate and recommendation were read to or by the signers thereof and that the signatures thereto are in the proper and genuine handwriting of each. Prior to the issuance of an initial license the person shall also file with the Prothonotary a notarized certificate signed by an instructor or authorized representative of a sponsoring agency, school, organization or institution certifying that the applicant: (i) has completed a firearms training course which contains at least the below described minimum elements; and (ii) is sponsored by a federal, state, county or municipal law enforcement

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

agency, a college, a nationally recognized organization that customarily offers firearms training, or a firearms training school with instructors certified by a nationally recognized organization that customarily offers firearms training. The firearms training, course shall include the following elements:

a. Instruction regarding knowledge and safe handling of firearms;

b. Instruction regarding safe storage of firearms and child safety;

c. Instruction regarding knowledge and safe handling of ammunition;

d. Instruction regarding safe storage of ammunition and child safety;

e. Instruction regarding safe firearms shooting fundamentals;

f. Live fire shooting exercises conducted on a range, including the expenditure of a minimum of 100 rounds of ammunition;

g. Identification of ways to develop and maintain firearm shooting skills;

h. Instruction regarding federal and state laws pertaining to the lawful purchase, ownership, transportation, use and possession of firearms;

i. Instruction regarding the laws of this State pertaining to the use of deadly force for self defense; and

j. Instruction regarding techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution.

(4) At the time the application is filed, the applicant shall pay a fee of $65 to the Prothonotary issuing the same.

(5) The license issued upon initial application shall be valid for 3 years. On or before the date of expiration of such initial license, the licensee, without further application, may renew the same for the further period of 5 years upon payment to the Prothonotary of a fee of $65, and upon filing with said Prothonotary an affidavit setting forth that the carrying of a concealed deadly weapon by the licensee is necessary for personal protection or protection of the person's property, or both, and that the person possesses all the requirements for the issuance of a license and may make like renewal every 5 years thereafter; provided, however, that the Superior Court, upon good cause presented to it, may inquire into the renewal request and deny the same for good cause shown. No requirements in addition to those specified in this paragraph may be imposed for the renewal of a license.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(b) The Prothonotary of the county in which any applicant for a license files the same shall cause notice of every such application to be published once, at least 10 days before the next term of the Superior Court. The publication shall be made in a newspaper of general circulation published in the county. In making such publication it shall be sufficient for the Prothonotary to do the same as a list in alphabetical form stating therein simply the name and residence of each applicant respectively.

(c) The Prothonotary of the county in which the application for license is made shall lay before the Superior Court, at its then next term, all applications for licenses, together with the certificate and recommendation accompanying the same, filed in the Prothonotary's office, on the 1st day of such application.

(d) The Court may or may not, in its discretion, approve any application, and in order to satisfy the Judges thereof fully in regard to the propriety of approving the same, may receive remonstrances and hear evidence and arguments for and against the same, and establish general rules for that purpose.

(e) If any application is approved, as provided in this section, the Court shall endorse the word "approved" thereon and sign the same with the date of approval. If not approved, the Court shall endorse the words "not approved" and sign the same. The Prothonotary, immediately after any such application has been so approved, shall notify the applicant of such approval, and following receipt of the notarized certification of satisfactory completion of the firearms training course requirement as set forth in paragraph (a)(3) of this section above shall issue a proper license, signed as other state licenses are, to the applicant for the purposes provided in this section and for a term to expire on June 1 next succeeding the date of such approval.

(f) The Secretary of State shall prepare blank forms of license to carry out the purposes of this section, and shall issue the same as required to the several Prothonotaries of the counties in this State. The Prothonotaries of all the counties shall affix to the license, before lamination, a photographic representation of the licensee.

(g) The provisions of this section do not apply to the carrying of the usual weapon by the police or other peace officers.

(h) Notwithstanding any provision to the contrary, anyone retired as a police officer, as "police officer" is defined by § 1911 of this title, who is retired after having served at least 20 years in any law-enforcement agency within this State, or who is retired and remains currently eligible for a duty-connected disability pension, may be licensed to carry a concealed deadly weapon for the protection of that retired police officer's person or property after that retired police officer's retirement, if the following conditions are strictly complied with:

(1) If that retired police officer applies for the license within 90 days of the date of that retired police officer's retirement, the retired police officer shall pay a fee of $65 to the Prothonotary in the county where that retired police officer resides and present to the Prothonotary both:

a. A certification from the Attorney General's office, in a form prescribed by the Attorney General's office, verifying that the retired officer is in good standing with the law-enforcement agency from which the retired

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

police officer is retired; and

b. A letter from the chief of the retired officer's agency verifying that the retired officer is in good standing with the law-enforcement agency from which the retired police officer is retired; or

(2) If that retired police officer applies for the license more than 90 days, but within 20 years, of the date of that retired police officer's retirement, the retired police officer shall pay a fee of $65 to the Prothonotary in the county where the retired police officer resides and present to the Prothonotary certification forms from the Attorney General's office, or in a form prescribed by the Attorney General's office, that:

a. The retired officer is in good standing with the law-enforcement agency from which that retired police officer is retired;

b. The retired officer's criminal record has been reviewed and that the retired police officer has not been convicted of any crime greater than a violation since the date of the retired police officer's retirement; and

c. The retired officer has not been committed to a psychiatric facility since the date of the retired police officer's retirement.

(i) Notwithstanding anything contained in this section to the contrary, an adult person who, as a successful petitioner seeking relief pursuant to Part D, subchapter III of Chapter 9 of Title 10, has caused a protection from abuse order containing a firearms prohibition authorized by § 1045(a)(8) of Title 10 or a firearms prohibition pursuant to § 1448(a)(6) of this title to be entered against a person for alleged acts of domestic violence as defined in § 1041 of Title 10, shall be deemed to have shown the necessity for a license to carry a deadly weapon concealed for protection of themselves pursuant to this section. In such cases, all other requirements of subsection (a) of this section must still be satisfied.

(j) Notwithstanding any other provision of this Code to the contrary, the State of Delaware shall give full faith and credit and shall otherwise honor and give full force and effect to all licenses/permits issued to the citizens of other states where those issuing states also give full faith and credit and otherwise honor the licenses issued by the State of Delaware pursuant to this section and where those licenses/permits are issued by authority pursuant to state law and which afford a reasonably similar degree of protection as is provided by licensure in Delaware. For the purpose of this subsection "reasonably similar" does not preclude alternative or differing provisions nor a different source and process by which eligibility is determined. Notwithstanding the forgoing, if there is evidence of a pattern of issuing licenses/permits to convicted felons in another state, the Attorney General shall not include that state under the exception contained in this subsection even if the law of that state is determined to be "reasonably similar." The Attorney General shall communicate the provisions of this section to the Attorneys General of the several states and shall determine those states whose licensing/permit systems qualify for recognition under this section. The Attorney General shall publish on January 15th of each year a list of all States which have qualified for reciprocity under this subsection. Such list shall be valid for one year and any removal of a State from the list shall not occur without 1 year's notice of such impending removal. Such list shall be

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

made readily available to all State and local law-enforcement agencies within the State as well as to all then-current holders of licenses issued by the State of Delaware pursuant to this Section.

(k) The Attorney General shall have the discretion to issue, on a limited basis, a temporary license to carry concealed a deadly weapon to any individual who is not a resident of this State and whom the Attorney General determines has a short-term need to carry such a weapon within this State in conjunction with that individual's employment for the protection of person or property. Said temporary license shall automatically expire 30 days from the date of issuance and shall not be subject to renewal, and must be carried at all times while within the State. However, nothing contained herein shall prohibit the issuance of a 2nd or subsequent temporary license. The Attorney General shall have the authority to promulgate and enforce such regulations as may be necessary for the administration of such temporary licenses. No individual shall be issued more than 3 temporary licenses.

(l) All applications for a temporary license to carry a concealed deadly weapon made pursuant to subsection (k) of this section shall be in writing and shall bear a notice stating that false statements therein are punishable by law.

(m) Notwithstanding any other law or regulation to the contrary, any license issued pursuant to this section shall be void, and is automatically repealed by operation of law, if the licensee is or becomes prohibited from owning, possessing or controlling a deadly weapon as specified in § 1448 of this title.

## CREDIT(S)

58 Laws 1972, ch. 497, § 1; 60 Laws 1976, ch. 419, §§ 1-3; 67 Laws 1989, ch. 41, § 1; 67 Laws 1990, ch. 260, § 1; 68 Laws 1991, ch. 9, §§ 1, 2; 68 Laws 1992, ch. 410, §§ 1-3; 69 Laws 1994, ch. 299, § 1; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 70 Laws 1996, ch. 343, § 1, eff. May 23, 1996; 71 Laws 1998, ch. 246, § 1, eff. Feb. 10, 1998; 71 Laws 1998, ch. 252, § 1, eff. May 13, 1998; 72 Laws 1999, ch. 61, § 6, eff. June 24, 1999; 73 Laws 2001, ch. 7, § 1, eff. Feb. 7, 2001; 73 Laws 2002, ch. 252, § 7, eff. May 9, 2002; 74 Laws 2003, ch. 140, §§ 1-3, eff. July 11, 2003; 77 Laws 2010, ch. 230, §§ 1-4, eff. Feb. 3, 2010.

**Codifications:** 11 Del.C. 1953, § 1441

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: July 9, 2008**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
            → → **§ 1441A. State implementation of the federal Law Enforcement Officers Safety Act of 2004 [FN1]**

(a) For purposes of this section, unless the context otherwise requires:

(1) "Firearm" means a weapon as defined in 18 U.S.C.A. § 921(a)(3), but does not include a machine gun as defined in § 5845(b) of the National Firearms Act, 26 U.S.C.A. § 5845(b), or a firearm silencer as defined in 18 U.S.C.A. § 921(a)(24), or a destructive device as defined in 18 U.S.C.A. § 921(a)(4);

(2) "Law Enforcement Officers Safety Act" means an act of the United States Congress known as the Law Enforcement Officers Safety Act of 2004, Pub. L. No. 108-277, 118 Stat. 865 (2004), and codified at 18 U.S.C. §§ 926B and 926C;

(3) "Officer" means a qualified active duty law-enforcement officer or a qualified retired law-enforcement officer, or both;

(4) "Parent agency" means the agency from which a qualified retired law-enforcement officer retired;

(5) "Qualified active duty law-enforcement officer" means an employee of a governmental agency who:

  a. Is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and who has statutory powers of arrest;

  b. Is authorized by the agency to carry a firearm;

  c. Is not the subject of any disciplinary action by the agency;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

d. Meets standards, if any, established by the agency which require the employee to regularly qualify in the use of a firearm;

e. Is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and

f. Is not prohibited by federal law from receiving a firearm;

(6) "Qualified retired law-enforcement officer" means an individual who:

a. Retired in good standing from service with a governmental agency in Delaware as an active duty law-enforcement officer, other than for reasons of mental instability;

b. Before retirement, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and who had statutory powers of arrest;

c. 1. Before retirement, was regularly employed as an active duty law-enforcement officer for an aggregate of 15 years or more; or

2. Retired from service with a governmental agency in Delaware, after completing any applicable probationary period of service, due to a service-connected disability, as determined by the agency;

d. Has a nonforfeitable right to benefits under the retirement plan of the agency;

e. During the most recent 12-month period, has met, at that individual's own expense, Delaware's standards for training and qualification for qualified active duty law-enforcement officers to carry firearms;

f. Is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and

g. Is not prohibited by federal law from receiving a firearm.

(b) The State and any agency or political subdivision of the State employing 1 or more active duty officers shall issue a photographic identification card to each officer retired from employment by them who has fulfilled the requirements and standards of paragraph (a)(6) of this section. The card must indicate the status of the officer as being an officer who has retired from service.

(c) The proficiency standards for retired officers of this State which meet the minimum requirements under the federal Law Enforcement Officers Safety Act are:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) A retired officer shall, within the year immediately preceding the carrying of the firearm, fire a score equal to or greater than 80% on the Standard Off-Duty Qualification Course; and

(2) A retired officer shall demonstrate the required level of proficiency through 1 course of fire for each type and caliber of firearm that the officer intends to carry pursuant to the federal Law Enforcement Officers Safety Act. The types of firearms are revolver and semi-automatic pistol; the calibers vary. A photographic identification card issued pursuant to this section must indicate the type or types and caliber or calibers of firearm with which the officer demonstrated the required proficiency and the date upon which proficiency was demon- strated.

(d)(1) A retired officer wishing to demonstrate the levels of proficiency required by subsection (c) of this section may do so either through that retired officer's parent agency or through an instructor qualified under the Council of Police Training to conduct the training required. The parent agency of a retired officer may recover the cost of ammunition and targets from retired officers using the parent agency to meet the requirements of subsection (c) of this section. A parent agency that receives a request for the issuance of a photographic identification card from a retired officer who possesses a certificate of demonstrated proficiency, signed by an instructor authorized to attest to a retired officer's proficiency pursuant to this section, shall accept the certificate, make a record of it, and, in a timely fashion, issue the photographic identification card, if, and only if, the retired officer submits, at a minimum, to a criminal history records check.

(2) A retired officer who was an active officer in a state other than Delaware must apply to the other state for a photographic identification card, although that retired officer may receive a certification for firearm proficiency standards in this State under subsection (f) of this section.

(e) The Attorney General of the State, acting in the capacity of the chief law-enforcement officer of the State, is responsible for ensuring the standard of the form of a photographic identification card and otherwise ensuring that Delaware law meets the requirements of federal law for implementing the Law Enforcement Officers Safety Act within the State.

(f) A retired officer residing in the State whose parent agency is physically located or headquartered in another state may use the services of a qualified instructor authorized to conduct the training required, or may use the services of any Delaware-based law-enforcement agency, at the option of the agency, to meet the proficiency standards under subsection (c) of this section. A retired officer residing in the State who uses the provisions of this section, has an affirmative duty to report to the Delaware Department of Justice any fact or circumstance which may act as a legal impediment to the officer's legal right to keep and bear arms, including, but not limited to, any conviction making the officer a person prohibited from purchasing, owning, possessing, or controlling a deadly weapon or ammunition for a firearm under § 1448 of this title.

(g) A Delaware parent agency, its officers, agents, and employees, and all other persons authorized to certify and attest to the required level of officer proficiency pursuant to subsection (c) of this section, are not subject to, and are immune from, claim, suit, liability, damages, and any other civil recourse arising from any act, decision, or determination undertaken or performed, or from any recommendation made, in conjunction with the determina-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion of a retired officer's proficiency as required in subsection (c) of this section, so long as their act, decision, determination, or recommendation does not rise to the level of wilful and wanton, reckless, or grossly negligent conduct.

(h) Nothing contained in this section may interfere in any manner with a retired officer's ability to obtain or renew a license to carry a concealed deadly weapon under § 1441 of this title.

(i) This section may not be construed to grant to or bestow upon a retired officer any law-enforcement powers or authority not otherwise held by the officer. Likewise, this section may not be construed to extend or enlarge upon the law-enforcement powers or authority of current, active-duty officers.

CREDIT(S)

Added by 76 Laws 2008, ch. 320, § 1, eff. July 9, 2008. Amended by 70 Laws 1995, ch. 186, § 1.

[FN1] 18 U.S.C.A. § 926B, § 926C

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: June 29, 2010**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
            → → **§ 1442. Carrying a concealed deadly weapon; class G felony; class D felony**

A person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so as provided by § 1441 of this title.

Carrying a concealed deadly weapon is a class G felony, unless the deadly weapon is a firearm, in which case it is a class D felony.

It shall be a defense that the defendant has been issued an otherwise valid license to carry a concealed deadly weapon pursuant to terms of § 1441 of this title, where:

  (1) The license has expired,

  (2) The person had applied for renewal of said license within the allotted time frame prior to expiration of the license, and

  (3) The offense is alleged to have occurred while the application for renewal of said license was pending before the court.

CREDIT(S)

58 Laws 1972, ch. 497, § 1; 59 Laws 1974, ch. 547, § 13; 67 Laws 1989, ch. 130, § 8; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 77 Laws 2010, ch. 313, §§ 1, 6, eff. June 29, 2010.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: July 21, 2008**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
            →→ § 1444. Possessing a destructive weapon; class E felony

(a) A person is guilty of possessing a destructive weapon when the person sells, transfers, buys, receives or has possession of a bomb, bombshell, firearm silencer, sawed-off shotgun, machine gun or any other firearm or weapon which is adaptable for use as a machine gun.

(b) Possessing a destructive weapon is a class E felony. This section does not apply to members of the military forces or to members of a police force in this State duly authorized to carry a weapon of the type described; nor shall the provisions contained herein apply to authorized and certified (by an accredited state enforcement agency) state and federal wildlife biologists possessing firearm silencers for the purposes of wildlife disease or wildlife population control, or persons possessing machine guns for scientific or experimental research and development purposes, which machine guns have been duly registered under the National Firearms Act of 1968 ( 26 U.S.C.A. § 5801 et seq.).

(c) The term "shotgun" as used in this section means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger. The term "sawed-off shotgun" as used in this section means a shotgun having 1 or more barrels less than 18 inches in length or any weapon made from a shotgun (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than 26 inches.

CREDIT(S)

58 Laws 1972, ch. 497, § 1; 59 Laws 1974, ch. 547, § 12; 67 Laws 1989, ch. 130, § 8; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 76 Laws 2008, ch. 411, § 1, eff. July 21, 2008.

**Codifications:** 11 Del.C. 1953, § 1444

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: June 30, 2012**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
            →→ **§ 1448. Possession and purchase of deadly weapons by persons prohibited; penalties**

<Text of section effective upon fulfillment of 78 Laws 2011, ch. 137, § 15. See also section effective until fulfillment of 78 Laws 2011, ch. 137, § 15.>

(a) Except as otherwise provided herein, the following persons are prohibited from purchasing, owning, possessing or controlling a deadly weapon or ammunition for a firearm within the State:

(1) Any person having been convicted in this State or elsewhere of a felony or a crime of violence involving physical injury to another, whether or not armed with or having in possession any weapon during the commission of such felony or crime of violence;

(2) Any person who has ever been committed for a mental disorder to any hospital, mental institution or sanitarium, unless such person can demonstrate that he or she is no longer prohibited from possessing a firearm pursuant to 11 Del. C. § 1448A;

(3) Any person who has been convicted for the unlawful use, possession or sale of a narcotic, dangerous drug or central nervous system depressant or stimulant as those terms were defined prior to the effective date of the Uniform Controlled Substances Act in June 1973 or of a narcotic drug or controlled substance as defined in Chapter 47 of Title 16;

(4) Any person who, as a juvenile, has been adjudicated as delinquent for conduct which, if committed by an adult, would constitute a felony, unless and until that person has reached their 25th birthday;

(5) Any juvenile, if said deadly weapon is a handgun, unless said juvenile possesses said handgun for the purpose of engaging in lawful hunting, instruction, sporting or recreational activity while under the direct or indirect supervision of an adult. For the purpose of this subsection, a handgun shall be defined as any pistol, revolver or other firearm designed to be readily capable of being fired when held in 1 hand;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(6) Any person who is subject to a Family Court protection from abuse order (other than an ex parte order), but only for so long as that order remains in effect or is not vacated or otherwise terminated, except that this paragraph shall not apply to a contested order issued solely upon § 1041(1)d., e., or h. of Title 10, or any combination thereof;

(7) Any person who has been convicted in any court of any misdemeanor crime of domestic violence. For purposes of this paragraph, the term "misdemeanor crime of domestic violence" means any misdemeanor offense that:

    a. Was committed by a member of the victim's family, as "family" is defined in § 901(12) of Title 10 (regardless, however, of the state of residence of the parties); by a former spouse of the victim; by a person who co-habitated with the victim at the time of the offense; or by a person with a child in common with the victim; and

    b. Is an offense as defined under § 601, § 602, § 603, § 611, § 614, § 621, § 625, § 628A, § 763, § 765, § 766, § 767, § 781, § 785 or § 791 of this title, or any similar offense when committed or prosecuted in another jurisdiction; or

(8) Any person who, knowing that he or she is the defendant or co-defendant in any criminal case in which that person is alleged to have committed any felony under the laws of this State, the United States or any other state or territory of the United States, becomes a fugitive from justice by failing to appear for any scheduled court proceeding pertaining to such felony for which proper notice was provided or attempted. It is no defense to a prosecution under this paragraph that the person did not receive notice of the scheduled court proceeding.

(9) Any person, if the deadly weapon is a semi-automatic or automatic firearm, or a handgun, who, at the same time, possesses a controlled substance in violation of §§ 4763, or 4764 of Title 16.

(10) Except for "antique firearms", any validly seized deadly weapons or ammunition from a person prohibited as a result of a felony conviction under Delaware law, federal law or the laws of any other state, or as otherwise prohibited under this subsection (a) may be disposed of by the law enforcement agency holding the weapon or ammunition, after the exhaustion of any right of direct appeal, pursuant to § 2311 of this title.

    a. "Antique firearm" means any firearm not designed or redesigned for using rim fire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898 and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily restored to a firing condition.

    b. A person prohibited under this section has the burden of proving that the subject firearm is an antique firearm as defined in paragraph (a)(10)a. of this section subject to an exemption under this section and § 2311 of this title.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(b) Any prohibited person as set forth in subsection (a) of this section who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited.

(c) Possession of a deadly weapon by a person prohibited is a class F felony, unless said deadly weapon is a firearm or ammunition for a firearm, and the violation is one of subsections (a)(1) through (a)(8), in which case it is a class D felony. As used herein, the word "ammunition" shall mean 1 or more rounds of fixed ammunition designed for use in and capable of being fired from a pistol, revolver, shotgun or rifle but shall not mean inert rounds or expended shells, hulls or casings.

(d) Any person who is a prohibited person solely as the result of a conviction for an offense which is not a felony shall not be prohibited from purchasing, owning, possessing or controlling a deadly weapon or ammunition for a firearm if 5 years have elapsed from the date of conviction.

(e)(1) Notwithstanding any provision of this section or Code to the contrary, any person who is a prohibited person as described in this section and who knowingly possesses, purchases, owns or controls a firearm or destructive weapon while so prohibited shall receive a minimum sentence of:

    a. One year at Level V, if the person has previously been convicted of a violent felony;

    b. Three years at Level V, if the person does so within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date; or

    c. Five years at Level V, if the person has been convicted on 2 or more separate occasions of any violent felony.

(2) Any person who is a prohibited person as described in this section because of a conviction for a violent felony and who, while in possession or control of a firearm in violation of this section, negligently causes serious physical injury to or the death of another person through the use of such firearm, shall be guilty of a class B felony and shall receive a minimum sentence of:

    a. Four years at Level V; or

    b. Six years at Level V, if the person causes such injury or death within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date; or

    c. Ten years at Level V, if the person has been convicted on 2 or more separate occasions of any violent felony.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

d. Nothing in this paragraph shall be deemed to be a related or included offense of any other provision of this Code. Nothing in this paragraph shall be deemed to preclude prosecution or sentencing under any other provision of this Code nor shall this paragraph be deemed to repeal any other provision of this Code.

(3) Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this title. For the purposes of this subsection, "violent felony" means any felony so designated by § 4201(c) of this title, or any offense set forth under the laws of the United States, any other state or any territory of the United States which is the same as or equivalent to any of the offenses designated as a violent felony by § 4201(c) of this title.

(4) Any sentence imposed for a violation of this subsection shall not be subject to suspension and no person convicted for a violation of this subsection shall be eligible for good time, parole or probation during the period of the sentence imposed.

(f)(1) Upon conviction, any person who is a prohibited person as described in paragraph (a)(5) of this section and who is 14 years of age or older shall, for a first offense, receive a minimum sentence of 6 months of Level V incarceration, and shall receive a minimum sentence of 1 year of Level V incarceration for a second and subsequent offense, which shall not be subject to suspension. Any sentence imposed pursuant to this subsection shall not be subject to §§ 4205(b) and 4215 of this title.

(2) The penalties prescribed by this subsection and subsection (g) of this section shall be imposed regardless of whether or not the juvenile is determined to be amenable to the rehabilitative process of the Family Court pursuant to § 1010(c) of Title 10 or any successor statute.

(g) In addition to the penalties set forth in subsection (f) of this section herein, a person who is a prohibited person as described in paragraph (a)(5) of this section and who is 14 years of age or older shall, upon conviction of a first offense, be required to view a film and/or slide presentation depicting the damage and destruction inflicted upon the human body by a projectile fired from a gun, and shall be required to meet with, separately or as part of a group, a victim of a violent crime, or with the family of a deceased victim of a violent crime. The Division of Youth Rehabilitative Service, with the cooperation of the Office of the Chief Medical Examiner and the Violent Crimes Compensation Board, shall be responsible for the implementation of this subsection.

CREDIT(S)

58 Laws 1972, ch. 497, § 1; 67 Laws 1989, ch. 130, § 8; 68 Laws 1992, ch. 422, § 1; 69 Laws 1994, ch. 313, §§ 1, 2; 69 Laws 1994, ch. 441, § 1; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 71 Laws 1998, ch. 230, §§ 1 to 5, eff. Feb. 5, 1998; 71 Laws 1998 ch. 358, §§ 1, 2, eff. July 2, 1998; 72 Laws 1999, ch. 61, §§ 1, 2, eff. July 24, 1999; 74 Laws 2003, ch. 106, § 7, eff. June 30, 2003; 75 Laws 2005, ch. 78, § 1, eff. June 30, 2005; 76 Laws 2007, ch. 99, § 1, eff. July 5, 2007; 76 Laws 2007, ch. 101, §§ 1-5, eff. July 5, 2007; 78 Laws 2011, ch. 13, §§ 5, 6, eff. Sept. 1, 2011; 78 Laws 2011, ch. 135, §§ 6-8, eff. July 13, 2011; 78 Laws 2011, ch. 137, § 5; 78 Laws 2011, ch. 168, § 6, eff. Aug. 3, 2011.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

C

**Effective: June 30, 2012**

West's Delaware Code Annotated Currentness
  Title 11. Crimes and Criminal Procedure
    Part I. Delaware Criminal Code
      Chapter 5. Specific Offenses
        Subchapter VII. Offenses Against Public Health, Order and Decency
          Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
→→ **§ 1448A. Criminal history record checks for sales of firearms**

<Text of section effective upon fulfillment of 78 Laws 2011, ch. 137, § 15. See also section effective until fulfillment of 78 Laws 2011, ch. 137, § 15.>

(a) No licensed importer, licensed manufacturer or licensed dealer shall sell, transfer or deliver from inventory any firearm, as defined in § 222 of this title, to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, without conducting a criminal history background check in accordance with regulations promulgated by the United States Department of Justice pursuant to the National Instant Criminal Background Check System ("NICS"), 28 C.F.R. §§ 24.1-25.11, as the same may be amended from time to time, to determine whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. § 923 would be in violation of federal or state law.

(b) Any person who is denied the right to receive or purchase a firearm in connection with subsection (a) hereunder may request from the Federal Bureau of Investigation ("FBI") a written explanation for such denial; an appeal of the denial based on the accuracy of the record upon which the denial is based; and/or that erroneous information on the NICS system be corrected and that the person's rights to possess a firearm be restored. All requests pursuant to this subsection (b) shall be made in accordance with applicable federal laws and regulations, including without limitation 28 C.F.R. § 25.10. In connection herewith, at the request of a denied person, the Federal Firearms Licensed (FFL) dealer and SBI shall provide to the denied person such information as may be required by federal law or regulation in order for such person to appeal or seek additional information hereun- der.

(c) Compliance with the provisions of this section shall be a complete defense to any claim or cause of action under the laws of this State for liability for damages arising from the importation or manufacture, or the subsequent sale or transfer to any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year, of any firearm which has been shipped or transported in interstate or foreign commerce.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(d) The provisions of this section shall not apply to:

(1) Any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898;

(2) Any replica of any firearm described in paragraph (1) of this subsection if such replica:

a. Is not designed or redesigned to use rimfire or conventional centerfire fixed ammunition; or

b. Uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade;

(3) Any shotgun, which is defined as a firearm designed or intended to be fired from the shoulder and designed or made to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger;

(4) The return, by a licensed pawnbroker, of a firearm to the person from whom it was received;

(5) Transactions in which the potential buyer or transferee holds a valid concealed deadly weapons license pursuant to § 1441 of this title; and

(6) Transactions involving a "law-enforcement officer" as defined by § 222 of this title.

(e) Any licensed dealer, licensed manufacturer, licensed importer or employee thereof who wilfully and intentionally requests a criminal history record check from the Federal Bureau of Investigation, National Instant Criminal Background Check System for any purpose other than compliance with subsection (a) of this section, or wilfully and intentionally disseminates any criminal history record information to any person other than the subject of such information or discloses to any person the unique identification number shall be guilty of a class A misdemeanor.

(f) Any person who, in connection with the purchase, transfer, or attempted purchase or transfer of a firearm pursuant to subsection (a) of this section, wilfully and intentionally makes any materially false oral or written statement or wilfully and intentionally furnishes or exhibits any false identification intended or likely to deceive the licensee shall be guilty of a class G felony.

(g) Any licensed dealer, licensed manufacturer, licensed importer or employee thereof who wilfully and intentionally sells or delivers a firearm in violation of this section shall be guilty of a class A misdemeanor. Second or subsequent offenses by an individual shall be a class G felony.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(h) The SBI shall provide to the judiciary committees of the Senate and House of Representatives an annual report including the number of inquiries made pursuant to this section for the prior calendar year. Such report shall include, but not be limited to, the number of inquiries received from licensees, the number of inquiries resulting in a determination that the potential buyer or transferee was prohibited from receipt or possession of a firearm pursuant to § 1448 of this title or federal law.

(i) Notwithstanding Chapter 89 of this title, Chapter 10 of Title 29, and other Delaware laws, the SBI is authorized and directed to release records and data required by this section. The SBI shall not release or disclose criminal records or data except as specified in this section.

(j) Relief from Disabilities Program. A person who is subject to the disabilities of 18 U.S.C. § 922(d)(4) and (g)(4) or of 11 Del. C. § 1448(a) (2) because of an adjudication or commitment under the laws of this state may petition for relief from a firearms prohibition from the Relief from Disabilities Board. The Relief from Disabilities Board shall be comprised of three (3) members, with the chairperson appointed by and serving at the pleasure of the Secretary of Safety and Homeland Security, and two members appointed by and serving at the pleasure of the Secretary of the Department of Health and Social Services, one of whom shall be a licensed psychiat- rist.

(1) The Board shall consider the petition for relief in accordance with the following:

a. The Board shall give the petitioner the opportunity to present evidence to the Board in a closed and confidential hearing on the record; and

b. A record of the hearing shall be maintained by the Board for purposes of appellate review.

(2) In determining whether to grant relief, the Board shall consider evidence regarding the following:

a. The circumstances regarding the firearms disabilities pursuant to 11 Del. C. § 1448(a)(2) and 18 U.S.C. 922 §§ (d)(4) and (g)(4);

b. The petitioner's record, which must include, at a minimum, the petitioner's mental health record, including a certificate of a medical doctor or psychiatrist licensed in this State that the person is no longer suffering from a mental disorder which interferes or handicaps the person from handling deadly weapons;

c. Criminal history records; and

d. The petitioner's reputation as evidenced through character witness statements, testimony, or other character evidence.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(3) The Board shall have the authority to require that the petitioner undergo a clinical evaluation and risk assessment, which it may also consider as evidence in determining whether to approve or deny the petition for relief.

(4) After a hearing on the record, the Board shall grant relief if it finds, by a preponderance of the evidence, that:

    a. The petitioner will not be likely to act in a manner dangerous to public safety; and

    b. Granting the relief will not be contrary to the public interest.

(5) The Board shall issue its decision in writing explaining the reasons for a denial or grant of relief.

(6) Any person whose petition for relief has been denied by the Relief from Disabilities Board shall have a right to a de novo judicial review in the Superior Court. The Superior Court shall consider the record of the Board hearing on the petition for relief, the decision of the Board, and, at the Court's discretion, any additional evidence it deems necessary to conduct its review.

(7) Upon notice that a petition for relief has been granted, the Department of Safety and Homeland Security shall, as soon as practicable:

    a. Cause the petitioner's record to be updated, corrected, modified, or removed from any database maintained and made available to NICS to reflect that the petitioner is no longer subject to a firearms prohibition as it relates to 11 Del. C. § 1448(a)(2) and 18 U.S.C. §§ 922(d)(4) and (g)(4); and

    b. Notify the Attorney General of the United States that the petitioner is no longer subject to a firearms prohibition pursuant to 11 Del. C. § 1448(a)(2) and 18 U.S.C. §§ 922(d)(4) and (g)(4).

(k) The Department of Safety and Homeland Security shall adopt regulations relating to compliance with NICS, including without limitation issues relating to the transmission of data, the transfer of existing data in the existing state criminal background check database and the relief from disabilities process set forth in subsection (j). In preparing such regulations, the Department shall consult with the Department of Health and Social Services, the courts, the Department of Children, Youth & Their Families, the Department of State and such other entities as may be necessary or advisable. Such regulations shall include provisions to ensure the identity, confidentiality and security of all records and data provided pursuant to this section.

CREDIT(S)

Added by 67 Laws 1990, ch. 414, § 1. Amended by 69 Laws 1994, ch. 224, § 3; 69 Laws 1994, ch. 293, §§ 1-5;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

70 Laws 1995, ch. 20, § 1, eff. April 13, 1995; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 77 Laws 2009, ch. 104, § 1, eff. July 6, 2009; 78 Laws 2011, ch. 137, §§ 6-13.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

28

c

**Effective: June 29, 2010**

West's Delaware Code Annotated Currentness
    Title 11. Crimes and Criminal Procedure
        Part I. Delaware Criminal Code
            Chapter 5. Specific Offenses
                Subchapter VII. Offenses Against Public Health, Order and Decency
                    Subpart E. Offenses Involving Deadly Weapons and Dangerous Instruments
                    ➠➠ **§ 1457. Possession of a weapon in a Safe School and Recreation Zone; class D, E, or F: class A or B misdemeanor**

(a) Any person who commits any of the offenses described in subsection (b) of this section, or any juvenile who possesses a firearm or other deadly weapon, and does so while in or on a "Safe School and Recreation Zone" shall be guilty of the crime of possession of a weapon in a Safe School and Recreation Zone.

(b) The underlying offenses in Title 11 shall be:

    (1) Section 1442. --Carrying a concealed deadly weapon; class G felony; class D felony.

    (2) Section 1444. --Possessing a destructive weapon; class E felony.

    (3) Section 1446. --Unlawfully dealing with a switchblade knife; unclassified misdemeanor.

    (4) Section 1448. --Possession and purchase of deadly weapons by persons prohibited; class F felony.

    (5) Section 1452. --Unlawfully dealing with knuckles-combination knife; class B misdemeanor.

    (6) Section 1453. --Unlawfully dealing with martial arts throwing star; class B misdemeanor.

(c) For the purpose of this section, "Safe School and Recreation Zone" shall mean:

    (1) Any building, structure, athletic field, sports stadium or real property owned, operated, leased or rented by any public or private school including, but not limited to, any kindergarten, elementary, secondary or vocational-technical school or any college or university, within 1,000 feet thereof; or

    (2) Any motor vehicle owned, operated, leased or rented by any public or private school including, but not limited to, any kindergarten, elementary, secondary, or vocational-technical school or any college or university; or

    (3) Any building or structure owned, operated, leased or rented by any county or municipality, or by the State, or by any board, agency, commission, department, corporation or other entity thereof, or by any private organization, which is utilized as a recreation center, athletic field or sports stadium.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(d) Nothing in this section shall be construed to preclude or otherwise limit a prosecution of or conviction for a violation of this chapter or any other provision of law. A person may be convicted both of the crime of possession of a weapon in a Safe School and Recreation Zone and of the underlying offense as defined elsewhere by the laws of the State.

(e) It shall not be a defense to a prosecution for a violation of this section that the person was unaware that the prohibited conduct took place on or in a Safe School and Recreation Zone.

(f) It shall be an affirmative defense to a prosecution for a violation of this section that the weapon was possessed pursuant to an authorized course of school instruction, or for the purpose of engaging in any school-authorized sporting or recreational activity. The affirmative defense established in this section shall be proved by a preponderance of the evidence. Nothing herein shall be construed to establish an affirmative defense with respect to a prosecution for any offense defined in any other section of this chapter.

(g) It is an affirmative defense to prosecution for a violation of this section that the prohibited conduct took place entirely within a private residence, and that no person under the age of 18 was present in such private residence at any time during the commission of the offense. The affirmative defense established in this section shall be proved by the defendant by a preponderance of the evidence. Nothing herein shall be construed to establish an affirmative defense with respect to a prosecution for an offense defined in any other section of this chapter.

(h) This section shall not apply to any law enforcement or police officer, or to any security officer as defined in Chapter 13 of Title 24.

(i) For purposes of this section only, "deadly weapon" shall include any object described in § 222(5) or (12) of this title or BB guns.

(j) The penalty for possession of a weapon in a Safe School and Recreation Zone shall be:

~~(1) If the underlying offense is a class B misdemeanor, the crime shall be a class A misdemeanor;~~

(2) If the underlying offense is an unclassified misdemeanor, the crime shall be a class B misdemeanor;

(3) If the underlying offense is a class E, F, or G felony, the crime shall be one grade higher than the underlying offense.

(4) If the underlying offense is a class D felony, the crime shall also be a class D felony.

(5) In the event that an elementary or secondary school student possesses a firearm or other deadly weapon in a Safe School and Recreation Zone in addition to any other penalties contained in this section, the student shall be expelled by the local school board or charter school board of directors for a period of not less than 180 days unless otherwise provided for in federal or state law. The local school board or charter school board of directors may, on a case by case basis, modify the terms of the expulsion.

CREDIT(S)

70 Laws 1995, ch. 213, § 1, eff. July 12, 1995; 74 Laws 2003, ch. 131, §§ 1-4, eff. July 11, 2003; 76 Laws 2008, ch. 326, § 1, eff. July 9, 2008; 77 Laws 2009, ch. 64, §§ 1, 2, eff. June 26, 2009; 77 Laws 2010, ch. 313, §§ 4, 5, eff. June 29, 2010.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Current through 78 Laws 2012, chs. 204 - 363. Revisions by the Delaware Code Revisors were unavailable at the time of publication.

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 14. Education
    ⁱ⁶ Part V. Miscellaneous
      ⁱ⁶ Chapter 90. College and University Security Information Act
        ➜➜ **§ 9004. Disclosure of campus security policy**

(a) Each participating institution shall publish, in conjunction with the annual report of campus crime statistics specified under § 9003(b) of this title, information with regard to campus security policies as required for compliance with Title II of the federal Student Right-To-Know and Campus Security Act (P.L. 101-542 as amended). This information shall be provided to any person upon request.

(b) Each institution shall also develop and adopt written security rules, regulations and procedures. Such rules, regulations and procedures shall include, but need not be limited to, the following information:

  (1) Procedures for responding to emergencies or criminal actions.

  (2) Procedures for securing campus buildings and residence halls.

  (3) Procedures for investigating violations of criminal statutes and university regulations.

  (4) Procedures related to campus police and other security personnel activity within student housing facilities which are owned or leased by the institution.

  (5) Rules and regulations governing the possession and use of firearms by campus police and other security personnel.

  (6) Rules and regulations governing the possession and use of firearms on campus by employees, students and visitors.

  (7) Security considerations used in the construction, maintenance, groundskeeping and lighting of campus buildings and grounds.

  (8) Methods used to inform the campus community about public safety matters.

CREDIT(S)

69 Laws 1993, ch. 90, § 1.

Current through 78 Laws 2012, chs. 204 - 363. Revisions by the Delaware Code Revisors were unavailable at the time

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

32

of publication.

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 22. Municipalities
    Chapter 1. General Provisions
    → → **§ 111. Limitation on firearm regulations**

The municipal governments shall enact no law, ordinance or regulation prohibiting, restricting or licensing the ownership, transfer, possession or transportation of firearms or components of firearms or ammunition except that the discharge of a firearm may be regulated; provided any law, ordinance or regulation incorporates the justification defenses as found in Title 11. Nothing contained herein shall be construed to invalidate municipal ordinances existing before July 4, 1985, and any ordinance enacted after July 4, 1985, is hereby repealed. Notwithstanding the provisions of this section to the contrary, the City of Wilmington may, in addition to the nature and extent of regulation permitted by this section, enact any law or ordinance governing the possession or concealment of a paintball gun within its corporate limits as it deems necessary to protect the public safety.

CREDIT(S)

65 Laws 1986, ch. 278, § 1; 74 Laws 2004, ch. 280, § 1, eff. June 29, 2004.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
   Title 22. Municipalities
      Chapter 8. Home Rule
         Subchapter VI. Limitations and Exceptions
     → → **§ 835. Amendments prohibited**

(a) This chapter shall not permit the amending of a municipal charter so as to:

(1) Permit the changing of any term of any elected official until the incumbent has completed the term to which the incumbent was elected;

(2) Permit any charter amendment in contravention of any general statute of this State;

(3) Change the qualifications of those entitled to vote at municipal elections;

(4) Change the date for holding of municipal elections;

(5) Enlarge or otherwise alter the power or procedure whereby a municipal corporation may enlarge its boundaries;

(6) Prohibit, restrict or license ownership, transfer, possession or transportation of firearms or components of firearms or ammunition, except that the discharge of a firearm may be regulated; provided that any regulation or ordinance incorporates the justification defenses as found in Title 11. Nothing contained herein shall be construed to invalidate existing municipal ordinances.

(b) No municipal corporation charter which permits nonresident persons to vote in any municipal election or to hold any municipal office shall be amended, pursuant to this chapter, so as to eliminate or limit the right of nonresident persons to vote or hold office, nor shall the percentage of nonresident officials allowed or required be changed.

(c) No municipal corporation charter which provides a method of appeal to the Superior Court for any matter shall be amended, pursuant to this chapter, so as to eliminate or restrict any such appeal.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

CREDIT(S)

53 Laws 1961, ch. 260; 65 Laws 1985, ch. 133, § 1; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**c**

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 24. Professions and Occupations
    Chapter 9. Deadly Weapons Dealers
    →→ **§ 901. License requirement**

No person shall engage in the business of selling any pistol or revolver, or stiletto, steel or brass knuckles, or other deadly weapon made especially for the defense of one's person without first having obtained a license therefor, which license shall be known as "special license to sell deadly weapons." No person licensed or unlicensed shall possess, sell or offer for sale any switchblade knife.

This section shall not apply to toy pistols, pocket knives or knives used for sporting purposes and in the domestic household, or surgical instruments or tools of any kind.

CREDIT(S)

26 Laws 1911, ch. 15, § 1; 49 Laws 1953, ch. 77; 66 Laws 1987, ch. 184, § 1.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**C**

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 24. Professions and Occupations
    Chapter 9. Deadly Weapons Dealers
    → → **§ 902. Application and fee for license; duration; renewal**

Whoever desires to engage in the business of selling any of the articles referred to in the first paragraph of § 901 of this title shall apply to the Department of State to obtain a license to conduct such business and shall pay an application fee of $50 to the Department. The license shall entitle the holder thereof to conduct such business until June 1 next succeeding its date. An application for renewal of such license shall be accompanied by a payment of $50 to the Department.

CREDIT(S)

26 Laws 1911, ch. 15, § 2; 27 Laws 1913, ch. 30; 42 Laws 1939, ch. 71, § 1; 49 Laws 1953, ch. 346, § 3; 61 Laws 1978, ch. 406, § 1; 65 Laws 1986, ch. 379; 66 Laws 1988, ch. 249, § 1; 75 Laws 2005, ch. 88, § 17, eff. July 1, 2005.

**Codifications:** Rev. Stat. Del. 1915, § 258; Rev. Code Del. 1935, § 232; 24 Del.C. 1953, § 902

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

38
2

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 24. Professions and Occupations
    Chapter 9. Deadly Weapons Dealers
      → → **§ 903. Sale to persons under 21 or intoxicated persons**

No person shall sell to a person under the age of 21 or any intoxicated person any of the articles referred to in the first paragraph of § 901 of this title.

CREDIT(S)

26 Laws 1911, ch. 15, § 3; 30 Laws 1919, ch. 28, § 1; 42 Laws 1939, ch. 71, § 2; 66 Laws 1987, ch. 184, § 2.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 24. Professions and Occupations
    Chapter 9. Deadly Weapons Dealers
      → → **§ 904. Records**

(a) Any person desiring to engage in the business described in this chapter shall keep and maintain in the place of business at all times a record. In such record the businessperson shall enter the date of the sale, the name and address of the person purchasing any deadly weapon, the number and kind of deadly weapon so purchased, the age of the purchaser, and the mode of identification bearing a picture which shall include but it is not limited to a driver's license. The record shall at all times be open for inspection by any judge, justice of the peace, police officer, constable or other peace officer of this State.

(b) Any person engaging in the business described in this chapter shall keep and maintain a list of current employees including their names, former names used, dates of birth, physical descriptions and social security numbers. The required employee list and all attachments thereto shall be considered confidential but shall, nevertheless, be open for inspection by any police officer of this State or of any political subdivision of this State, within their respective jurisdiction, at any time, at the licensee's primary place of business and during the licensee's regular business hours. No person licensed under this chapter shall knowingly allow any employee who is a person prohibited from possessing a deadly weapon pursuant to § 1448 of Title 11 to facilitate a sale of a deadly weapon. All employers licensed to do business pursuant to this chapter shall, prior to employment and at least once during each calendar year thereafter, perform a telephonic criminal history record check of each employee utilizing the procedures set forth in § 1448A of Title 11 and shall make and maintain a record thereof using the State Bureau of Identification Criminal History Record Information and Mental Health Information Consent Form (Form 544). A copy of each such form shall be attached to the above required employee list for inspection upon the valid request of a police officer of this State or of any political subdivision of this State, within their respective jurisdiction.

CREDIT(S)

26 Laws 1911, ch. 15, § 4; 30 Laws 1919, ch. 28, § 1; 42 Laws 1939, ch. 71, § 2; 61 Laws 1978, ch. 406, §§ 2-4; 63 Laws 1981, ch. 55, § 1; 66 Laws 1987, ch. 184, § 3; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 71 Laws 1997, ch. 149, § 1, eff. July 3, 1997.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 24. Professions and Occupations
    Chapter 9. Deadly Weapons Dealers
      → → **§ 904A. Criminal history checks for sales between unlicensed persons**

(a) For purposes of this section, "licensed firearm dealer" means any person licensed as a deadly weapons dealer pursuant to Chapter 9 of Title 24 and 18 U.S.C. § 921 et seq.

(b) As a condition of its license, any dealer holding a license pursuant to this chapter shall facilitate the transfer of a firearm, as that term is defined in § 222 of Title 11, from any person who is not so licensed, upon the request of said unlicensed seller pursuant to the following procedure:

(1) The prospective buyer and seller shall jointly appear at the place of business of the dealer, during said dealer's regular hours of business, and shall inform the dealer of their desire to avail themselves of the advantages of the procedure set forth herein.

(2) The dealer shall then subject the prospective buyer to a criminal history record check pursuant to the terms of § 1448A of Title 11.

(3) In the event that said record check reveals that the prospective buyer is prohibited from possessing, purchasing or owning a firearm pursuant to § 1448 of Title 11, the dealer shall so inform both parties of that fact and the transfer shall not take place.

(4) Any dealer who is asked to facilitate the transfer of a firearm pursuant to the terms of this section, may charge a reasonable fee for said service, said fee not to exceed $20 per criminal history check performed pursuant to this procedure.

(5) Failure or refusal on the part of the dealer to facilitate the transfer of a firearm pursuant to the procedures set forth herein shall be adequate cause to suspend the license of said dealer for a period not to exceed 30 days per occurrence.

CREDIT(S)

69 Laws 1994, ch. 324, § 1.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

41

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
 Title 31. Welfare
  Part III. Housing
   🔖 Chapter 40. The Delaware State Housing Authority
    🔖 Subchapter I. Definitions, Purpose and Powers
     →→ **§ 4002. Purpose**

(a) It is the purpose of this chapter that DSHA have the authority and capacity to:

(1) Efficiently provide, and to assist others to provide, quality affordable housing opportunities and appropriate supportive services to responsible low- and moderate-income Delawareans;

(2) Encourage persons and families benefiting from activities authorized in this chapter, to the maximum extent feasible, to become economically self-sufficient by assisting in the delivery of social, educational and other supportive services and programs which develop self-sufficiency and by facilitating economic and employment opportunities and similar benefits for persons assisted under this chapter;

(3) Coordinate the housing and redevelopment activities of state agencies and other public agencies and private bodies with such responsibilities within the State;

(4) Provide assistance in the rehabilitation of distressed or substandard housing in an effort to preserve current housing stock and strengthen communities;

(5) Serve as a resource where the housing and construction industries, local governments and the public may obtain information on affordable housing and community development programs, data and trends, including coordinating and promoting assistance to nonprofit housing sponsors who develop affordable housing opportunities for persons of low and moderate income;

(6) Assist the Office of State Planning and other state, local and regional planning authorities in the preparation and implementation of comprehensive plans and programs for rural and urban housing and improvement of housing within the State, especially regarding the planning and development of affordable housing;

(7) Confront adverse social conditions and to lessen the effects of drug and crime problems for residents of DSHA housing for low- and moderate-income persons and families by establishing and implementing policies

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

and taking practical steps to mitigate such conditions and eliminate drug and crime problems;

(8) Carry out and enforce the State Housing Code;

(9) Advise and inform the Governor and the public on the affairs and problems relating to housing and community development and revitalization, and make recommendations to the Governor for proposed legislation pertaining thereto; and

(10) Operate DSHA's financial affairs in a prudent and sound manner.

(b) This section shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provisions involved.

CREDIT(S)

71 Laws 1998, ch. 357, § 6, eff. July 2, 1998.

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

c

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 31. Welfare
    &#x2316; Part III. Housing
      &#x2316; Chapter 43. Housing Authority
      &rarr;&rarr; **§ 4301. Definitions**

As used in this chapter, unless a different meaning appears from the context:

(1) "Area" or "area of operation" means the county or part of the county in and with respect to which an authority shall be created.

(2) "Authority" or "housing authority" means a corporate body organized in accordance with the provisions of this chapter for the purposes, with the powers and subject to the restrictions set forth in this chapter.

(3) "Bureau" means the State Bureau of Housing.

(4) "Commissioner" means 1 of the members of an authority appointed in accordance with the provisions of this chapter.

(5) "Community facilities" includes lands, buildings and equipment for recreation or social assembly, for educational, health or welfare activities and other necessary utilities primarily for use and benefit of the occupants of housing accommodations to be constructed and operated under this chapter.

(6) "DSHA" means the Delaware State Housing Authority.

(7) "Government" includes the state and federal governments, and any subdivision, agency or instrumentality, corporate or otherwise, of either of them.

(8) "Housing project" or "project" means any work or undertaking:

    a. To demolish, clear or remove buildings from any slum area acquired by the authority;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**44**

b. To provide decent safe and sanitary urban or rural dwellings, apartments or other living accommodations for persons of low income; such work or undertaking may include buildings, land, equipment facilities, and other real or personal property for necessary, convenient or desirable appurtenances, streets, sewers, water service, utilities, parks, site preparation, landscaping, administrative, community, health, recreational, welfare or other purposes; or

c. To accomplish a combination of the foregoing. The term "housing project" or "project" also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith; and the term shall include all other real and personal property and all tangible or intangible assets held or used in connection with the housing project.

(9) "Persons of low income" means persons or families who lack the amount of income which is necessary, as determined by the authority undertaking a project, to enable them, without financial assistance, to live in decent, safe and sanitary dwellings, without overcrowding.

(10) "Slum" means any area where dwellings predominate which by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation, light or sanitary facilities, or any combination of these factors, are detrimental to safety, health and morals.

CREDIT(S)

39 Laws 1934, 2nd Sp. Sess, ch. 16, § 2; 48 Laws 1951, ch. 117, §§ 1, 2; 52 Laws 1959, ch. 126, § 1; 56 Laws 1968, ch. 293, § 2; 57 Laws 1970, ch. 679, § 5A; 71 Laws 1998, ch. 357, § 7, eff. July 2, 1998.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 31. Welfare
    Part III. Housing
      Chapter 43. Housing Authority
        → → **§ 4302. Legislative purpose**

It is as a matter of legislative determination that, in order to promote and protect the health, safety, morals and welfare of the public, it is necessary in the public interest to provide for the creation of public corporate bodies to be known as housing authorities, and to confer upon and vest in such housing authorities all powers necessary or appropriate in order that they may engage in low-rent housing and slum clearance projects, and that the powers herein conferred upon the housing authorities, including the power to acquire property, to remove unsanitary or substandard conditions, to construct and operate housing accommodations and to borrow, expend and repay moneys for the purposes set forth in this chapter are public objects essential to the public interest.

CREDIT(S)

39 Laws 1934, 2nd Sp. Sess, ch. 16, § 3.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

c

**Effective: July 2, 2010**

West's Delaware Code Annotated Currentness
Title 31. Welfare
 Part III. Housing
  Chapter 43. Housing Authority
   ⇢⇢ § 4303. Creation of authority; appointment and removal of commissioners; area of operation

Whenever DSHA shall have determined that there is need for a housing authority in any county or in any part of a county of the State, it shall issue to each appointing officer named in this chapter a certificate of such determination, describing the area of operation of the proposed authority, and as soon as possible thereafter an authority shall be created by the appointment of commissioners who shall constitute the authority, all of whom shall be residents of the area in which the authority operates. In the case of a New Castle County housing authority, there shall be 7 commissioners who shall be appointed by the County Executive with the advice and consent of the County Council, no more than a bare majority of the commissioners shall be affiliated with any 1 major political party, 1 member shall serve as chairperson and shall serve at the pleasure of the County Executive, 6 members shall serve for terms of 3 years each; provided, that the terms of the original members shall be established in a manner that 2 shall expire each year, and that 1 member from each council district shall be represented on the commission. Except as otherwise provided in this chapter, in the case of authorities other than a New Castle County housing authority, there shall be 6 commissioners who shall be appointed as follows: 3 by the Governor for initial terms of 6 years, 4 years and 3 years respectively, 3 by the mayor of the most populous incorporated city or town in the area of operation in accordance with the last federal census for initial terms of 5 years, 2 years and 1 year respectively. Not more than 2 appointees of the Governor or of the mayor at any 1 time shall be from the same political party or subdivision thereof. The terms of the commissioners appointed before July 1, 1959, shall continue until the expiration of the terms thereof, the first occurring appointment to succeed the appointee of the resident judge shall be made by the mayor, the second occurring appointment to succeed the appointee of the resident judge shall be made by the Governor.

Forthwith upon the appointment of the original commissioners, the appointing officers shall execute and file or cause to be filed in the office of the Secretary of State a certificate or certificates stating that such appointments have been duly made and setting forth the name and term of office of each commissioner. Such certificate or certificates shall be conclusive evidence of the due and proper creation of the authority. Each appointing officer shall execute and file or cause to be filed in the office of the Secretary of State a certificate with respect to each appointment of a successor commissioner stating the fact of such appointment and setting forth the name of the successor commissioner and the successor commissioner's term of office. The respective appointing officers shall appoint successors to commissioners appointed by them or by their respective predecessors in office. In the case of an authority other than a New Castle County housing authority, each successor commissioner shall be appointed to hold office in the case of a vacancy for the unexpired term, or, in the case of expiration, for a term of 6 years or until a successor shall have been appointed and qualified. In the case of a New Castle County hous-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing authority, each successor commissioner shall be appointed to hold office in the case of a vacancy for the unexpired term, or, in the case of expiration of a term, for a term of 3 years from the date of expiration of such term or until a successor shall have been appointed and qualified.

In the case of an authority other than a New Castle County housing authority, the Governor and the mayor by unanimous vote may remove a commissioner of the authority for official misconduct, neglect of duty or incompetence, but only after the commissioner shall have been given a copy of the charges against the commissioner and an opportunity to be heard in person or by counsel in the commissioner's own defense; pending the determination of the charges against the commissioner, the Governor and the mayor by unanimous vote may suspend the commissioner from office. A copy of the charges and the result of the hearing shall be forwarded to DSHA.

In the case of a New Castle County housing authority, the County Executive, with the advice and consent of County Council, may remove a commissioner of the authority for official misconduct, neglect of duty or incompetence, but only after the commissioner shall have been given a copy of the charges against the commissioner and an opportunity to be heard in person or by counsel in the commissioner's own defense; pending the determination of the charges against the commissioner, the County Executive with the advice and consent of County Council by unanimous vote may suspend the commissioner from office. A copy of the charges and the result of the hearing shall be forwarded to the Department.

CREDIT(S)

39 Laws 1934, 2nd Sp. Sess., ch. 16, § 4; 48 Laws 1951, ch. 339, § 1; 52 Laws 1959, ch. 126, §§ 2-4; 56 Laws 1968, ch. 293, § 2; 57 Laws 1970, ch. 679, § 5B; 58 Laws 1971, ch. 161, § 2, eff. July 2, 1998; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 77 Laws 2010, ch. 340, § 1, eff. July 2, 2010.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
 Title 31. Welfare
  Part III. Housing
   Chapter 43. Housing Authority
    → → **§ 4304. Wilmington Housing Authority**

The Wilmington Housing Authority shall consist of 9 commissioners, 7 of whom shall be appointed by the Mayor of the City of Wilmington, 1 of whom shall be appointed by the Governor and 1 of whom shall be appointed by the County Executive of New Castle County. Each commissioner shall serve for a term of 3 years unless replaced before 3 years by an interim commissioner. No more than 5 commissioners or interim commissioners shall be of the same political party.

Notwithstanding any provisions of this chapter to the contrary, a Wilmington Housing Authority commissioner or interim commissioner shall serve at the pleasure of the person who appointed that commissioner or interim commissioner, and may be removed, with or without cause, by the appointing person. In the event of death, disability, resignation, or removal of a commissioner or interim commissioner before the expiration of that commissioner's or interim commissioner's term, the appointing person may appoint an interim commissioner to complete the term.

CREDIT(S)

58 Laws 1971, ch. 139; 59 Laws 1974, ch. 323, § 1; 64 Laws 1984, ch. 390, § 1; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995; 72 Laws 1999, ch. 9, § 1, eff. March 18, 1999.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 31. Welfare
    Part III. Housing
      Chapter 43. Housing Authority
        → → **§ 4308. Powers of authority**

(a) An authority shall constitute a body both corporate and politic, exercising public powers and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter, including the following powers in addition to others granted in this chapter:

(1) To investigate into living and housing conditions in its area of operations and into the means and methods of improving such conditions; to determine where unsanitary or substandard housing conditions exist; to study and make recommendations concerning the plans of the area of operations in relation to the problems of clearing, replanning and reconstruction of areas in which unsanitary or substandard conditions exist, and the providing of housing accommodations for persons of low income, and to cooperate with any city, regional or state planning agency;

(2) To prepare, carry out and operate projects; to provide for the construction, reconstruction, improvement, alteration or repair of any project or any part thereof; to take over by purchase, lease, or otherwise any project undertaken by any government; to act as agent for the federal government in connection with the acquisition, construction, operation or management of a project or any part thereof; to arrange with any government within the area of operation for the furnishing, planning, replanning, opening or closing of streets, roads, roadways, alleys, parks or other places or public facilities or for the acquisition by any government or any agency, instrumentality or subdivision thereof, including, specifically, the Federal Emergency Administration of Public Works and the Public Works Emergency Housing Corporation, of property, options or property rights or for the furnishing of property or services in connection with a project;

(3) To lease or rent any of the housing or other accommodations, or any of the lands, buildings, structures or facilities embraced in any project and to establish and revise the rents or charges therefor; to purchase, lease, obtain options upon, acquire by eminent domain or otherwise, sell, exchange, transfer, assign, mortgage or pledge any property, real or personal or any interest therein from any person, firm, corporation or any municipal state, or federal government or any agency, instrumentality or subdivision thereof, including specifically, the Federal Emergency Administration of Public Works and the Public Works Emergency Housing Corporation, by gift, grant, bequest or devise; to own, hold, clear and improve property; in its discretion to insure or provide for the insurance of the property or operations of the authority against such risks as the authority may deem advisable;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) To borrow money upon its bonds, notes, debentures or other evidences of indebtedness and to secure the same by mortgage upon property held or to be held by it or by pledge of its revenues, or in any other manner, and in connection with any loan by a government, to agree to limitations upon the exercise of any powers conferred upon the authority by this chapter; to invest any funds held in reserves or sinking funds, or in any funds not required for immediate disbursements in state or federal securities;

(5) To sue and be sued; to have a seal and to alter the same at pleasure; to have perpetual succession; to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority; to make and from time to time amend and repeal bylaws, rules and regulations not inconsistent with this chapter, and to carry into effect the powers and purposes of the authority;

(6) To enter upon any building or property in order to conduct investigations or to make surveys or soundings; to conduct examinations and investigations and to hear testimony and take proof under oath at public or private hearings on any matter material for its information; to issue subpoenas requiring the attendance of witnesses or the production of books and papers and to issue commissions for the examination of witnesses who are out of the State or unable to attend before the authority, or excused from attendance; and to do all things necessary or convenient to carry out the powers given in this chapter.

(b) Any of the investigations or examinations provided for in this chapter may be conducted by the authority or by a committee appointed by it, consisting of 1 or more commissioners, or by counsel, or by an officer or employee specially authorized by the authority to conduct it. Any commissioner, counsel for the authority, or any person designated by it to conduct an investigation or examination shall have power to administer oaths, take affidavits and issue subpoenas or commissions. Any authority may exercise any or all of the powers herein conferred upon it, either generally or with respect to any specific project or projects, through or by any agent or agents which it may designate.

CREDIT(S)

39 Laws 1934, 2nd Sp. Sess, ch. 16, § 8.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

c

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Title 31. Welfare
    Part III. Housing
      Chapter 43. Housing Authority
      →→ **§ 4314. Issuance of evidences of indebtedness; rights of creditors**

Subject to the restrictions set forth in this chapter, an authority may incur any indebtedness, issue any obligations and give any security therefor which it deems necessary or advisable in connection with any project undertaken by it under this chapter. Authorization for the issuance of bonds shall be made by resolution of the authority and the bonds shall be signed by any agent whom the authority designates.

The bonds, notes or other evidences of indebtedness executed by an authority shall not be a debt or charge against the State, county, municipality, or any subdivision or agency or instrumentality thereof other than the authority, and no individual liability shall attach for any lawful official act done by any commissioner, but a commissioner shall be liable for the commissioner's own malfeasance. The rights of creditors of an authority shall be solely against such authority as a corporate body and shall be satisfied only out of property held by it in its corporate capacity, and the enforcement of such rights shall be subject to all the provisions of Part III of this title.

CREDIT(S)

39 Laws 1934, 2nd Sp. Sess, ch. 16, § 13; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

▷

**Effective: April 12, 2012**

Maine Revised Statutes Annotated Currentness
    Title 25. Internal Security and Public Safety (Refs & Annos)
        ⌐▤ Part 5. Public Safety
            ⌐▤ Chapter 252-A. Firearms Regulation
                →→ **§ 2011. State preemption**

**1. Preemption.** The State intends to occupy and preempt the entire field of legislation concerning the regulation of firearms, components, ammunition and supplies. Except as provided in subsection 3, any existing or future order, ordinance, rule or regulation in this field of any political subdivision of the State is void.

**2. Regulation restricted.** Except as provided in subsection 3, no political subdivision of the State, including, but not limited to, municipalities, counties, townships and village corporations, may adopt any order, ordinance, rule or regulation concerning the sale, purchase, purchase delay, transfer, ownership, use, possession, bearing, transportation, licensing, permitting, registration, taxation or any other matter pertaining to firearms, components, ammunition or supplies.

**3. Exception.** This section does not prohibit an order, ordinance, rule or regulation of any political subdivision which, with the exception of appropriate civil penalty provisions, conforms exactly with any applicable provision of state law or which regulates the discharge of firearms within a jurisdiction.

**4. Law enforcement agency.** Nothing in this section limits the power of any law enforcement agency to regulate the type and use of firearms issued or authorized by that agency for use by its employees. For the purposes of this section "law enforcement agency" has the same meaning as set forth in section 3701.

**5. Restrictions on firearms and ammunition prohibited during state of emergency.** The provisions of this subsection apply to restrictions on firearms and ammunition during a state of emergency, as declared by the Governor pursuant to Title 37-B, section 742, subsection 1.

   A. During a state of emergency, notwithstanding any provision of law to the contrary, a person acting on behalf or under the authority of the State or a political subdivision of the State may not:

      (1) Prohibit or restrict the otherwise lawful possession, use, carrying, transfer, transportation, storage or display of a firearm or ammunition. The provisions of this paragraph regarding the lawful transfer of a firearm or ammunition do not apply to the commercial sale of a firearm or ammunition if an authorized

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

person has ordered an evacuation or general closure of businesses in the area of the business engaged in the sale of firearms or ammunition;

**(2)** Seize or confiscate, or authorize the seizure or confiscation of, an otherwise lawfully possessed firearm or ammunition unless the person acting on behalf of or under the authority of the State is:

    **(a)** Acting in self-defense against an assault;

    **(b)** Defending another person from an assault;

    **(c)** Arresting a person in actual possession of a firearm or ammunition for a violation of law; or

    **(d)** Seizing or confiscating the firearm or ammunition as evidence of a crime; or

**(3)** Require registration of a firearm or ammunition for which registration is not otherwise required by state law.

**B.** An individual aggrieved by a violation of this subsection may seek relief in an action at law or in equity for redress against any person who subjects that individual, or causes that individual to be subjected, to an action prohibited by this subsection.

**C.** In addition to any other remedy at law or in equity, an individual aggrieved by the seizure or confiscation of a firearm or ammunition in violation of this subsection may bring an action for the return of the firearm or ammunition in the Superior Court of the county in which that individual resides or in which the firearm or ammunition is located.

**D.** In an action or proceeding to enforce this subsection, the court shall award a prevailing plaintiff costs and reasonable attorney's fees.

CREDIT(S)

1989, c. 359; 1989, c. 502, § D, 19, eff. June 30, 1989; 2011, c. 626, § 1, eff. April 12, 2012.

2011 Legislation

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

AMENDMENT [II.]

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Constitution of the State of Delaware
    Article I. Bill of Rights
      → → § 6. Searches and seizures

Section 6. The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirma- tion.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

56

C

**Effective:[See Text Amendments]**

West's Delaware Code Annotated Currentness
  Constitution of the State of Delaware
    ↱▤ Article I. Bill of Rights
      ⇥ ⇥ **§ 7. Procedural rights in criminal prosecutions; jury trial; self-incrimination; deprivation of life, liberty or property**

Section 7. In all criminal prosecutions, the accused hath a right to be heard by himself or herself and his or her counsel, to be plainly and fully informed of the nature and cause of the accusation against him or her, to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself or herself, his or her friends or counsel, for obtaining witnesses in his or her favor, and a speedy and public trial by an impartial jury; he or she shall not be compelled to give evidence against himself or herself, nor shall he or she be deprived of life, liberty or property, unless by the judgment of his or her peers or by the law of the land.

CREDIT(S)

Amended by 72 Laws 1999, ch. 136, § 5, eff. June 24, 1999; 72 Laws 1999, ch. 136, § 6, eff. June 24, 1999.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: November 17, 2010**

West's Delaware Code Annotated Currentness
  Constitution of the State of Delaware
    Article I. Bill of Rights
      →→ **§ 20. Right to keep and bear arms**

Section 20. A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

Your Search...    SEARCH    RSS    Phone Numbers    Mobile    Help    Size    Print    Email

**Online Delaware Code**

HOME
Agency Information
Office Locations
Contact Information
Related Links
Site Map

SERVICES
Register of Regulations
  Current Issue
  Previous Issues
  Subscription Services
Administrative Code
Delaware Code
Laws of Delaware
City & Town Charters
Style Manual
Cumulative Table
Tour of Legislative Hall

INFORMATION
Citizen Participation

PAGE < | PAGE >

### ARTICLE I. BILL OF RIGHTS

§ 1. Freedom of religion.

Section 1. Although it is the duty of all persons frequently to assemble together for the public worship of Almighty God; and piety and morality, on which the prosperity of communities depends, are hereby promoted; yet no person shall or ought to be compelled to attend any religious worship, to contribute to the erection or support of any place of worship, or to the maintenance of any ministry, against his or her own free will and consent; and no power shall or ought to be vested in or assumed by any magistrate that shall in any case interfere with, or in any manner control the rights of conscience, in the free exercise of religious worship, nor a preference given by law to any religious societies, denominations, or modes of worship.

§ 2. Religious test for office not required.

Section 2. No religious test shall be required as a qualification to any office, or public trust, under this State.

§ 3. Free and equal elections.

Section 3. All elections shall be free and equal.

§ 4. Trial by jury.

Section 4. Trial by jury shall be as heretofore.

§ 5. Freedom of press and speech; evidence in libel prosecutions; jury questions.

Section 5. The free communication of thoughts and opinions is one of the invaluable rights of man. The press shall be free to every citizen who undertakes to examine the official conduct of persons acting in a public capacity; and any citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. In prosecutions for publications, investigating the proceedings of officers, or where the matter published is proper for public information, the truth thereof may be given in evidence; and in all indictments for libels the jury may determine the facts and the law, as in other cases.

§ 6. Searches and seizures.

Section 6. The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.

§ 7. Procedural rights in criminal prosecutions; jury trial; self-incrimination; deprivation of life, liberty or property.

Section 7. In all criminal prosecutions, the accused hath a right to be heard by himself or herself and his or her counsel, to be plainly and fully informed of the nature and cause of the accusation against him or her, to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself or herself, his or her friends or counsel, for obtaining witnesses in his or her favor, and a speedy and public trial by an impartial jury; he or she shall not be compelled to give evidence against himself or herself, nor shall he or she be deprived of life, liberty or property, unless by the judgment of his or her peers or by the law of the land.

§ 8. Prosecution by indictment or information; double jeopardy; just compensation for property.

Section 8. No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; and no person shall be for the same offense twice put in jeopardy of life or limb; nor shall any person's property be taken or applied to public use without the consent of his or her representatives, and without compensation being made.

§ 9. Courts shall be open; remedy for injury; suits against State.

Section 9. All courts shall be open; and every person for an injury done him or her in his or her reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.

§ 10. Suspension of laws by General Assembly.

Section 10. No power of suspending laws shall be exercised but by authority of the General Assembly.

§ 11. Excessive bail or fines; cruel punishments; health of prisoners.

Section 11. Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted; and in the construction of jails a proper regard shall be had to the health of prisoners.

§ 12. Right to bail; access to accused.

Section 12. All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great; and when persons are confined on accusation for such offenses their friends and counsel may at proper seasons have access to them.

§ 13. Suspension of habeas corpus.

Section 13. The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it.

§ 14. Commission of oyer and terminer, or jail delivery.

Section 14. No commission of oyer and terminer, or jail delivery, shall be issued.

§ 15. Corruption of blood; forfeiture; descent of suicide's estate.

Section 15. No attainder shall work corruption of blood, nor except during the life of the offender forfeiture of estate. The estates of those who destroy their own lives shall descend or vest as in case of natural death, and if any person be killed by accident no forfeiture shall thereby be incurred.

§ 16. Right of assembly; petition for redress of grievances.

Section 16. Although disobedience to laws by a part of the people, upon suggestions of impolicy or injustice in them, tends by immediate effect and the influence of example not only to endanger the public welfare and safety, but also in governments of a republican form contravenes the social principles of such governments, founded on common consent for common good; yet the citizens have a right in an orderly manner to meet together, and to apply to persons intrusted with the powers of government, for redress of grievances or other proper purposes, by petition, remonstrance or address.

§ 17. Standing army; necessity for legislative consent; subordination of military.

Section 17. No standing army shall be kept without the consent of the General Assembly, and the military shall in all cases and at all times be in strict subordination to the civil power.

§ 18. Prohibition against quartering soldiers in homes.

Section 18. No soldier shall in time of peace be quartered in any house without the consent of the owner; not in time of war but by a civil magistrate, in manner to be prescribed by law.

§ 19. Hereditary distinctions; holding office during good behavior; offices and titles from foreign states.

Section 19. No hereditary distinction shall be granted, nor any office created or exercised, the appointment to which shall be for a longer term than during good behaviour; and no person holding any office under this State shall accept of any office or title of any kind whatever from any king, prince, or foreign State.

§ 20. Right to keep and bear arms.

Section 20. A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use.

WE DECLARE THAT EVERYTHING IN THIS ARTICLE IS RESERVED OUT OF THE GENERAL POWERS OF GOVERNMENT HEREINAFTER MENTIONED.

Last Updated: July 07 2010 14:37:04.

▶

**Effective: May 3, 2007**

West's Delaware Code Annotated Currentness
  Constitution of the State of Delaware
    Article IV. Judiciary
      ➡➡ **§ 11. Jurisdiction of Supreme Court**

Section 11. The Supreme Court shall have jurisdiction as follows:

(1)(a) To receive appeals from the Superior Court in civil causes and to determine finally all matters of appeal in the interlocutory or final judgments and other proceedings of said Superior Court in civil causes: Provided that on appeal from a verdict of a jury, the findings of the jury, if supported by evidence, shall be conclusive.

(1)(b) To receive appeals from the Superior Court in criminal causes, upon application of the accused in all cases in which the sentence shall be death, imprisonment exceeding one month, or fine exceeding One Hundred Dollars, and in such other cases as shall be provided by law; and to determine finally all matters of appeal on the judgments and proceedings of said Superior Court in criminal causes: Provided, however, that appeals from the Superior Court in cases of prosecution under Section 8 of Article V of this Constitution shall be governed by the provisions of that Section.

(1)(c) Notwithstanding any provisions of this Section to the contrary, to receive appeals from the Superior Court in criminal causes, upon application by the State in all causes in which the Superior Court, or any inferior court an appeal from which lies to the Superior Court, has granted an accused any of the following: a new trial or judgment of acquittal after a verdict, modification of a verdict, arrest of judgment, relief in any post-conviction proceeding or in any action collaterally attacking a criminal judgment, or a new punishment hearing in a capital case after the court has imposed a sentence of death, or any order or judgment declaring any act of the General Assembly, or any portion of any such act, to be unconstitutional under either the Constitution of the United States or the State of Delaware, inoperative or unenforceable, except that no appeal shall lie where otherwise prohibited by the double jeopardy clause of the Constitution of the United States or of this State. Notwithstanding anything in this Article to the contrary, the General Assembly may by statute implement the jurisdiction herein conferred.

(2) Wherever in this Constitution reference is made to a writ of error or a proceeding in error to the Superior Court, such reference shall be construed as referring to the appeal provided for in Section (1)(a) and Section (1)(b) of this Article.

(3) To receive appeals from the Superior Court in cases of prosecution under Section 8 of Article V of this Con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

stitution and to determine finally all matters of appeal in such cases.

(4) To receive appeals from the Court of Chancery and to determine finally all matters of appeal in the interlocutory or final decrees and other proceedings in chancery.

(5) To issue writs of prohibition, quo warranto, certiorari and mandamus to the Superior Court, and the Court of Chancery, or any of the Judges of the said courts and also to any inferior court or courts established or to be established by law and to any of the Judges thereof and to issue all orders, rules and processes proper to give effect to the same. The General Assembly shall have power to provide by law in what manner the jurisdiction and power hereby conferred may be exercised in vacation and whether by one or more Justices of the Supreme Court.

(6) To issue such temporary writs or orders in causes pending on appeal, or on writ of error, as may be necessary to protect the rights of parties and any Justice of the Supreme Court may exercise this power when the court is not in session.

(7) To exercise such other jurisdiction by way of appeal, writ of error or of certiorari as the General Assembly may from time to time confer upon it.

(8) To hear and determine questions of law certified to it by other Delaware courts, the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, the United States Securities and Exchange Commission, or the highest appellate court of any other state, where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may, by rules, define generally the conditions under which questions may be certified to it and prescribe methods of certification.

CREDIT(S)

Amended by 71 Laws 1997, ch. 33, §1, eff. May 6, 1997; 75 Laws 2005, ch. 53, § 24, eff. April 26, 2005 (1st passed 74 Laws 2004, ch. 299, § 24, June 29, 2004); 76 Laws 2007, ch. 37, § 1, eff. May 3, 2007 (1st passed 75 Laws 2006, ch. 384, § 1, June 30, 2006).

PROPOSED AMENDMENT

<An amendment relating to certification of questions of law by a United States Bankruptcy Court, was proposed by 78 Laws 2012, ch. 316, § 1, first approved June 26, 2012.>

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

West's Delaware Code Annotated Currentness
  Delaware Rules of Court
    Rules of the Supreme Court
      Part IV. Other Proceedings
        → → RULE 41. CERTIFICATION OF QUESTIONS OF LAW

**(a) Who may certify.**

(i) *Delaware courts.* Other Delaware courts may, on motion or sua sponte, certify to this Court for decision a question or questions of law arising in any case before it prior to the entry of final judgment if there is an important and urgent reason for an immediate determination of such question or questions by this Court and the certifying court has not decided the question or questions in the case.

(ii) *Other entities.* The Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, the United States Securities and Exchange Commission, or the Highest Appellate Court of any other State may, on motion or sua sponte, certify to this Court for decision a question or questions of law arising in any matter before it prior to the entry of final judgment or decision if there is an important and urgent reason for an immediate determination of such question or questions by this Court and the certifying court or entity has not decided the question or questions in the matter.

**(b) Requirements for Accepting a Certification.** Certification will be accepted in the exercise of the discretion of the Court only where there exist important and urgent reasons for an immediate determination by this Court of the questions certified. A certification will not be accepted if facts material to the issue certified are in dispute. A certificate shall state with particularity the important and urgent reasons for an immediate determination by this Court of the question certified. Without limiting the Court's discretion to hear proceedings on certification, the following illustrate reasons for accepting certification:

(i) *Original question of law.* The question of law is of first instance in this State;

(ii) *Conflicting decisions.* The decisions of the trial courts are conflicting upon the question of law;

(iii) *Unsettled question.* The question of law relates to the constitutionality, construction or application of a statute of this State which has not been, but should be, settled by the Court.

**(c) Procedure for certification.** The procedure for certification shall be as follows:

(i) *Certification by trial court.* A judge of the certifying court shall sign and file with the clerk of that court a certification substantially in the form set forth in Official Form K;

(ii) *Filing by trial court.* The clerk of that court shall, within 5 days of the filing of such certification, file with the Clerk of this Court 6 certified copies of the certification and 6 true and correct copies of such of the following papers as may have been filed below:

(A) Petition. Any Petition for Certification;

(B) Response. Any response to the Petition for Certification; and

(C) Stipulation of facts. Any stipulation of facts with respect to the Certification;

(iii) *Clerk of the Supreme Court.* Upon the receipt of such copies, the Clerk of this Court shall forthwith docket the proceeding on certification in the same manner as other cases are docketed, shall deliver to each of the Justices 1 copy of the certification and any accompanying papers and shall send written notice to the parties of the filing of such proceeding;

(iv) *Action Upon Certification.* After docketing and unless otherwise ordered, this Court shall thereupon and without further argument determine whether to accept or refuse the certification. If refused, a certified copy of the order shall be sent to the certifying court and a copy thereof sent to each counsel. If accepted, the proceeding on certification shall be considered to have been duly instituted, and the Clerk shall send written notice thereof to the parties. The certification as filed shall constitute the record;

(v) *Procedure Upon Acceptance.* From the date of acceptance of certification further proceedings shall be governed by these Rules. Briefs shall be filed in the order recommended by the certifying court in the certification, unless the Court, at the time of approving the certification, shall designate a different order. In any event, insofar as time for filing is concerned, the party or parties required to file the first brief shall be considered the appellant and the other party or parties shall be considered appellee. The caption for papers filed in this Court after acceptance of certification by this Court shall reflect such relationship among the parties.

CREDIT(S)

Amended effective May 15, 2007.

Current with amendments received through June 1, 2012.

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# MEMORANDUM

| | |
|---|---|
| **TO:** | Panel Members |
| **FROM:** | Myron T. Steele, Chief Justice, Supreme Court of Delaware |
| **RE:** | 2009 Third Circuit Judicial Conference – Certified Questions |

This memorandum will address the process by which we accept certified questions and will discuss several examples from the United States Court of Appeals for the Third Circuit, the District Courts within the Third Circuit, and the SEC.

Our State Constitution permits various state and federal courts and the SEC to certify questions of law to our Court.[1] The constitutional provision provides:

> (8) To hear and determine questions of law certified to it by other Delaware courts, the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, the United States Securities and Exchange Commission, or the highest appellate court of any other state, where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may, by rules, define generally the conditions under which questions may be certified to it and prescribe methods of certification.[2]

Therefore it is within our discretion to accept or deny a certified question. The constitution requires us to find that there are *important and urgent reasons* for an immediate determination of such questions by this Court. We have previously declined to answer questions certified by the trial courts of Delaware because "it is

---

[1]  DEL. CONST. art. IV, § 11, cl. 8.

[2]  *Id.*

preferable as a matter of the orderly administration of justice for the trial courts of this State to decide in the first instance all questions of law, including new and challenging legal questions, so that this Court will have the benefit of the reasoning and analysis of the trial court."[3]  We may be more inclined to accept and answer a certified question, however, where the highest appellate court of any other state or a federal district or circuit court requests us to answer a novel question of Delaware law because we would otherwise not be able to exercise judicial review after the particular court's decision.  But we are not bound by another court's decision on a novel issue of Delaware law if we decline to accept, or decline to answer, another court's certified question.

Delaware Supreme Court Rule 41 also addresses which bodies may certify questions, the requirements for accepting a certified question, and the procedures for certification.[4]  First, the rule sets out the entities that may certify a question of law to this Court.  The rule permits the same entities to certify questions of law that are allowed under our constitution.  In fact, we have refused to answer questions from individual parties that attempt to certify questions.[5]  In *Brooks-McCollum v. Shareef*, we reiterated that under Rule 41 we only accept questions from state and

---

[3]    *State Farm Mut. Auto. Ins. Co. v. Dann*, 953 A.2d 127, 127 (Del. 2001).

[4]    DEL. SUPR. CT. R. 41.

[5]    *Brooks-McCollum v. Shareef*, 871 A.2d 1127 (Del. 2004) (Table).

federal courts and that individual parties have no right to request certification under Rule 41.[6]

Second, Rule 41 provides the requirements for accepting certification. As mentioned, important and urgent reasons for an immediate determination by our Court must exist. We will not accept certification if the facts material to the issue certified are in dispute.[7] Without limiting the Court's discretion, the rule also provides three reasons why we may accept a question: (1) original question of law, which is one of first instance in this State; (2) conflicting decisions, which occurs when decisions of the trial courts are conflicting upon the question of law; and (3) unsettled question, which is a question of law that relates to the constitutionality, construction, or application of a statute which has not been, but should be, settled by this Court.[8]

Finally, Rule 41 sets out a detailed procedure for certification. First, a judge of the certifying court or agency must sign and file a certification on the form set forth in Form K of our official forms. Second, the clerk of the certifying court must file with our clerk, a petition, any response, and a stipulation of facts. Third, the clerk of our Court will docket the proceeding and distribute to the Justices a

---

[6]     *Id.*

[7]     DEL. SUPR. CT. R. 41(b).

[8]     *Id.*

copy of the certification and any accompanying papers. Fourth, the Justices will determine whether to accept or refuse the certification. If accepted, the certification as filed constitutes the record. And finally, briefs will be filed in the order recommended by the certifying court, unless we designate a different order, and, if necessary, oral arguments will be scheduled. Once accepted "[t]he scope of the issues that may be considered . . . is limited by the procedural posture of the case."[9]

In the past, we have accepted and answered certified questions from many jurisdictions including the United States Court of Appeals for the Third Circuit, the United States District Courts within the Third Circuit, and the Securities and Exchange Commission. The overwhelming majority of certified questions, however, come from our own State trial courts.[10]

## United States Court of Appeals for the Third Circuit

In 1998, we accepted certification from the Third Circuit in *Kerns v. Dukes*.[11] The Third Circuit requested that we make a determination on whether the trial courts of Delaware had jurisdiction over the plaintiffs' claims or whether the

---

[9]     *Rales v. Blasband*, 634 A.2d 927, 931 (Del. 1993).

[10]     Our opinions on questions certified by our own State trial courts will not be discussed in this memorandum.

[11]     *Kerns v. Dukes*, 707 A.2d 363 (Del. 1998).

plaintiffs could pursue their claims in federal court. The plaintiffs filed suit against the members and officials of the Sussex County Council and the officials of DNREC in federal district court in Delaware claiming that they were being compelled to abandon their reliance on septic systems to "join and . . . pay the costs of, and fees for, the expanded sewer system" in violation of their procedural and substantive due process rights and several federal statutes.[12] The District Court dismissed the claims based on lack of jurisdiction and the plaintiffs appealed. The Third Circuit, before rendering a decision, asked us to consider, in light of what it saw as "a potential tension" between Superior Court and Court of Chancery decisions, whether the courts of Delaware could provide plaintiffs with "a plain, speedy and efficient" remedy.[13]

We determined that the courts of Delaware, specifically the Court of Chancery, could provide an ample remedy to the plaintiffs. "The jurisdiction of the courts of Delaware encompasses the Property Owners' § 1983 claims as brought, and such courts may provide relief equivalent to that available in federal court, should the claims be sustained" and the plaintiffs may recover under their

---

[12]  *Id.* at 366.

[13]  *Id.* at 367.

5

Clean Water Act claim the relief equivalent to that available in federal court if they prevail.[14]

In 1997, the Third Circuit certified four questions in *Penn Mutual Life Insurance Co. v. Oglesby*[15] because the legal issues presented were of first impression under Delaware law. The four issues that the Third Circuit certified concerned the effect of an undisclosed pre-existing condition on an insured's disability income insurance policy.[16] Here, we seemingly approached the case just as we would have had it come before us on appeal. We began with the general principles of interpreting insurance contracts and discussed the policy of construing the insurance contract against its drafter.[17] We then examined the contract language itself to answer the certified questions. We also considered a split in authority over whether an insurance company could use the "first manifest doctrine" as a defense to liability based on when an injury first manifests. We agreed with the District Court's opinion, which concluded "that 'the Supreme Court of Delaware would not relieve Penn Mutual of its bad bargain by allowing it to use a defense of 'first manifest' at trial.'"[18]

---

[14]     *Id.* at 370.

[15]     *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146 (Del. 1997).

[16]     *Id.* at 1148-49.

[17]     *Id.* at 1149-50.

[18]     *Id.*

The Third Circuit certified two more questions in *Konstantopoulos v. Westvaco Corp.*[19] in 1996. We answered the question presented—whether the Delaware Workers' Compensation Act prevents an employee from filing a tort claim against her employer for alleged sexual harassment that occurred during the course of employment—in the negative.[20] The Court determined that under the Act "an employee's recovery against an employer for personal injuries sustained during the course of employment and arising out of employment is limited to those remedies provided under the Delaware Workers' Compensation Act."[21] Our answer rendered the second half of the first question and the second question moot; therefore, we declined to answer those questions.

The three cases examined demonstrate two areas where we have accepted certification: jurisdiction issues and construction of Delaware statutes. In all three cases, we approached the issue just as we would have had the case been before us on appeal. Our answers to the certified questions, however, were constrained to the specific factual and procedural nature of the case at bar.

### District Courts Within the Third Circuit

---

[19]     *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936 (Del. 1996).

[20]     *Id.* at 937.

[21]     *Id.* at 940.

7

In *Rales v. Blasband*,[22] we accepted certification from the United States District Court for the District of Delaware in 1993. In *Rales*, we considered whether the stockholder-plaintiff, in accordance with the substantive law of Delaware, alleged facts to show that demand is excused on a board of directors in a double derivative action.[23] The stockholder-plaintiff owned stock in a parent corporation and challenged a decision of the subsidiary's board. To answer the certified question, the Court first considered what were the applicable and appropriate legal principles, including the applicability of the *Aronson* test.[24] The Court concluded that "the *Aronson* test does not apply in the context of this double derivative suit because the Board was not involved in the challenged transaction."[25] The appropriate test here was whether the stockholder-plaintiff "raise[ed] a reasonable doubt regarding the ability of a majority of the Board to exercise properly its business judgment in a decision on a demand had one been made at the time this action was filed."[26] The Court rejected the defendants' argument that would require a stockholder-plaintiff to always make demand or demonstrate a

---

[22]    *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).

[23]    *Id.* at 932.

[24]    *Id.*

[25]    *Id.* at 937. *See also id.* at 934 ("A plaintiff in a double derivative suit is still required to satisfy the *Aronson* test in order to establish that demand on the subsidiary's board is futile." ).

[26]    *Rales*, 634 A.2d at 937.

8

reasonable probability of success on the merits.[27]  This case provides an example

of how a certified question opinion may clarify a particular area of law and provide

guidance for future disputes—just as any other opinion issued following appeal.[28]

In 1985, the United States District Court for the District of Delaware

certified three questions regarding a Delaware statute—the Municipal Tort Claims

Act—in *Fiat Motors of North America, Inc. v. Mayor and Council of the City of*

*Wilmington*.[29]  In *Fiat Motors*, Fiat attempted to bring a negligence claim against

the City of Wilmington.  The District Court certified the questions because of the

"unsettled state of Delaware decisional law as to municipal immunity and in view

of the broad impact which a ruling defining the scope of municipal immunity

would have in Delaware."[30]  We concluded:  (1) the Tort Act renders a

municipality immune from liability for its negligent acts or omissions; (2) the Tort

Act prohibits a municipality from waiving its statutory immunity; and (3) a

municipality's purchase of insurance does not waive its statutory immunity.[31]

---

[27]     *Id.* at 934.

[28]     On Westlaw, *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), has over 2,200 citing references.

[29]     *Fiat Motors of N. Am., Inc. v. Mayor and Council of the City of Wilmington*, 498 A.2d 1062 (Del. 1985).

[30]     *Id.* at 1063.

[31]     *Id.* at 1063-64.

Here, again, our Court surveyed the Delaware case law and examined the relevant statutory provisions in formulating its answers to the certified questions.

We have refused to answer questions that a District Court certified. For example, we refused to answer certified questions where the certifying court had previously, in another case, ruled upon "basically the same questions of law which were decided" in the previous case.[32] Thus, the question does not comply with Rule 41. Also, in another case, we refused certification where a statutory amendment after the case was initiated rendered the legal issue moot.

## Securities and Exchange Commission

The Delaware Constitution and Rule 41 were amended recently to allow certified questions from the Securities and Exchange Commission. In 2008, this process was first used in *CA, Inc. v. AFSCME Employees Pension Plan*.[33]

The SEC certified two questions: (1) whether the AFSCME proposed stockholder bylaw, which would require the corporation to reimburse a stockholder for reasonable expenses incurred in nominating a candidate for the board so long as certain requirements were met, is a proper subject for stockholder action as a matter of Delaware law; and (2) would AFSCME's proposal, if adopted as

---

[32]     *Nemours Found. V. Manganaro Corp.*, 565 A.2d 280 (Del. 1989) (Table).

[33]     *CA, Inc. v. AFSCME Employees Pension Plan*, 953 A.2d 227 (Del. 2008).

presented, would cause the corporation, CA, Inc., to violate any Delaware law to which it is subject.[34] We answered both questions in the affirmative.

This case provides a good example of an important distinction between a certified question opinion and an opinion rendered on appeal. Our answer to the first question followed the same path that it likely would have had it been raised on appeal. We examined the relevant statutory provisions and case law to determine that the stockholder bylaw proposal was a proper action for stockholders, even without concurrence of the board.[35] Our answer to the second question, however, illustrates the distinction. We recognized that the certified question requested a determination in the abstract, and not a determination under a specific factual setting.[36] Therefore, we were required to "consider any possible circumstance under which a board of directors might be required to act."[37] In doing so, we determined that, at least in one hypothetical case, "the board of directors would breach their fiduciary duties if they complied with the Bylaw"; therefore we concluded that the bylaw, as drafted, would violate Delaware law.[38] The bylaw, as drafted, violated a Delaware prohibition on "contractual arrangements that commit

---

[34]    *Id.* at 231.

[35]    *Id.* at 233-37.

[36]    *Id.* at 238.

[37]    *CA, Inc.*, 953 A.2d at 238.

[38]    *Id.*

11

the board of directors to a course of action that would preclude them from fully discharging their fiduciary duties to the corporation and the shareholders."[39]  This scenario demonstrates the breadth of a certified question, as opposed to a limited specific factual record that is presented on appeal.

Certified questions permit our Court to provide definitive answers, primarily, on issues of first impression under Delaware law.  While we prefer to review a case with the full benefit of another court's reasoning before us, certified questions allow the Court to accept questions from foreign forums where we would otherwise not be able to review the issue on appeal.  This process provides an avenue for our Court to decide issues of Delaware law.  We approach these cases just as we approach cases on appeal.  However, we are cognizant of the abstract nature of answering certified questions.  Our answers are also limited by the factual and procedural record presented as well as the guidelines set forth in Rule 41 for accepting and answering certified questions.

---

[39]    *Id.*

**Table 1:** Delaware Supreme Court Certified Questions
From Federal Courts Within the Third Circuit, and the SEC[*]

| Certifying Court: | Cases Accepted: | Answered/Refused: |
|---|---|---|
| United States Court of Appeals for the Third Circuit | 3 | 3:     707 A.2d 363 (1998)<br>      695 A.2d 1146 (1997)<br>      690 A.2d 936 (1996) |
| United States District Court for the District of Delaware | 12 | 10:   787 A.2d 71  (2001)<br>      706 A.2d 499 (1998)<br>      688 A.2d 894 (1997)<br>      669 A.2d 73 (1995)<br>      647 A.2d 1098 (1994)<br>      634 A.2d 927 (1993)<br>      619 A.2d 911 (1992)<br>      602 A.2d 65 (1991)<br>      535 A.2d 1346 (1988)<br>      498 A.2d 1062 (1985)<br>2 *Refused*:<br>      577 A.2d 754  (1990)<br>      565 A.2d 280 (1989) |
| United States District Court for the District of New Jersey | 0 | 0: |
| United States District Court for the [Eastern, Middle, and Western] District of Pennsylvania | 1 (E.D. Pa) | 1:     677 A.2d 29 (1996) |
| Securities and Exchange Commission | 1 | 1:     953 A.2d 227 (2008) |

---

[*]     We have also accepted and answered certified questions from other federal courts. *See Duncan v. Theratx, Inc.*, 775 A.2d 1019 (Del. 2001) (Eleventh Circuit); *Riblet Prods. Corp. v. Nagy*, 683 A.2d 37 (Del. 1996) (Seventh Circuit); *Shaw v. Agri-Mark, Inc.*, 663 A.2d 464 (Del. 1995) (Second Circuit); *Farahpour v. DCX, Inc.*, 635 A.2d 894 (Del. 1994) (D.C. Circuit); *E.I. DuPont de Nemours & Co. v. Fl. Evergreen Foliage*, 744 A.2d 457 (Del. 1999) (District Court for the Southern District of Florida). Recently, we accepted certification from the United States District Court for the Southern District of New York. *See A.W. Fin. Serv., S.A. v. Empire Res., Inc.*, No. 55, 2009 (Del.).