No. 12-3433

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DOE, *et al*,
*Plaintiffs-Appellants*,

v.

WILMINGTON HOUSING AUTHORITY, *et al*,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Delaware,
No. 1:10-cv-00473 (Hon. Leonard P. Stark)

# JOINT APPENDIX

# VOLUME I

# A1 – A28

Francis G.X. Pileggi
Penelope O'Connell
Jill Agro
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667

*Attorneys for Appellants Jane Doe and Charles Boone*

Dated: October 23, 2012

## JOINT APPENDIX TABLE OF CONTENTS

### VOLUME I

Notice of Appeal by Jane Doe and Charles Boone,
D.I. 117 (Aug. 27, 2012) ......................................................................A1

Order by Judge Stark re: Cross-Motions for Summ. J.,
D.I. 115 (July 27, 2012) ......................................................................A2

Judgment in Favor of Defs. and Against Pls., D.I. 116 (July 30, 2012)................A3

*Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285 (D. Del. July 27, 2012),
D.I. 114 (Opinion on Cross-Motions for Summ. J.) ..........................................A4

### VOLUME II

District Court Docket Report ...........................................................................A29

Letter from R. Dowlut, Esq. to WHA (Feb. 1, 2010) .........................................A40

Emails among WHA Board Members (redacted) (Feb. 1, 2010) .........................A42

Email from Purnell to WHA Board Members (redacted) (Feb. 3, 2010).............A43

Emails among WHA Board Members (redacted) (Feb. 24, 2010).......................A45

Notice of Removal of Pending State Ct. Action, D.I. 1 (June 1, 2010) ...............A47

Letter from F. Pileggi, Esq. to Peter D. Dalleo, Clerk, D.I. 3 (June 2, 2010) ......A97

Answer to Compl. and Affirmative Defenses by Frederick S. Purnell
and Wilmington Housing Authority, D.I. 13 (June 16, 2010) ..........................A99

Decl. by Frederick S. Purnell, Sr. and Wilmington Hous. Auth.,
D.I. 20 (July 29, 2010)....................................................................................A106

Transcript of Status Conference Held June 30, 2010,
D.I. 21 (Aug. 5, 2010) ....................................................................................A259

Park View Lease of "Jane Doe" (Redacted), D.I. 22 (Aug. 5, 2010).................A287

Amended Complaint (without exs.), D.I. 23(Aug. 6, 2010)...............................A290

Amended Answer by Frederick S. Purnell, Sr. and
   Wilmington Hous. Auth., D.I. 24 (Aug. 20, 2010) .........................................A303

Order Staying Case, D.I. 29 (September 7, 2010) ...............................................A312

WHA Notice Rescheduling Public Hearing to October 14, 2010).....................A313

Letter from B. Willoughby, Esq. to R. Dowlut, Eqs. (Sept. 28, 2010)...............A315

Letter from F. Pileggi, Esq. to B. Willoughby, Esq. (Sept. 30, 2010)................A317

Email from R. Dowlut, Esq. to F. Barbera (redacted) (Oct. 1, 2010).................A319

WHA Public Hearing Agenda (Oct. 14, 2010)....................................................A320

WHA Public Hearing Sign-In Sheets (Oct. 14, 2010).........................................A321

Email from B. Willoughby, Esq. to WHA Board Members (redacted)
   (Oct. 21, 2010)................................................................................................A324

Letter from B. Willoughby, Esq. to Judge Stark,
   D.I. 32 (Oct. 26, 2010) ...................................................................................A327

Second Amended Compl. (without exs.), D.I. 40 (Dec. 6, 2010) ......................A333

Second Amended Answer and Affirmative Defenses,
   D.I. 47 (Dec. 20, 2010)...................................................................................A348

WRC Resolution No. 10-03 (Dec. 13, 2010)......................................................A359

The Park View Amended House Rule 24...........................................................A361

WHA Resolution No. 10-25 (Oct. 25, 2010) .....................................................A363

WHA Firearms and Weapons Policy..................................................................A365

Excerpts from Wilmington Housing Authority Public Hearing
   Transcript (Oct. 14, 2010) ..............................................................................A367

Excerpts from Deposition of Charles Boone (Jan. 19, 2011)............................A376

Excerpts from Deposition of Frederick S. Purnell, Sr. (Jan. 24, 2011).............A387

Excerpts from Deposition of Bernadette Winston (Jan. 25, 2011)....................A404

Excerpts from Deposition of Donald Mell (Jan. 25, 2011) ...............................A407

Excerpts from Deposition of Geoff Langdon (Jan. 27, 2011) ...........................A414

Excerpts from Deposition of Karen Spellman (Jan. 31, 2011)..........................A419

Excerpts from Deposition of Nicole Majeski (Feb. 1, 2011) ...........................A423

Mot. for Summ. J. by Jane Doe and Charles Boone,
    D.I. 86 (Feb. 21, 2011) ...................................................................A428

Mot. for Summ. J. By Frederick S. Purnell, Sr. and
    Wilmington Hous. Auth., D.I. 88 (Feb. 21, 2011) .........................................A432

Defs.' Opening Br. in Support of Mot. for Summ. J.,
    D.I. 89 (Feb. 21, 2011) ...................................................................A433

Pls.' Opening Br. in Support of  Mot. for Summ. J. (redacted),
    D.I. 95 (Feb. 25, 2011) ...................................................................A459

Defs.' Answering Br. in Opp. to Plfs.' Mot. for Summ. J. (redacted),
    D.I. 102 (Mar. 31, 2011)..................................................................A548

Pls.' Answering Br. in Opp. to Defs.' Mot. for Summ. J. (redacted),
    D.I. 103 (Apr. 1, 2011) ...................................................................A573

Letter from F. Pileggi, Esq. to Judge Stark re: Supreme Ct. of Delaware re:
    Decision in *Griffin v. Delaware*, D.I. 111 (June 21, 2012)...........................A628

Letter from B. Willoughby, Esq. to Judge Stark re: Supreme Ct. of Delaware
    Decision in *Griffin v. State*, D.I. 113 (June 22, 2012)....................................A638

Antonin Scalia and Bryan A. Garner, *Reading Law:
    The Interpretation of Legal Texts* (2012) ........................................................A639

The Park View website,
    http://www.whadelaware.org/communities/parkview.php ...........................A642

Stephen P. Halbrook, *Securing Civil Rights: Freedmen, The Fourteenth
    Amendment and the Right to Bear Arms* (2010)...............................................A643

*Guy Montag Doe, et al. v. San Francisco Hous. Auth., et al.*,
    No. CV-08-03112 (N.D. Cal. Jan. 12, 2009) ...................................................A645

Randy J. Holland, *The Delaware State Constitution:*
  *A Reference Guide* (2002) ...............................................................................A649

Tx. Op. Att'y Gen., No. DM-71, 1991 WL 527492 (Dec. 31, 1991).................A651

Del. Op. Att'y Gen., No. 79-F013, 1979 WL 29005 (Nov. 30, 1979) ...............A655

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

JANE DOE and CHARLES BOONE,   :
             :
 Plaintiffs,       :
             :
  v.        : C.A. No. 1:10-cv-00473-LPS
             :
WILMINGTON HOUSING AUTHORITY :
and FREDERICK S. PURNELL, SR., in his :
official capacity as executive director of the :
Wilmington Housing Authority,   :
             :
 Defendants.      :

## PLAINTIFFS' NOTICE OF APPEAL

Final judgment having been entered (D.I. 116), notice is hereby given that Plaintiffs Jane

Doe and Charles Boone appeal to the United States Court of Appeals for the Third Circuit from

the District Court's Opinion and Order dated July 27, 2012, (D.I. 114).

Respectfully Submitted,

ECKERT SEAMANS CHERIN &
MELLOTT, LLC

FRANCIS G. X. PILEGGI, ESQ. (DE #2624)
PENELOPE B. O'CONNELL, ESQ. (DE#4898)
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
(302) 552-2904
fpileggi@eckertseamans.com
poconnell@eckertseamans.com

Dated: August 27, 2012     Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANE DOE and CHARLES BOONE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 10-473-LPS |
| | : | |
| WILMINGTON HOUSING AUTHORITY and | : | |
| FREDERICK S. PURNELL, SR., in his official | : | |
| capacity as executive director of the | : | |
| Wilmington Housing Authority, | : | |
| | : | |
| Defendants. | : | |

### ORDER

At Wilmington, this 27th day of July, 2012, for the reasons discussed in the Opinion

issued on this same date,

**IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment (D.I. 88) is ***GRANTED.***

2.    Plaintiffs' Motion for Summary Judgment (D.I. 86) is ***DENIED.***

3.    The parties' post-hearing supplemental letter, which was filed on July 22, 2011

and docketed as a motion (D.I. 109), has been considered by the Court and, to the extent it is

viewed as a motion, is ***DENIED***.

4.    The Clerk is directed to enter judgment against Plaintiffs and in favor of

Defendants.

 

_____
UNITED STATES DISTRICT JUDGE

A0002

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JANE DOE AND CHARLES BOONE,   )
                              )
            Plaintiffs,       )
                              )
    v.                        )   Civil Action No. 10-473-LPS
                              )
WILMINGTON HOUSING            )
AUTHORITY, ET AL.,            )
                              )
            Defendants.       )

## JUDGMENT IN A CIVIL CASE

At Wilmington this **30th** day of **July, 2012.**

For the reasons set forth in the Court's Opinion and Order dated July 27, 2012;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of defendants and against plaintiffs.

_____
UNITED STATES DISTRICT JUDGE


_____
(By) Deputy Clerk

A0003


--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Jane DOE and Charles Boone, Plaintiffs,
v.
WILMINGTON HOUSING AUTHORITY and Frederick S. Purnell, Sr., in his official capacity as executive director of the Wilmington Housing Authority, Defendants.

C.A. No. 10–473–LPS.
July 27, 2012.

**Background:** Residents of privately-owned housing facility managed by Wilmington Housing Authority (WHA), a nonprofit agency of the State of Delaware providing housing to low-income families and individuals in that city, and public housing facility owned and operated by WHA, initiated state court action seeking to invalidate original house rule and original lease agreement prohibiting tenants from possessing firearms. Action was removed to federal court. Rule and firearms policy were amended in light of _McDonald v. City of Chicago_ decision of United States Supreme Court, and residents challenged two aspects of revised policy in amended complaint. Parties cross-moved for summary judgment.

**Holdings:** The District Court, Stark, J., held that:
(1) residents had established their standing to sue, even though they did not own firearms;
(2) challenge to original policies was moot;
(3) "common area" provision regulated conduct not within core of Second Amendment protections, but court would assume without deciding that provision regulated conduct within its scope;
(4) court would assume that common area provision was not presumptively lawful and would not decide whether common areas were "sensitive places";
(5) intermediate constitutional scrutiny applied, and common area provision survived thereunder;
(6) "reasonable cause" provision furthered compelling interest in protecting safety of residents, guests, and others present at authority-owned or operated facilities;
(7) Delaware Supreme Court would not find that revised policy violated residents' rights under Delaware Constitution; and
(8) Delaware Supreme Court would not find that authority's firearms policies were expressly or impliedly preempted.

Defendants' motion granted; plaintiffs' motion denied.

**West Headnotes**

**[1] Federal Civil Procedure 170A ☞103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

Plaintiffs have burden to show they have standing to bring suit, and each standing requirement must be supported in the same way as any other matter on which plaintiff bears the burden of proof, i.e., with manner and degree of evidence required at successive stages of litigation. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[2] Federal Civil Procedure 170A ☞103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Civil Procedure 170A ☞103.3**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.3 k. Causation; Redressability. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

To meet Article III standing requirements, plaintiff must have suffered injury-in-fact, that is invasion of legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; there must also be causal connection between injury and conduct complained of, and injury must be fairly traceable to challenged action of defendant, and not result of independent action of some third party not before the court, and it must be likely that injury will be redressed by a favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

[3] Constitutional Law 92 ☞675

92 Constitutional Law
   92VI Enforcement of Constitutional Provisions
      92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
         92VI(A)1 In General
            92k675 k. Zone of Interest. Most Cited Cases

Federal Civil Procedure 170A ☞103.2

170A Federal Civil Procedure
   170AII Parties
      170AII(A) In General
         170Ak103.1 Standing
            170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

Federal Civil Procedure 170A ☞103.4

170A Federal Civil Procedure
   170AII Parties
      170AII(A) In General
         170Ak103.1 Standing
            170Ak103.4 k. Rights of Third Parties or Public. Most Cited Cases

In addition to constitutional standing, plaintiff must establish "prudential standing," which involves consideration of whether prudential concerns should merit limitation on the exercise of its judicial authority and embraces principles that (1) plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or interests of third parties, (2) even when plaintiff has alleged redressable injury sufficient to meet requirements of Article III, federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches, and (3) plaintiff's complaint must fall within zone of interests to be protected or regulated by statute or constitutional guarantee in question. U.S.C.A. Const. Art. 3, § 2, cl. 1.

[4] Weapons 406 ☞106(3)

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regulatory Provisions
         406k106 Validity
            406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

Residents of privately-owned housing facility managed by nonprofit state agency providing housing to low-income families and individuals in particular city, and of public housing facility owned and operated by that authority, did not have to own firearms and possess them in violation of authority policy in order to have standing to challenge constitutionality of that policy.

[5] Federal Courts 170B ☞12.1

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk12 Case or Controversy Requirement
            170Bk12.1 k. In General. Most Cited Cases

Defendant's voluntary cessation of challenged practice does not deprive federal court of its power to determine legality of practice, i.e., it does not render claim moot.

[6] Federal Courts 170B ☞12.1

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk12 Case or Controversy Requirement
            170Bk12.1 k. In General. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

Case is moot if there (1) has been a complete discontinuation of the disputed conduct, (2) are no continuing effects after the discontinuation, and (3) are no other factors justifying relief.

**[7] Federal Courts 170B ☞12.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk12 Case or Controversy Requirement
          170Bk12.1 k. In General. Most Cited
Cases

Case is moot if it is clear that the wrongful behavior being challenged is not reasonably expected to recur.

**[8] Federal Courts 170B ☞12.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk12 Case or Controversy Requirement
          170Bk12.1 k. In General. Most Cited
Cases

Determination of mootness requires fact-sensitive analysis and prediction based on likelihood of recurrence of complained-of conduct, defendant's expressions of future intent, and public interest in resolution of dispute.

**[9] Federal Courts 170B ☞12.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk12 Case or Controversy Requirement
          170Bk12.1 k. In General. Most Cited
Cases

Party asserting mootness must demonstrate that it is unreasonable to believe challenged conduct would, without judicial ruling, begin anew; where defendant is government actor, there is rebuttable presumption that objectionable behavior will not recur, and in case of actions of public officials, to avoid conclusion of mootness following policy change there must be sub-

stantial likelihood that regulation or policy in dispute will be reenacted.

**[10] Constitutional Law 92 ☞977**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
      92VI(C) Determination of Constitutional Questions
        92VI(C)2 Necessity of Determination
          92k977 k. Mootness. Most Cited Cases

Residents' challenge to constitutionality of housing authority's original policies prohibiting the possession of firearms by residents was moot, where policies had been revised in light of United States Supreme Court decision incorporating Second Amendment to states through Fourteenth Amendment; authority had amended public housing lease in accordance with applicable Housing and Urban Development (HUD) regulations, thereby creating significant disincentive to revert to previous practices, particularly since it all but conceded that its original policies were unconstitutional in light of that decision, and there was no evidence in record that original policies were ever enforced, further reducing likelihood that they would be reenacted. U.S.C.A. Const.Amends. 2, 14.

**[11] Weapons 406 ☞106(3)**

406 Weapons
    406I In General
      406k102 Constitutional, Statutory, and Regulatory Provisions
        406k106 Validity
          406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

"Common area provision," prohibiting public housing authority residents from displaying or carrying firearms or other weapons in common areas except when they were being transported to or from residents' unit or being used in self-defense, regulated conduct that was not within core of what was protected by Second Amendment, the right of law-abiding, responsible citizens to use arms in defense of hearth and home; however, court would assume without deciding that provision regulated conduct within scope of Second Amendment. U.S.C.A. Const.Amend. 2.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

[12] **Weapons 406** 🔑106(3)

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

District court would assume that "common area provision," prohibiting public housing authority residents from displaying or carrying firearms or other weapons in common areas except when they were being transported to or from residents' unit or being used in self-defense, was not presumptively lawful and would proceed to determine whether challenged regulation could withstand constitutional scrutiny; furthermore, court would not decide whether those common areas were "sensitive places" for purposes of determining regulations' presumptive lawfulness.

[13] **Weapons 406** 🔑106(3)

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

Firearms regulations governing sensitive places are presumptively lawful.

[14] **Constitutional Law 92** 🔑3877

92 Constitutional Law
    92XXVII Due Process
        92XXVII(B) Protections Provided and Deprivations Prohibited in General
            92k3877 k. Reasonableness, Rationality, and Relationship to Object. Most Cited Cases

Court applying "rational basis" test in determining whether due process is violated must uphold challenged regulation as long as court finds that it furthers any legitimate governmental goal. U.S.C.A. Const.Amend. 14.

[15] **Constitutional Law 92** 🔑3901

92 Constitutional Law
    92XXVII Due Process
        92XXVII(B) Protections Provided and Deprivations Prohibited in General
            92k3901 k. Levels of Scrutiny; Strict or Heightened Scrutiny. Most Cited Cases

"Reasonable regulation" test is more demanding than rational basis review for determining whether challenged regulation violates due process, but more deferential than intermediate scrutiny. U.S.C.A. Const.Amend. 14.

[16] **Weapons 406** 🔑106(3)

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

When "reasonable regulation" test is applied, government may regulate exercise of right to bear arms under its inherent police power so long as the exercise of that power is reasonable; in this way, laws that are reasonably designed to further public safety are upheld, whereas laws that destroy Second Amendment rights are struck down. U.S.C.A. Const.Amend. 2.

[17] **Constitutional Law 92** 🔑3901

92 Constitutional Law
    92XXVII Due Process
        92XXVII(B) Protections Provided and Deprivations Prohibited in General
            92k3901 k. Levels of Scrutiny; Strict or Heightened Scrutiny. Most Cited Cases

To withstand "intermediate scrutiny," there must be reasonable, but not necessarily perfect, fit between regulation challenged as violative of due process and significant, substantial, or important government interest. U.S.C.A. Const.Amend. 14.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

[18] **Constitutional Law 92 &#x21DD;3901**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(B) Protections Provided and De-
privations Prohibited in General
      92k3901 k. Levels of Scrutiny; Strict or
Heightened Scrutiny. Most Cited Cases

    For law to pass muster on due process challenge
under "strict scrutiny," it must be narrowly tailored to
serve a compelling state interest. U.S.C.A.
Const.Amend. 14.

[19] **Weapons 406 &#x21DD;106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regu-
latory Provisions
      406k106 Validity
         406k106(3) k. Violation of Right to Bear
Arms. Most Cited Cases

    Strict scrutiny is appropriate only where chal-
lenged law severely limits possession of firearms.
U.S.C.A. Const.Amends. 2, 14.

[20] **Weapons 406 &#x21DD;106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regu-
latory Provisions
      406k106 Validity
         406k106(3) k. Violation of Right to Bear
Arms. Most Cited Cases

    Intermediate scrutiny would be applied to chal-
lenge to constitutionality of "common area" provision
of housing authority policy, prohibiting residents from
displaying or carrying firearms or other weapons in
common areas except when they were being trans-
ported to or from residents' unit or being used in
self-defense, as violative of residents' constitutional
right to keep and bear arms. U.S.C.A. Const.Amends.
2, 14.

[21] **Weapons 406 &#x21DD;106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regu-
latory Provisions
      406k106 Validity
         406k106(3) k. Violation of Right to Bear
Arms. Most Cited Cases

    The "common area" provision of public housing
authority policy, prohibiting public housing authority
residents from displaying or carrying firearms or other
weapons in common areas except when they were
being transported to or from residents' unit or being
used in self-defense, survived intermediate constitu-
tional scrutiny; stated goal of provision was to pro-
mote and protect safety of authority residents, their
guests, and authority employees, and fit between that
provision and authority's interest in safety was rea-
sonable. U.S.C.A. Const.Amends. 2, 14.

[22] **Weapons 406 &#x21DD;106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regu-
latory Provisions
      406k106 Validity
         406k106(3) k. Violation of Right to Bear
Arms. Most Cited Cases

    District court would assume without deciding that
"reasonable cause provision" of Delaware city hous-
ing authority policy, requiring that resident, household
member, or guest produce upon request a copy of any
permit, license, or other documentation required by
state, local, or federal law for the ownership, posses-
sion, or transportation of any firearm when there was
reasonable cause to believe that law or policy had been
violated, regulated conduct within scope of Second
Amendment. U.S.C.A. Const.Amend. 2; 11 West's
Del.C. § 1441.

[23] **Weapons 406 &#x21DD;106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regu-
latory Provisions
      406k106 Validity
         406k106(3) k. Violation of Right to Bear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

Arms. Most Cited Cases

The "reasonable cause" provision of Delaware city housing authority policy, requiring that resident, household member, or guest produce upon request a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership, possession, or transportation of any firearm when there was reasonable cause to believe that law or policy had been violated, furthered compelling interest in protecting safety of residents, guests, and others present at authority-owned or operated facilities, by permitting authority employees to review copies of any required permits for carrying firearms. U.S.C.A. Const.Amends. 2, 14; 11 West's Del.C. § 1441.

**[24] Federal Courts 170B ⟨⟩390**

170B Federal Courts
　170BVI State Laws as Rules of Decision
　　170BVI(B) Decisions of State Courts as Authority
　　　170Bk388 Federal Decision Prior to State Decision
　　　170Bk390 k. Anticipating or Predicting State Decision. Most Cited Cases

When highest state court has not authoritatively addressed critical issue, federal court's disposition must be governed by prediction of how state's highest court would decide were it confronted with problem.

**[25] Weapons 406 ⟨⟩106(3)**

406 Weapons
　406I In General
　　406k102 Constitutional, Statutory, and Regulatory Provisions
　　　406k106 Validity
　　　　406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

As predicted by federal district court in that state, Delaware Supreme Court would not find that city housing authority's revised firearms policy violated residents' rights under Delaware Constitution. West's Del.C.Ann. Const. Art. 1, § 20.

**[26] Municipal Corporations 268 ⟨⟩592(1)**

268 Municipal Corporations
　268X Police Power and Regulations
　　268X(A) Delegation, Extent, and Exercise of Power
　　　268k592 Concurrent and Conflicting Exercise of Power by State and Municipality
　　　　268k592(1) k. In General. Most Cited Cases

**Weapons 406 ⟨⟩104**

406 Weapons
　406I In General
　　406k102 Constitutional, Statutory, and Regulatory Provisions
　　　406k104 k. Power to Regulate. Most Cited Cases

As predicted by federal district court in that state, Delaware Supreme Court, if confronted with issue, would not find that city housing authority's firearms policies were expressly or implicitly preempted; while Delaware law expressly prohibited municipalities and counties from regulating firearms, housing authority was state agency and regulation of firearms came within its broad authority, and if General Assembly intended to preempt public housing authorities from regulating firearms possession, it would have said so expressly. 9 West's Del.C. § 330(c); 22 West's Del.C. § 111; 31 West's Del.C. § 4302.

**[27] Declaratory Judgment 118A ⟨⟩43**

118A Declaratory Judgment
　118AI Nature and Grounds in General
　　118AI(C) Other Remedies
　　　118Ak43 k. Alternative, Substitute or Supplemental Remedy. Most Cited Cases

Declaratory relief is available as additional or alternative form of relief which may be granted on cause of action within jurisdiction of court. 10 West's Del.C. § 6501.

Francis G.X. Pileggi and Jill K. Agro, Eckert Seamans Cherin & Mellott, LLC, Wilmington, DE, for Plaintiffs.

Barry M. Willoughby and Lauren E. Moak, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

for Defendants.

***OPINION***

STARK, District Judge:

*1 Pending before the Court are cross-motions for summary judgment filed by Plaintiffs Jane Doe and Charles Boone ("Plaintiffs") and Defendants Wilmington Housing Authority ("WHA") and Frederick S. Purnell, Sr. ("Defendants"). (D.I. 86; D.I. 88) Both motions concern the WHA's policies relating to possession of firearms by residents of public housing. Plaintiffs challenge two versions of WHA's policies under the Second Amendment of the United States Constitution as well as Article I, Section 20 of the Delaware Constitution. The parties' motions also require the Court to consider issues including standing, mootness, and preemption.

For the reasons set forth below, the Court will deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

**BACKGROUND** [FN1]

Plaintiff Jane Doe is a resident of The Park View, a privately-owned housing facility managed by the WHA. (D.I. 20 ¶¶ 2–3) In connection with her residence at The Park View, Doe entered into a lease agreement with WHA. Residents of The Park View are required to abide by "House Rules" that are incorporated into their lease agreements. (D.I. 20 ¶¶ 9–10) Original House Rule 24 stated, "Tenant is not permitted to display or use any firearms, BB guns, pellet guns, slingshots, or other weapons on the premises." (D.I. 87 Ex. A at 6)

Plaintiff Charles Boone is a resident of Southbridge Apartments, a public housing facility owned and operated by WHA. (D.I. 40 ¶ 2) Residents of Southbridge Apartments are subject to mandatory rules included within their lease agreements. Boone's lease agreement originally provided that residents are "[n]ot to display, use, or possess ... any firearms, (operable or inoperable) or other dangerous instruments or deadly weapons as defined by the laws of the State of Delaware anywhere on the property of the Authority." (D.I. 87 Ex. B at 14)

Thus, by virtue of original House Rule 24 at The Park View and the original lease agreement at Southbridge Apartments (collectively referred to hereinafter as the "Original Policies"), Plaintiffs Doe and Boone

were prohibited from possessing firearms. Plaintiffs were subject to eviction from their housing units if they violated this prohibition.

Defendant WHA is a non-profit agency of the State of Delaware, created pursuant to 31 Del. C. § 4303, that provides housing to low-income families and individuals in the City of Wilmington. (D.I. 20 ¶ 1) Delaware statutes confer upon the WHA the power to acquire property, improve conditions, construct facilities, borrow money, and sue and be sued. See 31 Del. C. §§ 4302, 4308; Wilmington Hous. Auth. v. Williamson, 228 A.2d 782, 786 (Del.1967). Defendant Frederick S. Purnell, Sr. is the WHA's executive director. (D.I. 20 ¶ 1)

On May 26, 2010, Plaintiff Doe instituted this judicial action by filing a complaint in the Delaware Court of Chancery, seeking to invalidate the WHA's Original Policies. (D.I. 1 Ex. A) Plaintiff Boone was later added in an Amended Complaint. (D.I. 23) On June 1, 2010, Defendants removed this case to the United States District Court for the District of Delaware. (D.I. 1) On June 2, 2010, Plaintiff Doe filed a motion for a preliminary injunction and a motion to expedite, both of which were later denied as moot. (D.I. 5; D.I. 7; D.I. 108)

*2 On June 28, 2010, the United States Supreme Court issued its decision in McDonald v. City of Chicago, —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), which incorporated the Second Amendment against the states through the Due Process Clause of the Fourteenth Amendment. Thereafter, on July 29, 2010, Defendants announced that, in light of McDonald, they were reevaluating the constitutionality of the Original Policies. (D.I. 20 ¶ 21) They further announced that they had authorized the adoption of a new firearms policy and, consistent with regulations of the United States Department of Housing and Urban Development ("HUD"), were scheduling a public hearing at which all interested parties could comment on the proposed amendments. (Id. ¶¶ 22–23) Defendant Purnell decided that during the process of amending WHA's policies, WHA would not enforce the Original Policies. (Id. at ¶ 25)

On September 7, 2010, the Court stayed this action pending the outcome of the scheduled WHA Board meeting. (D.I. 29) [FN2] On October 25, 2010, WHA formally adopted a new firearms policy to be

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

implemented within all WHA public housing units, including Southbridge. (D.I. 90 at A22–25) (hereinafter "Revised Policy")

The Revised Policy provides, in full:

*WHA Firearms and Weapons Policy*
*Lease Modification* (Replaces Lease Part I § DC.P.):

Ownership, possession, transportation, display, and use of firearms and weapons is governed by the Wilmington Housing Authority Firearms and Weapons Policy which is incorporated into and made a part of this lease.

*Wilmington Housing Authority Firearms and Weapons Policy:*

*WHA recognizes the importance of protecting its residents' health, welfare, and safety, while simultaneously protecting the rights of its residents to keep and bear arms as established by the federal and state constitutions.* WHA therefore adopts the following Firearms and Weapons Policy. Residents, members of a resident's household, and guests:

1. Shall comply with all local, state, and federal legal requirements applicable to the ownership, possession, transportation, and use of firearms or other weapons. The term "firearm" includes any weapon from which a shot, projectile or other object may be discharged by force of combustion, explosive, gas and/or mechanical means, whether operable or inoperable, loaded or unloaded, and any weapon or destructive device as defined by law.

2. Shall not discharge or use any firearm or other weapons on WHA property except when done in self-defense.

*3. Shall not display or carry a firearm or other weapon in any common area, except where the firearm or other weapon is being transported to or from the resident's unit, or is being used in self-defense.*

*4. Shall have available for inspection a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership,*

*possession, or transportation of any firearm or other weapon, including a license to carry a concealed weapon as required by 11 Del C. § 1441, upon request, when there is reasonable cause to believe that the law or this Policy has been violated.*

*3 5. Shall exercise reasonable care in the storage of loaded or unloaded firearms and ammunition, or other weapons.

6. Shall not allow a minor under 16 years of age to have possession of a firearm, B.B. gun, air gun, or spear gun unless under the direct supervision of an adult.

7. Shall not give or otherwise transfer to a minor under 18 years of age a firearm or ammunition for a firearm, unless the person is that child's parent or guardian, or unless the person first receives the permission of the minor's parent or guardian.

Violation of this Policy by any resident or member of the resident's household shall be grounds for immediate Lease termination and eviction. In addition, a resident or member of the resident's household who knowingly permits a guest to violate this Policy shall be subject to immediate Lease termination and eviction.

(D.I. 90 at A24–25) (emphasis added)

On December 13, 2010, Defendants replaced The Park View's Original House Rule 24 with Amended Rule 24, which was substantively identical to the Revised Policy reproduced above. (D.I. 47 ¶ 18; D.I. 90 at A26–27 (Resolution Adopting the Park View House Rules Amended Rule 24))

With respect to this Revised Policy, Plaintiffs challenge only paragraph 3, which the Court will henceforth refer to as the "Common Area Provision," and paragraph 4, which the Court will henceforth refer to as the "Reasonable Cause Provision." (D.I. 87 at 5 n. 5)

Plaintiffs filed the operative Second Amended Complaint on December 6, 2010. (D.I. 40) It consists of five counts. Count I alleges that both the Original Policies and the Revised Policy violate the U.S. Con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

stitution in that they infringe upon Plaintiffs' rights to keep and bear arms as guaranteed by the Second and Fourteenth Amendments. (*Id.* ¶¶ 42–43) Count II alleges that both versions of the WHA policies also violate Plaintiffs' rights under the Delaware State Constitution. (*Id.* ¶¶ 50–51) In Count III, Plaintiffs seek a ruling that Defendants' firearms policies are inconsistent with and preempted by Delaware law and Delaware's comprehensive regulatory scheme. (*Id.* ¶ 60) Count IV alleges that Defendants have exceeded the scope of their authority by enacting the policies at issue. (*Id.* ¶ 64) Finally, in Count V, Plaintiffs seek a declaratory judgment that Defendants' lease provisions—in both the original and revised versions—are unlawful for the same reasons alleged in Counts I through IV. (*Id.* ¶ 69)

The parties filed their cross-motions for summary judgment on February 21, 2011. (D.I. 86; D.I. 88) *Amicus curiae* the Brady Center to Prevent Gun Violence ("Brady Center") also filed a Motion for Leave to file an *amicus* brief (D.I. 91), which Plaintiffs did not oppose, and which the Court granted (D.I. 108). The Court heard oral argument on July 15, 2011. (D.I. 110) (hereinafter "Tr.") The Court also ordered and received a post-hearing submission (D.I. 109) and was subsequently advised by the parties of their views concerning a recent Delaware Supreme Court decision (D.I. 111; D.I. 112; D.I. 113).

## LEGAL STANDARDS
**\*4** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the moving

party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation marks omitted) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *see also Podobnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir.2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## DISCUSSION
### I. Standing
**\*5** Defendants assert that Plaintiffs lack standing to bring this suit. (*See, e.g.,* D.I. 89 at 7–10) Defendants' contention is based primarily on their view that neither of the Plaintiffs owns a firearm or actually disagrees with most or all of the WHA Revised Policy.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

[1] It is Plaintiffs' burden to show that they have standing to bring this suit. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Each of the standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

[2] To meet Article III standing requirements, a plaintiff must have suffered an injury-in-fact, that is an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. There must also be a causal connection between the injury and the conduct complained of, and the injury must be "fairly ... trace [able] to the challenged action of the defendant, and not ... [the] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Additionally, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 38, 96 S.Ct. 1917; *see also id.* at 27, 43, 96 S.Ct. 1917.

[3] In addition, a plaintiff must establish "prudential standing." *See Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11–12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004); *Twp. of Lyndhurst v. Priceline.com Inc.,* 657 F.3d 148, 154 (3d Cir.2011). The Court must take into consideration whether prudential concerns should merit a limitation on the exercise of its judicial authority. *See Lozano v. City of Hazleton,* 620 F.3d 170, 183 (3d Cir.2010), *vacated by* —— U.S. ——, 131 S.Ct. 2958, 180 L.Ed.2d 243 (2011). Prudential standing embraces the following principles:

(1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 485 (3d Cir.1998) (internal quotation marks and citations omitted).

Here, Defendants argue that Plaintiffs cannot meet their burden with respect to standing because neither Doe nor Boone owns a firearm. In their depositions, both Plaintiffs testified that they do not currently possess firearms. (D.I. 90 at A29–30, A63) Moreover, neither Plaintiff has ever sought a license to carry a concealed deadly weapon, has ever requested information regarding the WHA's firearms policies, or has ever been subject to any ramifications as a result of the WHA's firearms policies. (D.I. 90 at A30–34, A59, A63, A66–68, A70)

*6 [4] In the Court's view, Plaintiffs need not own firearms in order to have standing. Under the Original Policies, if either Plaintiff owned a firearm and kept it in his or her residence, he or she would be subject to eviction. Even under the Revised Policy, if a Plaintiff kept a firearm in his or her residence and took it into a common area—other than incidentally to transporting it through a common area—he or she would again be subject to eviction. Plaintiffs suffer an actual and imminent threat of an injury-in-fact that is personal to them by being threatened with eviction solely as a result of engaging in what they contend are protected Second Amendment rights. Plaintiffs do not have to own a firearm and possess it in violation of WHA policy in order to obtain standing. *See Ezell v. City of Chicago,* 651 F.3d 684, 695 (7th Cir.2011) ("It is well-established that 'pre-enforcement challenges ... are within Article III.' ") (quoting *Brandt v. Vill. of Winnetka, Ill.,* 612 F.3d 647, 649 (7th Cir.2010)). Plainly, the cause of Plaintiffs' injuries is the WHA firearms policy; consequently, Plaintiffs' injuries would be redressed by a judicial decision invalidating that policy. [FN3]

Defendants also argue that Plaintiffs lack standing because Plaintiffs do not really disagree with the Revised Policy. In their depositions, Plaintiffs appeared to testify that they agree with much if not all of the Revised Policy. (D.I. 90 at A45–49, A64–65, A72–73) In Defendants' view, "Plaintiffs raise merely hypothetical concerns about the policy." (D.I. 89 at 7)

In fact, however, Plaintiff Doe's testimony is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

reasonably understood to be that she does **not** agree with paragraph 3 of the Revised Policy, the Common Area Provision. (D.I. 90 at A64) [FN4] Also, Plaintiff Boone indicated that he might feel the need for a gun, even in a common area, if he were relocated to a WHA facility where he was unfamiliar with the people. (D.I. 90 at A51–54)

More fundamentally, Plaintiffs were never asked their views as to the constitutionality of the WHA policies, which is the crux of the dispute Plaintiffs have brought to this Court. While the reasonableness of these policies and their constitutionality are related (given the applicability of the intermediate scrutiny constitutional test, as will be discussed), the issues are not identical. It is self-evident from Plaintiffs' initiation and prosecution of this action that Plaintiffs believe the WHA policies are unconstitutional and violate their constitutional rights—regardless of whether these policies are "good" or "reasonable" policies. (Tr. at 13)

Accordingly, the Court finds that Plaintiffs have established that they have standing to bring their claims.

## II. Mootness

Although the WHA replaced its Original Policies with the Revised Policy in October 2010, Plaintiffs continue to press their challenge to the constitutionality of both the old and new versions of the WHA's firearms policies. [FN5] Plaintiffs contend that "[t]his Court should rule on the constitutionality of the original policies that Defendants have revised, otherwise Plaintiffs will have no judicial protection if Defendants return to their prior unconstitutional conduct." (D.I. 87 at 2) The Court disagrees. Instead, the Court will grant Defendants' motion for summary judgment with respect to Plaintiffs' challenge to the Original Policies because this portion of Plaintiffs' claims is now moot.

*7 [5] "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Otherwise, "courts would be compelled to leave '[t]he defendant ... free to return to his old ways.' " *Id.* at 289 n. 10, 102 S.Ct. 1070 (quoting *United States v. W.T. Grant Co.,* 345 U.S.

629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).

[6][7] Nevertheless, a case is moot if (1) there has been a complete discontinuation of the disputed conduct; (2) there are no continuing effects after the discontinuation; and (3) there are no other factors justifying relief. See *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991). A case is moot if it is clear that the wrongful behavior being challenged is not reasonably expected to recur. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

[8][9] The determination of mootness requires a fact-sensitive analysis and a prediction based on the likelihood of the recurrence of the complained-of conduct, a defendant's expressions of future intent, and the public interest in the resolution of the dispute. See *Camreta v. Greene,* —— U.S. ——, 131 S.Ct. 2020, 2033–34, 179 L.Ed.2d 1118 (2011). A party asserting mootness must demonstrate that it is unreasonable to believe the challenged conduct would, without a judicial ruling, begin anew. See *id.*

Where, as here, [FN6] a defendant is a government actor, there is a rebuttable presumption that the objectionable behavior will not recur. See *Troiano v. Supervisor of Elections,* 382 F.3d 1276, 1283 & n. 4 (11th Cir.2004). In the case of the actions of public officials, to avoid a conclusion of mootness following a policy change there must be a substantial likelihood that the regulation or policy in dispute will be reenacted. See *Princeton Univ. v. Schmid,* 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (finding that repeal of university regulations mooted challenge to their validity).

[10] Here, Defendants have demonstrated that Plaintiffs' challenge to the constitutionality of the Original Policies is moot. There is no reason to believe that the WHA, after having suspended, reviewed, and replaced the Original Policies (undertaking the HUD-mandated procedure for doing so) in view of the Supreme Court's holding in *McDonald,* would attempt to adopt these policies again. See *DeBolt v. Espy,* 47 F.3d 777, 782 (6th Cir.1995) (holding plaintiff's claim against Farmer's Home Administration ("FmHA") moot after FmHA revised its lease to comply with applicable regulations); D.I. 102 at 6 ("Defendants have engaged in the time-consuming process of amending their public housing lease in accordance

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

with applicable HUD regulations, thereby creating significant disincentive to revert to previous practices.") This is particularly so because Defendants have all but conceded that their Original Policies are unconstitutional in light of *McDonald.* (See Tr. at 58: Defendants' counsel stating his clients "rely[ ] on me" for legal advice and opining, "I think under the current law, post- *McDonald*—this is my opinion—it probably would be a violation of the Second Amendment to say no weapons in your unit for [ ] self-defense"); D.I. 101 at 7 ("The Original Policies Were Lawful Under *Pre– McDonald* Precedent") (emphasis added) [FN7] There is also no evidence in the record that the Original Policies were ever enforced, further reducing the likelihood that these policies will be reenacted. *See Wis. Right to Life, Inc. v. Schober,* 366 F.3d 485, 492 (7th Cir.2004).

**\*8** To the extent Plaintiffs are arguing that their challenge to the Original Policies is not moot because the Revised Policy shows that the WHA is intent to repeat unconstitutional conduct, the Court rejects this argument. As explained below, the Court has concluded that the Revised Policy is not unconstitutional.[FN8]

Also, Plaintiffs point out that Defendants, in several pleadings—including their answers to the Amended and Second Amended Complaints (D.I. 24 ¶¶ 42–45; D.I. 47 ¶¶ 42–47)—denied the allegations that the Original Policies were unconstitutional. (Tr. at 6) In the Court's view, Defendants were merely preserving their rights to proceed in this litigation. Defendants' "denials" of the allegations do not demonstrate that there is any realistic possibility Defendants will attempt to readopt the Original Policies.

Thus, the Court will grant Defendants' motion for summary judgment due to mootness with respect to Plaintiffs' challenges to the Original Policies.

**III. Recent Second Amendment Jurisprudence**
The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "Modern Second Amendment doctrine is a relatively new frontier." *Piszczatoski v. Hon. Rudolph A. Filko,* 840 F.Supp.2d 813, 819 (D.N.J.2012). As the Third Circuit has recently summarized:

In *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held for the first time that the Second Amendment confers an individual right to keep and bear arms. The right, however, is not unlimited. *Id.* The Second Amendment does not guarantee a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626, 128 S.Ct. 2783. The Court cautioned that, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27, 128 S.Ct. 2783 .... The Court made clear that it was "identify[ing] these presumptively lawful regulatory measures only as examples"; the list was not intended to be exhaustive.

*United States v. Huet,* 665 F.3d 588, 599–600 (3d Cir.2012) (internal footnotes omitted).

At issue in *Heller* was a D.C. law that "ban[ned] handgun possession in the home" and "require[d] that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." 554 U.S. at 628, 128 S.Ct. 2783. Explaining that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," the Supreme Court held that D.C.'s ban could not survive any degree of scrutiny. *Id.* at 628–29, 635, 128 S.Ct. 2783. *Heller* suggested that the "core" of the Second Amendment right is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 634–35, 128 S.Ct. 2783.

**\*9** Two years after *Heller,* in *McDonald v. City of Chicago,* ——U.S. ——, 130 S.Ct. 3020, 3050, 177 L.Ed.2d 894 (2010), the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller.*" Thus, in *McDonald,* the Supreme Court struck down a ban on handguns that had been imposed by the City of Chicago. *See id.* at 3026. In doing so, the *McDonald* Court described its "central holding in *Heller* " as being that "the Second Amendment protects a personal right to keep and bear arms for lawful

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

purposes, most notably for self-defense within the home." *Id.* at 3044.[FN9]

The Third Circuit has had several occasions to consider the Supreme Court's *Heller* and *McDonald* decisions, most extensively in *United States v. Marzzarella,* 614 F.3d 85 (3d Cir.2010); *see also Huet,* 665 F.3d at 588 (rejecting Second Amendment challenge to indictment alleging aiding and abeting possession of firearm by convicted felon); *United States v. Barton,* 633 F.3d 168, 169–70 (3d Cir.2011) (same for conviction for possession of firearm by convicted felon). In *Marzzarella,* the Third Circuit rejected a Second Amendment challenge to the federal statute criminalizing possession of a firearm with an obliterated serial number, 18 U.S.C. § 922(k). *See* 614 F.3d at 87.

In reaching its decision, the Third Circuit in *Marzzarella* echoed the Supreme Court by stating, "At its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home." *Id.* at 92 (footnote omitted). *Marzzarella* also set forth a framework for courts to apply in assessing Second Amendment challenges:

> As we read *Heller,* it suggests a two-pronged approach to Second Amendment challenges. First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

614 F.3d at 89 (internal citations and footnote omitted).[FN10]

In connection with the first step of this test—asking whether a challenged provision imposes a burden on conduct falling within the scope of the Second Amendment's guarantee—the Third Circuit considered what it described as " *Heller's* list of presumptively lawful regulations," which the Third Circuit held was "not exhaustive." 614 F.3d at 92–93 (internal citations omitted). Presumptively lawful measures "are exceptions to the right to bear arms." *Id.* at 91; *see also Huet,* 665 F.3d at 600 ("[T]he 'presumptively lawful' regulatory measures

identified by the Supreme Court in *Heller* carry the presumption of validity because they regulate conduct falling outside the scope of the Second Amendment's guarantee. In other words, the longstanding limitations mentioned by the Court in *Heller* are exceptions to the right to bear arms.") (internal quotation marks and citations omitted). While there are presumptively lawful measures other than just those listed in *Heller,* "the approach for identifying ... additional [presumptively lawful] restrictions is also unsettled." *Marzzarella,* 614 F.3d at 92–93 (internal citations omitted). Hence, in *Marzzarella,* the Third Circuit declined to find the federal statute criminalizing possession of a firearm with an obliterated serial number to be presumptively lawful, instead noting "prudence counsels caution when extending these recognized exceptions to novel regulations unmentioned by *Heller.*" *Id.* at 93; *see also id.* at 95 ("[W]hile the Government argues that § 922(k) does not impair any Second Amendment rights, we cannot be certain that the possession of unmarked firearms in the home is excluded from the right to bear arms. Because we conclude § 922(k) would pass constitutional muster even if it burdens protected conduct, we need not decide whether Marzzarella's right to bear arms was infringed.").

**\*10** *Marzzarella* also addressed the test to be applied when a provision is found to be or assumed to burden conduct within the scope of the Second Amendment. This is largely a question left unresolved by the Supreme Court, as " *Heller* did not prescribe the standard applicable to the District of Columbia's handgun ban." *Marzzarella,* 614 F.3d at 95.[FN11] The Third Circuit stated: "Whether or not strict scrutiny may apply to particular Second Amendment challenges, it is not the case that it must be applied to all Second Amendment challenges. Strict scrutiny does not apply automatically any time an enumerated right is involved." *Id.* at 96. Instead, *Marzzarella* analogized the Second Amendment to the First Amendment, explaining that just as "the right to free speech ... is susceptible to several standards of scrutiny, depending upon the type of law challenged and the type of speech at issue ... [there is] no reason why the Second Amendment would be any different." *Id.* at 96–97; *see also id.* at 89 n. 4 ("[W]e look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice."). Hence, strict scrutiny is appropriate only when the challenged law "severely limit[s] the possession of firearms," as in *Heller. Id.* at 97. Conversely, a law seeking just to "regulat[e] ... the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

manner in which persons may lawfully exercise their Second Amendment rights ... merit[s] intermediate, rather than strict, scrutiny." *Id.*

To withstand intermediate scrutiny, "the asserted governmental end [of the challenged policy must] ... be more than just legitimate, either 'significant,' 'substantial,' or 'important.' " *Id.* at 98. Also, "the fit between the challenged regulation and the asserted objective" of the regulation must "be reasonable," but it need not be "perfect." *Id.* Moreover, "[t]he regulation need not be the least restrictive means of serving the interest, but may not burden more [protected conduct] than is reasonably necessary." *Id.* (internal citations omitted).

The Court now proceeds to consider this recent Second Amendment jurisprudence in the context of Plaintiffs' constitutional challenge to the WHA's Revised Policy, and particularly the Common Area Provision.[FN12]

## IV. Does The Revised Policy Regulate Conduct Within The Scope Of The Second Amendment?

At the first step of the *Marzzarella* analysis, the Court must determine whether the Revised Policy imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. Under the Revised Policy, Plaintiffs are permitted to possess firearms for their self-defense within their own units. However, WHA's Common Area Provision restricts Plaintiffs from possessing, carrying, using, or displaying firearms in the common areas, except when incidental to transporting such weapons to or from Plaintiffs' personal units. Thus, with respect to Plaintiffs' challenge to the Common Area Provision, the first step is to determine whether the Second Amendment protects Plaintiffs' right to possess firearms outside of their own residential units.

**\*11** Although the precise contours of the "common areas," to which the Common Area Provision applies, are not entirely clear, this much is undisputed: every portion of the "common areas" is a space over which no individual resident has the power to exclude all other individuals.[FN13] The "common areas" are open to all tenants and guests, as well as WHA employees; they are not Plaintiffs' private residences, i.e., the unit for which a resident has signed a lease agreement. (D.I. 104 at 4) The common areas include "various community spaces such as daycare facilities,

libraries, and community rooms" (D.I. 89 at 15), as well as laundry rooms and administrative offices (Tr. at 42). Plaintiff Boone testified that one such common area, the community room, is "where the kids go after school, do their homework ... and you can have access to the computer." (Boone Dep. at p. 49) [submitted by Plaintiffs, but not docketed, on July 15, 2011] Both sides agree that the television rooms are common areas. (Tr. at 20, 40)

The Court agrees with Defendants that "while a tenant's unit is treated as his or her home under the [Revised] Policy, the common areas are community spaces that WHA has the right and obligation to regulate." (D.I. 104 at 5) One's "hearth and home," by contrast, is space from which one has the right to exclude others. Hence, the "common areas" covered by the Common Area Provision are not the "hearth and home" which was expressly at issue in *Heller.*

[11] Thus, the Common Area Provision regulates conduct that is not within the "core" of what is protected by the Second Amendment. *See Barton,* 633 F.3d at 170 ("At the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.' ") (quoting *Heller,* 554 U.S. at 635, 128 S.Ct. 2783). Is the conduct regulated by the Common Area Provision within the scope of the Second Amendment?

This is a question that neither the Supreme Court nor the Third Circuit has answered. Indeed, the Third Circuit has warned that "Second Amendment doctrine remains in its nascency, and lower courts must proceed deliberately when addressing regulations unmentioned by *Heller.*" *Marzzarella,* 614 F.3d at 101; *see also id.* at 92 (" *Heller* did not purport to fully define all the contours of the Second Amendment, and accordingly, much of the scope of the right remains unsettled.") (internal citations omitted). Other courts of appeals have provided similar guidance. *See, e.g., United States v. Masciandaro,* 638 F.3d 458, 467 (4th Cir.2011) ("The upshot of these landmark decisions is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home. But a considerable degree of uncertainty remains as to the scope of that right beyond the home and the standards for determining whether and how the right can be burdened by governmental regulation.").

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

On the fundamental issue of the Second Amendment's scope, the parties' views, of course, are directly in conflict. Plaintiffs assert that while the focus in *Heller* may have been on the right to self-defense in the home, nothing about *Heller* (or *McDonald* ) limits the Second Amendment right to one's home. In Plaintiffs' view, just because the Supreme Court recognized in *Heller* that "the need for defense of self, family, and property is ***most acute*** " in the home (554 U.S. at 628, 128 S.Ct. 2783) (emphasis added), this does not imply that no such need exists outside the home.

**\*12** Defendants counter that the Second Amendment right "defined in *Heller* is much more narrow than the rights asserted by Plaintiffs." (D.I. 89 at 11) As Defendants read *Heller,* the Supreme Court only recognized "a right to bear arms in one's home, not in common areas of the building shared with other residents." (D.I. 89 at 12) Defendants contend that *Heller's,* reach is limited to protecting a citizen's right to possess a weapon in one's home and does not stretch to public spaces. It follows, in Defendants' view, that Plaintiffs have no Second Amendment right in the common areas of their housing developments that they share with other residents.

The Third Circuit has emphasized that this "prong one of *Marzzarella* (whether conduct is protected by the Second Amendment) should be applied with caution." *Huet,* 665 F.3d at 602; *see also Marzzarella,* 614 F.3d at 92 (stating "much of the scope of the [Second Amendment] right remains unsettled"). Here, there are strong arguments on both sides. Plaintiffs are correct that the Supreme Court's description of the "core" of the Second Amendment right as pertaining to possession of a firearm for self-defense in one's home suggests that there is more to the Second Amendment right than just this core. Plaintiffs are also undoubtedly correct that the need for self-defense may arise outside the home, just as it does inside the home. On the other hand, Defendants are correct that the Supreme Court and Third Circuit have not expressly recognized a Second Amendment right beyond the home-bound core described in *Heller* and *McDonald.* Given these circumstances, and the repeated warnings to proceed with caution, the Court declines to determine whether Second Amendment rights extend outside of the "hearth and home."

As explained below, the Court has concluded that the Common Area Provision is constitutional under intermediate scrutiny. Therefore, following the example of the Third Circuit in *Marzzarella,* the Court assumes without deciding that the Common Area Provision regulates conduct within the scope of the Second Amendment. *See* 614 F.3d at 95 (stating Court will "assum[e]" policies at issue "burden[ ] [Plaintiffs'] Second Amendment rights" and proceeding to "evaluate the law under the appropriate standard of constitutional scrutiny"); *see also Masciandaro,* 638 F.3d at 470–75 ("[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense.... On the question of *Heller's* applicability outside the home environment, we think it prudent to await direction from the Court itself.").

**V. Is The Common Area Provision Presumptively Lawful?**

In *Marzzarella,* the Third Circuit applied the first prong of its analysis by evaluating whether the provision at issue—a statute criminalizing possessing of a firearm with an obliterated serial number—was of a type that is "presumptively lawful" as envisioned in *Heller.* "[T]he 'presumptively lawful' regulatory measures identified by the Supreme Court in *Heller* carry the presumption of validity because they regulate conduct falling outside the scope of the Second Amendment's guarantee.... In other words, the longstanding limitations mentioned by the Court in *Heller* are exceptions to the right to bear arms." *Huet,* 665 F.3d at 600 (internal quotation marks omitted); *see also Marzzarella,* 614 F.3d at 91 (explaining "presumptively lawful" regulations "are exceptions to the right to bear arms"). The Third Circuit has "explicitly held that *Heller's* list of 'presumptively lawful' regulations was not dicta, and thus we are bound by it." *Huet,* 665 F.3d at 600 n. 11.

**\*13** Although statutes prohibiting the possession of firearms with obliterated serial numbers were not specifically identified in *Heller* as being presumptively lawful, *Marzzarella* explained that the *Heller* list was not exhaustive. *See* 614 F.3d at 91. Hence, as part of the Court's inquiry into whether the WHA Revised Policy violates Plaintiffs' Second Amendment rights, the Court must consider whether the challenged provisions are of a type that is "presumptively lawful," and in that way regulate conduct that is outside the scope of the Second Amendment's guarantee.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

With respect to the Common Area Provision, one aspect of this inquiry would seem to be whether this is the type of regulation that is presumptively lawful due to its longstanding history. The record does not contain evidence from which the Court could conclude that the Common Area Provision (or the Reasonable Cause Provision) has the type of pedigree as those regulations expressly identified by the Supreme Court in _Heller,_ such as prohibiting possession of firearms by felons and mentally incompetent individuals. To the contrary, the record reveals that the Common Area Provision was adopted only recently, in October 2010, as part of the WHA's replacement of its Original Policies with the Revised Policy.

[12] The Court concludes that, here again, it should follow the approach taken by the Third Circuit in _Marzzarella._ There, the Third Circuit decided not to decide whether the obliterated serial number statute was presumptively lawful, concluding, instead, that it was more appropriate to apply constitutional scrutiny. _See_ 614 F.3d at 95. So, too, here, rather than determining whether the Common Area Provision should be added to the list of presumptively lawful regulations, the Court will assume that the Common Area Provision is not presumptively lawful and will proceed to determine whether the challenged regulation can withstand constitutional scrutiny.

[13] Before doing so, the Court must consider yet another issue that arises at the first prong of _Marzzarella._ Related to the question of whether the Common Area Provision is presumptively lawful is whether the "common areas" that are subject to the Common Area Provision are "sensitive places." Regulations governing "sensitive places" are presumptively lawful. _See Heller,_ 554 U.S. at 626, 128 S.Ct. 2783 ("[N]othing in our opinion should be taken to cast doubt on ... laws forbidding the carrying of firearms in sensitive places such as schools and government buildings...."); _Huet,_ 665 F.3d at 599–600.

As already explained, the "common areas" to which the Common Area Provision applies are areas "open to all tenants and guests," as well as WHA employees; they do not include Plaintiffs' assigned residential units. (D.I. 104 at 4) Defendants contend that these "common areas" are "sensitive places," as they are places where multiple, unrelated individuals congregate. Common areas are also places in which

government business is performed and people have a reasonable expectation they will be kept safe. Hence, in Defendants' view, the common areas are sensitive places outside the reach of the Second Amendment.

*14 Plaintiffs counter that the common areas are quite dissimilar from places that have generally been characterized as sensitive places. The places where the Common Area Provision applies are not "places of regular government business," such as public schools, post offices, or courthouses. _See United States v. Dorosan,_ 350 Fed.Appx. 874 (5th Cir.2009); _DiGiacinto v. Rector & Visitors of George Mason Univ.,_ 281 Va. 127, 704 S.E.2d 365 (2011). In Plaintiffs' view, the common areas are part of a residence, and should not be treated for Second Amendment purposes any differently than a private residence.

Several courts have had occasion to consider the meaning of "sensitive place." These courts have found that places where youth and children recreate and are most likely to be present, as well as places where the possession of firearms would place a large number of defenseless people at risk of danger, are sensitive places. _See Nordyke v. King,_ 563 F.3d 439 (9th Cir.2009), _vacated by_ 611 F.3d 1015 (9th Cir.2010); _Warden v. Nickels,_ 697 F.Supp.2d 1221 (W.D.Wash.2010). Open-space venues, where large numbers of people might congregate, as well as places used for government business or important to government functioning, have also been found to be sensitive places. _See Nordyke,_ 563 F.3d at 460. Additionally, the Supreme Court of Virginia determined that George Mason University qualified as a sensitive place because: (1) it is an agency of the state and its property is owned by the government; (2) the statutory structure creating the university indicated its sensitive nature; and (3) people on university property have "a reasonable expectation that the university will maintain a campus free of foreseeable harm." _DiGiacinto,_ 704 S.E.2d at 370. This expectation arose from the fact that the University's Board of Visitors was "tasked with safeguarding the university's property and the people who use it by making all needful rules and regulations concerning the university," including policies promoting campus safety. _Id._ (internal quotation marks omitted).

The analogy between the "common areas" of Plaintiffs' housing facilities and the foregoing examples of "sensitive places" seems fairly strong. As

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

Defendants observe, the common areas include places where people congregate, as well as administrative offices in which government work may be said to be done. Many of the individuals who might be expected to congregate in a community room or TV room, for instance, would be youth and children (e.g., grandchildren of elderly WHA residents). Moreover, residents and guests of WHA housing facilities have a reasonable expectation that the WHA will do everything within the bounds of its power to keep its property safe, consistent with the statutory structure that created the agency. *See* 31 Del. C. § 4302 (directing WHA to "promote and protect the health, safety, morals and welfare of the public" and vesting WHA with "all powers necessary or appropriate" to accomplish these aims).

**\*15** On the other hand, the "common areas" are also part of Plaintiffs' residences. The laundry rooms and TV rooms, for instance, are like similar rooms that are typically found in private residences. The government business done in the common areas does not appear to be of the same extent or nature as that done in schools, post offices, and courthouses. The common areas do not appear, from the record, to be places where the general public at large gathers.

Given this uncertainty, and again exercising caution, the Court will not decide whether the common areas are sensitive places. As the Common Area Provision survives the appropriate level of constitutional scrutiny, it is unnecessary to resolve the parties' disagreement as to sensitive places. *See GeorgiaCarry.Org, Inc. v. Georgia,* 764 F.Supp.2d 1306, 1317 (M.D.Ga.2011) ( "[T]he better analytical approach is to lay aside the *Heller* list for the moment, to assume that [the Revised Policy] burdens conduct within the scope of the Second Amendment, and to test whether [Defendants] can make the necessary showing to demonstrate [that the challenged regulation is permissible].").

**VI. Assuming The WHA Policy Regulates Protected Conduct, What Level Of Scrutiny Should Be Applied?**

Before the Court can apply constitutional scrutiny to the Common Area Provision, it must determine what type of scrutiny to apply. Four tests have been proposed: rational basis, reasonable regulation, intermediate scrutiny, and strict scrutiny.

[14] A court applying the rational basis test must uphold a challenged regulation as long as the Court finds that it furthers any legitimate governmental goal. *See generally Board of Trustees of State University of New York v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); *see also Marzzarella,* 614 F.3d at 95 n. 13 ("A rational basis test presumes the law is valid and asks only whether the statute is rationally related to a legitimate state interest."). In *Heller,* the Supreme Court explicitly declared that Second Amendment challenges may not be subjected merely to rational basis review. *See* 554 U.S. at 628 n. 27, 128 S.Ct. 2783; *see also Huet,* 665 F.3d at 600.

[15][16] Amicus, The Brady Center, advocates a "reasonable regulation test," which is used by many state courts. (D.I. 91–1 at 17) A reasonable regulation test is "[m]ore demanding than rational basis review, but more deferential than intermediate scrutiny." (*Id.* at 18) When a reasonable regulation test is applied, the government "may regulate the exercise of [the] right [to bear arms] under its inherent police power so long as the exercise of that power is reasonable." *Robertson v. City & County of Denver,* 874 P.2d 325, 328, 330 n. 10 (Colo.1994). In this way, laws that are reasonably designed to further public safety are upheld, whereas laws that destroy Second Amendment rights are struck down. *See id.* at 328, 330 n. 10.

The Court will not apply a reasonable regulation test. It does not appear that any federal court has applied such a test in resolving a Second Amendment challenge. To the contrary, at least the D.C. Circuit has rejected this test, believing that the Supreme Court has already done the same. *See Heller v. District of Columbia,* 670 F.3d 1244, 1256 (D.C.Cir.2011) ("*Heller* clearly does reject any kind of 'rational basis' or reasonableness test ...."); *see also Piszczatoski v. Filko,* 840 F.Supp.2d 813, 833 (D.N.J.2012) (same); *Kachalsky v. Cacace,* 817 F.Supp.2d 235, 268 (S.D.N.Y.2011) ( "[R]easonableness review is virtually absent from *post- Heller* Second Amendment jurisprudence."). Given the Third Circuit's application of intermediate scrutiny in *Marzzarella,* the Court concludes that the reasonable regulation test does not provide enough protection of the Second Amendment rights that are assumed to be at issue in the instant case.

**\*16** [17] Defendants contend that the appropriate test to be applied (assuming the Court reaches the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

issue) is intermediate scrutiny. To withstand intermediate scrutiny, there must be a reasonable, but not necessarily perfect, fit between the challenged regulation and a significant, substantial, or important government interest. See *Marzzarella,* 614 F.3d at 98. The Third Circuit explained in *Marzzarella* that if a regulation is "neither designed to nor has the effect of prohibiting the possession of any class of firearms, it is more accurately characterized as a regulation of the manner in which persons may lawfully exercise their Second Amendment rights." *Id.* at 97. Just as the regulations on the time, place, and manner of First Amendment rights are evaluated by intermediate scrutiny, so too are analogous regulations on the exercise of Second Amendment rights. See *id.*

The Court agrees with Defendants that the Common Area Provision was not intended to prohibit the possession of any class of firearms, nor does it have the effect of doing so. Instead, the Common Area Provision is appropriately viewed as a regulation of the manner in which Plaintiffs may lawfully exercise their Second Amendment rights. In particular, the Common Area Provision—and, indeed, the entire Revised Policy—does not prohibit Plaintiffs from possessing firearms in their private residences (i.e., their units) for self-defense of their "hearth and home." Nor does the Common Area Provision entirely prohibit residents from possessing, or using for self-defense, firearms even in the common areas, although it restricts such possession and use to the times in which a resident is transporting a firearm to or from his or her unit. The fact that the Common Area Provision only applies to places outside of Plaintiffs' "hearth and home" is another factor favoring application of intermediate, rather than strict, scrutiny. See *Masciandaro, 638 F.3d at 470–71* ("[T]his longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable.... [A] lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home.").

[18][19] The Court disagrees with Plaintiffs' contention that strict scrutiny should be applied. "For a law to pass muster under strict scrutiny, it must be 'narrowly tailored to serve a compelling state interest.' " *Marzzarella,* 614 F.3d at 99 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.,* 551 U.S. 449, 465, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007)). Strict scrutiny is appropriate only where the challenged law

"severely limit[s] the possession of firearms." *Marzzarella,* 614 F.3d at 97.

Plaintiffs contend that strict scrutiny applies because the Common Area Provision "prohibits the possession of firearms while sitting or standing in the common area." (Tr. at 21; see also *id.* at 29 ("[This] is more than just a time, place or manner restriction. In our view, it should be treated as a complete prohibition in terms of exercising the rights in that common area."); D.I. 87 at 11 (arguing Revised Policy "effectively eliminates a WHA resident's ability to defend herself with a firearm in the 'common areas' or her residential facility")) In this way, the Common Area Provision effectively eliminates WHA residents' abilities to defend themselves in the common areas, in violation of the "core lawful purpose of self-defense." *Heller,* 554 U.S. at 630, 128 S.Ct. 2783. But any time, place, and manner restriction can be construed as a prohibition on conduct during the time, at the place, or in the manner which the regulation precludes. To accept Plaintiffs' characterization of the Common Area Provision as a prohibition would eviscerate the distinction between a time, place, and manner regulation and an outright prohibition. Furthermore, the Common Area Provision expressly permits some use of firearms for self-defense in the common areas, provided that the need for self-defense arises while one is transporting a firearm to or from one's unit.[FN14]

*17 Although Plaintiffs are correct when they state that "public housing is, fundamentally, a home" (D.I. 100 at 19), not every square foot of public housing is any individual's "hearth or home." Hence, regulations of the common areas do not have the same impact as regulations applying to the spaces within the four walls of a resident's individual unit. In the Court's view, the level of constitutional scrutiny should also differ. See *Masciandaro, 638 F.3d at 470* ("[W]e assume that any law that would burden the 'fundamental,' core right of self-defense in the home would be subject to strict scrutiny. But, as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."); *United States v. Skoien,* 587 F.3d 803, 814 (7th Cir.2009) ( "[F]or gun laws that do not severely burden the core Second Amendment right of self-defense, there need only be a 'reasonable fit.' "); *GeorgiaCarry.Org,* 764 F.Supp.2d at 1317 (stating that policy that "does not impact" ability to carry firearms for purposes of self-defense in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

one's home does not burden "core" of Second Amendment right).

[20] In the Court's view, this case presents exactly the type of situation that merits the application of intermediate scrutiny. The Revised Policy, including the Common Area Provision, does not impose a complete ban, expressly recognizes a right to possess firearms in the home, and provides an exception for self-defense. Hence, the Revised Policy preserves the "core" of Plaintiffs' Second Amendment rights. Because the Revised Policy does not severely limit those rights inside the home—or come close to the level of infringement struck down in *Heller*—the Court's job is to determine whether the challenged policies can pass muster under intermediate scrutiny. That is the task to which the Court now turns.

## VII. Whether The Common Area Provision Survives Constitutional Scrutiny

As already noted, to survive intermediate scrutiny, the "asserted governmental end [of the challenged provision must] be more than just legitimate," it must be " 'significant,' 'substantial,' or 'important.' " *Marzzarella*, 614 F.3d at 98. Additionally, "the fit between the challenged regulation and the asserted objective [must] be reasonable, not perfect," and the regulation "need not be the least restrictive means of serving the interest." *Id.* However, the regulation must not burden the right more than is reasonably necessary to ensure that the asserted government end is met. *See id.*

[21] Here, the stated goal of the Common Area Provision is to promote and protect the safety of WHA residents, their guests, and WHA employees. (*See* D.I. 90 at A24) ("WHA recognizes the importance of protecting its residents' health, welfare, and safety, while simultaneously protecting the rights of its residents to keep and bear arms as established by the federal and state constitutions. WHA therefore adopts the following Firearms and Weapons Policy.") WHA, as a state agency, has an important and substantial interest in protecting the health, safety, and welfare of its residents, their guests, its employees, and the public at large while on WHA property. *See generally Schenck v. Pro–Choice Network of W. N.Y.*, 519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (discussing "significant governmental interest in public safety"); 42 U.S.C. § 1437c–1(d)(14)(A) (mandating public housing entities to devise safety plans that

"shall provide, on a project-by-project or jurisdiction-wide basis, for measures to ensure the safety of public housing residents") Plaintiffs "concede that there is a compelling state interest in safety." (Tr. at 21) Thus, it is undisputed that the first part of the intermediate scrutiny analysis is satisfied.

*18 The issue then becomes whether the fit between the Common Area Provision and the WHA's interest in safety is reasonable. Pursuant to the Revised Policy, WHA residents are permitted to lawfully possess firearms within the confines of their homes, that is, their particular assigned units. Residents also have the right to transport lawfully owned and obtained weapons to and from their units; in the course of such transportation, should the need arise, they may use their weapons for purposes of self-defense. (Tr. at 41–42, 52–53) As Defendants' counsel explained during oral argument, the Common Area Provision was developed to curb "the potential for accidental discharge, potential for there to be a fight and somebody has a weapon available, [and] bystanders could be injured." (Tr. at 54)

The Court concludes that there is a reasonable fit between the Common Area Provision and the WHA's interest in protecting the safety of residents, guests, and others who are present from time to time at housing facilities owned or operated by the WHA. Public housing authorities like the WHA are generally afforded wide latitude in their ability to regulate what occurs on their property and determine the best policy for protecting the health, safety, and welfare of their residents. *See generally Heller v. District of Columbia*, 698 F.Supp.2d 179, 191 (D.D.C.2010) (stating intermediate scrutiny permits authorities to "paint with a broader brush than strict scrutiny") (internal quotation marks omitted), *aff'd in part and rev'd in part by Heller II*, 670 F.3d at 1244. The Common Area Provision promotes these interests by limiting guns in the common areas, thereby limiting potential violence within those areas. Also relevant is the fact that a large proportion of the tenants and guests who are frequently present in the common areas are elderly or children, who may be particularly vulnerable.

"A state need not go beyond the demands of common sense to show that a statute promises directly to advance an identified governmental interest." *IMS Health, Inc. v. Ayotte*, 550 F.3d 42, 55 (1st Cir.2008), *abrogated on other grounds by ___ U.S. ___, 131*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

S.Ct. 2653, 180 L.Ed.2d 544 (2011). The Court concludes that, as a matter of common sense, there is a reasonable fit between the Common Area Provision and the promotion of safety in the common areas. Accordingly, again, intermediate scrutiny is satisfied.

Although more is not needed, the parties, and *amicus,* also cite statistics to support their competing conclusions. The Brady Center offers empirical evidence appearing to support the view that preventing the possession of weapons in the common areas of public housing is reasonably likely to promote safety. (*See, e.g.,* D.I. 91–1 at 13) Plaintiffs counter with their own studies, pointing to data purporting to show a negative correlation between gun ownership and crime (i.e., the more guns the less crime).[FN15] Particularly on cross-motions for summary judgment, the Court is not in a position to choose between The Brady Center's data and Plaintiffs' data on the disputed question of the relationship, if any, between gun ownership and crime. Nor is it necessary to do so in order to resolve the constitutional issue before the Court. The WHA's view that safety in the common areas is promoted by restricting gun possession is not unreasonable, and the WHA is entitled to make this decision under the circumstances presented here. It follows that the fit between the Common Area Provision and the WHA's compelling interest in safety is sufficient to withstand intermediate scrutiny.

**\*19** As Plaintiffs point out, the Common Area Provision "prohibits residents from possessing a firearm for self-defense in the common areas except when transporting the firearm into or out of the building." (D.I. 100 at 26) Plaintiffs contend that this provision produces an absurd result, limiting a tenant's Second Amendment rights to only those occasions when tenants are transporting their weapons to and from their units, while denying tenants the same protection when they undertake any other activity within the common areas.

The Court agrees with Plaintiffs that this is the effect of the Common Area Provision.[FN16] In this way, the provision has the consequence of burdening the right to possess, carry, and use firearms for self-defense in the common areas (assuming, as the Court has, that such a right is within the scope of the Second Amendment). But the Court does not draw the conclusion that this result is absurd, or otherwise so ill serves the WHA's interest in safety as to render the

provision unconstitutional. The WHA is charged with ensuring the safety of all residents, guests, and employees on property owned or operated by the WHA. The WHA's determination that safety is best promoted by prohibiting possession of firearms in common areas—while a policy decision with which others may reasonably disagree—is not so unreasonable as to fail intermediate scrutiny.

The Court makes two additional observations. First, at least one of the Plaintiffs, Mr. Boone, testified that he agreed the Common Area Provision is a reasonable policy. (D.I. 90 at A42–44, A47) Second, the Common Area Provision does not constitute a complete ban on use of firearms for self-defense in the common areas. As defense counsel has explained, "We have been very careful in our policy to say that a resident could take their weapon from outside and vice versa and, if necessary, they could use it if there was a confrontation where that became appropriate." (Tr. at 42) While the Common Area Provision may not be the least restrictive means of serving the WHA's interest in protecting the safety of the common areas, and the fit may not be "perfect," the provision does not burden Second Amendment rights (assuming they exist in this context) any more than is reasonably necessary to ensure that the asserted government end is met.

Accordingly, the Court will deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment on Count I of the Second Amended Complaint (D.I. 40).[FN17]

**VIII. Reasonable Cause Provision**
[22] Most of the preceding discussion has been directed to the Common Area Provision. As noted, this is the provision that received the overwhelming amount of the parties' attention in their briefing and during the oral argument.[FN18] In evaluating Plaintiffs' challenge to the Reasonable Cause Provision, the Court finds it adequate and appropriate to proceed directly to the application of intermediate scrutiny, based on the same reasoning already detailed in connection with the Common Area Provision.[FN19] Hence, the Court assumes, without deciding, that the Reasonable Cause Provision regulates conduct that is within the scope of the Second Amendment.

**\*20** The Reasonable Cause Provision requires that a resident, household member, or guest produce upon request "a copy of any permit, license, or other

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

documentation required by state, local, or federal law for the ownership, possession, or transportation of any firearm ... when there is reasonable cause to believe that the law or this Policy has been violated." (D.I. 90 at A24) Among other things, the Reasonable Cause Provision applies to any license to carry a concealed deadly weapon, as required under 11 Del. C. § 1441. However, as the parties agree, Delaware law does not require a license for the open, unconcealed carrying of a weapon. (See D.I. 109) Therefore, if the WHA ever has reasonable cause to ask a resident for documentation related to the open carry of a weapon—for example, because the WHA has reasonable cause to believe that the resident is carrying a weapon in the common areas not merely incidentally to or from his or her unit—there may be no such documentation that the resident could produce. The Reasonable Cause Provision, therefore, imposes little or no additional burden on a resident's ability to carry an unconcealed weapon.

However, a resident would be required to produce a permit to carry a concealed deadly weapon if WHA had reasonable cause to believe that a resident was (1) carrying a concealed weapon without a permit or (2) carrying a concealed weapon in violation of the Common Area Provision. In the former circumstance, the Reasonable Cause Provision survives intermediate scrutiny. The WHA's interest in ensuring that residents carrying concealed deadly weapons are qualified to do so is substantial. Obtaining a concealed firearm permit requires a great deal of knowledge and training regarding firearms, promoting safe handling. See 11 Del. C. § 1441(a)(3). In this way, the Reasonable Cause Provision promotes safety in the WHA facilities. Under the latter of these circumstances, the Reasonable Cause Provision survives intermediate scrutiny for the same reasons that the Common Area Provision itself survives it. The Reasonable Cause Provision is a reasonable mechanism for assisting with enforcement of the Common Area Provision.

[23] In sum, the Court concludes that the Reasonable Cause Provision furthers the compelling interest in protecting the safety of residents, guests, and others who are present at WHA owned or operated facilities, by permitting WHA employees to review copies of any required permits for carrying firearms. This allows the WHA to ensure, when there is reasonable cause to need such assurance, that a firearm possessed in a public facility is possessed lawfully. It

is reasonable to believe that such a provision deters unlawful possession of firearms—by, for instance, felons or those who are mentally incompetent—thereby, again, promoting safety. To the extent the Reasonable Cause Provision burdens Second Amendment rights, it does not do so any more than is reasonably necessary to ensure the promotion of the WHA's interest in safety.

## IX. Delaware Constitution

*21 Count II of Plaintiffs' Second Amended Complaint alleges that the WHA's Revised Firearms Policy violates Article I, Section 20 of the Delaware State Constitution. Article I, Section 20 of the Delaware Constitution provides: "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." There is scant judicial authority interpreting Delaware's constitutional right to bear arms, and none is directly relevant to the issue now before this Court.[FN20]

[24][25] When, as here, the highest state court has not authoritatively addressed the critical issue, the Court's disposition "must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." Novosel v. Nationwide Ins. Co., 721 F.2d 894, 897 (3d Cir.1983) (internal quotation marks omitted). Nothing in the language of the Delaware constitutional provision speaks directly to the possession of firearms in common areas of public housing facilities. Thus, the Court predicts that, if faced with the instant dispute, the Delaware Supreme Court, in interpreting the Delaware Constitution, would look to Heller, McDonald, Marzzarella, and other authority from the U.S. Supreme Court and Third Circuit construing the Second Amendment. See generally Doe v. Cape Henlopen School Dist., 759 F.Supp.2d 522, 528 (D.Del.2011) (stating that, in context of Delaware Constitution's provisions regarding religion, "Delaware courts are guided by First Amendment case law").[FN21]

Accordingly, the Court concludes, for the same reasons already stated in evaluating Plaintiffs' Second Amendment challenge, that the WHA's Revised Policy also does not violate Plaintiffs' rights under Article I, Section 20 of the Delaware Constitution. As a result, the Court denies Plaintiffs' motion for summary judgment, and grants Defendants' cross-motion for summary judgment on Count II of the Second

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
**(Cite as: 2012 WL 3065285 (D.Del.))**

Amended Complaint.

## X. Preemption

In Count III, Plaintiffs allege that WHA's firearms policies are preempted by state law. Plaintiffs contend that the Delaware General Assembly has specifically preempted the area of gun control in the State of Delaware, leaving the WHA without authority to adopt the Original or Revised Firearms Policies.[FN22]

" 'Preemption' refers to circumstances where the law of a superior sovereign takes precedence over the laws of a lesser sovereign." *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1121 (Del.2009). Preemption may be either express or implied. Express preemption is present "where the statutory text or legislative history explicitly ... demonstrates that the state statute is intended to replace or prevail over any pre-existing laws or ordinances that govern the same subject matter." *Cantinca v. Fontana*, 884 A.2d 468, 473 (Del.2005). Implied preemption exists where the legislature has enacted a regulatory scheme "in such a manner as to demonstrate a legislative intention that the field is preempted by state law." *Id.* at 473 n. 23 (internal quotation marks omitted).

*22 [26] Delaware law expressly prohibits municipalities and counties from regulating firearms. *See* 22 Del. C. § 111; 9 Del. C. § 330(c). The WHA, however, is a state agency. *See Wilmington Housing Authority v. Williamson*, 228 A.2d 782, 787 (Del.1967). Thus, it is not expressly preempted by the statutory provisions just cited. Nor have Plaintiffs identified any other source of express preemption.

Nor is the Court persuaded that the Delaware Supreme Court, if confronted with this issue, would find that the WHA's firearms policies are implicitly preempted. Plaintiffs argue that the Delaware General Assembly provided a regulatory scheme covering firearms through the assortment of state laws which govern how firearms are regulated within the State of Delaware. The Court concludes that if the General Assembly intended to preempt public housing authorities such as the WHA from regulating firearms possession, it would have said so expressly. Additionally, the Delaware General Assembly has explicitly conferred upon the WHA "all powers necessary or appropriate in order that [it] may engage in low-rent housing ... projects," including "the power to acquire property, ... [and] to construct and operate housing

accommodations." 31 Del. C. § 4302. The regulation of firearms comes within this broad authority. Plaintiffs fail to identify any inconsistency between the WHA's firearms policies and state law. *See generally Cantinca*, 884 A.2d at 473 ("In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict.").

Accordingly, the Court predicts that the Delaware Supreme Court would reject Plaintiffs' contention that the WHA is preempted from adopting the Revised Policy. Summary judgment on Count III will be granted to Defendants and denied to Plaintiffs.

## XI. Whether The WHA Policy Exceeds WHA's Authority

Count IV of the Second Amended Complaint alleges that Defendants have exceeded the scope of their statutory authority. The Court's discussion above in connection with Plaintiffs' preemption claim has already substantively addressed whether adoption of the firearms policies exceeds WHA's authority. *See also* 31 Del. C. § 4302; *Williamson*, 228 A.2d at 786 (observing that "extensive powers are conferred" upon Delaware housing authorities, including WHA). Thus, Defendants' request for summary judgment on Count IV is granted and Plaintiffs' similar request is denied.[FN23]

## XII. Declaratory Judgment

[27] Finally, in Count V, Plaintiffs seek a declaratory judgment that the WHA's firearms policies are unconstitutional. Declaratory relief is available as "an additional or alternative form of relief which may be granted on a cause of action within the jurisdiction of the court." *Falcon Steel Co. v. HCB Contractors*, 1991 WL 166120, at *2 (Del.Super. July 31, 1991); *see also* 10 Del. C. § 6501 ("[C]ourts of record ... shall have power to declare rights ... whether or not further relief is or could be claimed"). Here, however, because Defendants will be granted summary judgment on the substantive disputes among the parties, and judgment will be entered against Plaintiffs, it follows that the Court must also deny Plaintiffs' request for declaratory judgment relief. [FN24] Therefore, Plaintiffs' motion for summary judgment on Count V will be denied and Defendants' motion for summary judgment on Count V will be granted.

## CONCLUSION

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)
(Cite as: 2012 WL 3065285 (D.Del.))

*23 For the reasons stated above, Plaintiffs' motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted. An appropriate Order follows.

### ORDER

At Wilmington, this 27th day of July, 2012, for the reasons discussed in the Opinion issued on this same date,

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (D.I. 88) is *GRANTED.*

2. Plaintiffs' Motion for Summary Judgment (D.I. 86) is *DENIED.*

3. The parties' post-hearing supplemental letter, which was filed on July 22, 2011 and docketed as a motion (D.I. 109), has been considered by the Court and, to the extent it is viewed as a motion, is *DENIED.*

4. The Clerk is directed to enter judgment against Plaintiffs and in favor of Defendants.

FN1. The facts presented are based on the parties' summary judgment filings and a review of the record created by the parties. Where there are disputes of fact, all reasonable inferences are drawn in the non-moving parties' favor. As is evident from the Court's ruling on the motions, the Court does not find any genuine issues of material fact.

FN2. HUD requires that public housing authorities provide for at least a 30–day period for public comment prior to amending a public housing lease. See 24 C.F.R. § 966.3.

FN3. In a subsequent declaration, Doe states that she does, in fact, own a gun, and that she was retaliated against for filing her lawsuit (by being charged miscellaneous fees). (D.I. 100 Ex. B ¶¶ 2, 5) Defendants seek to strike this declaration as a "sham." See *Yatzus v. Appoquinimink Sch. Dist.,* 458 F.Supp.2d 235, 247 (D.Del.2006). Because ownership of a firearm is not necessary for Doe to have

standing, the Court need not determine whether her declaration should be stricken.

FN4. Plaintiff Doe testified that, if she owned a weapon, she might have reason to take it to the community room, testifying: "Well, if it's for protection, you need protection from your apartment to the community room, because it can happen—anything can happen to you anywhere." (D.I. 90 at A64) As Defendants' counsel appeared to recognize during the questioning, Doe did seem to object to the Common Area Provision. (D.I. 90 at A72) (counsel stating, in course of inquiring whether Doe objected to each particular paragraph of Revised Policy, "We've talked about the common areas already, so I'll skip that one")

FN5. During a scheduling conference on November 12, 2010, the Court indicated that it would likely determine the constitutionality of the Revised Policy but not the Original Policies, although the Court expressly permitted the parties to address each version if they wished. (D.I. 37 at 7–8)

FN6. As noted earlier, WHA is a state agency created by statute.

FN7. In the "Resolution Adopting the Wilmington Housing Authority Firearms and Weapons Policy" (D.I. 90 at A22), the Board of Commissioners stated that it had "determined that the Court's decision in *McDonald* raised questions about the permissibility of the firearms policy previously contained within the WHA public housing lease." The Synopsis of that Resolution adds that "[a]s a result" of *McDonald,* "questions were raised about the permissibility of the ban on the use and possession of firearms imposed by WHA's public housing lease." (D.I. 90 at A23)

FN8. Thus, the situation here is unlike that confronted by the Supreme Court in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

which the Court found a challenge to a repealed ordinance not to be moot. In that case, there was "no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so." *Id.*

FN9. There are also broader statements in *McDonald,* in which the right to possess firearms for self-defense is not tied explicitly to being in the home. *See, e.g.,* 130 S.Ct. at 3036 ("Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller,* we held that individual self-defense is 'the *central component*' of the Second Amendment right.... [C]itizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'") (quoting *Heller,* 128 S.Ct. at 2801–02, 2818); *see also id.* at 3048 ("[S]elf-defense was 'the *central component* of the right itself.'") (quoting *Heller,* 128 S.Ct. at 2801–02).

FN10. Other circuits have adopted similar two-step approaches to Second Amendment challenges. *See Heller v. District of Columbia,* 670 F.3d 1244, 1252–53 (D.C.Cir.2011) ("*Heller II*"); *Ezell v. City of Chicago,* 651 F.3d 684, 702–04 (7th Cir.2011); *United States v. Chester,* 628 F.3d 673, 680 (4th Cir.2010); *United States v. Reese,* 627 F.3d 792, 800–01 (10th Cir.2010).

FN11. In *Heller,* the Supreme Court explicitly ruled out a rational basis test for analyzing Second Amendment challenges. *See* 554 U.S. at 628 n. 27, 128 S.Ct. 2783; *see also Huet,* 665 F.3d at 600.

FN12. The Court will address the Reasonable Cause Provision in a separate section. *See infra* Section VII.

FN13. Plaintiffs point out that WHA's Commissioners could not agree with one another as to the meaning of "common area." (D.I. 87 at 13 n. 17) Nonetheless, the parties acknowledged that there are no genuine disputes of material fact as to the definition of "common areas." (Tr. at 14, 24–25, 44–45)

FN14. Plaintiffs' suggestion that this aspect of the Common Area Provision is "absurd" is considered in connection with applying intermediate scrutiny. It does not, however, affect the selection of which degree of constitutional scrutiny to apply.

FN15. Plaintiffs also argue that the Supreme Court, in *Heller* and *McDonald,* rejected the notion that statistical and sociological studies could be a basis for overriding a constitutional right. (D.I. 100 at 18)

FN16. Based on statements made during oral argument and a supplemental letter the parties submitted pursuant to a Court order (Tr. at 53–54; D.I. 109), the parties appear to agree that nothing in Delaware law *per se* prohibits open carry of a firearm. It follows that, absent the Common Area Provision, a WHA resident would *not* need a permit to display a firearm in a common area.

FN17. Plaintiffs additionally argue that the Firearms Policy is unconstitutional because it forces residents of WHA properties to relinquish at least a portion of their Second Amendment rights in exchange for the government benefit of public housing. (D.I. 87 at 14–15) In light of the Court's conclusion that the Revised Policy does not violate the Second Amendment, Plaintiffs' contention fails.

FN18. The Reasonable Cause Provision was discussed in the Transcript at pages 15, 36–37, 55–56, 64–65.

FN19. Both Doe and Boone testified that they had no objection to the Reasonable Cause Provision. (D.I. 90 at A48, A72) Nevertheless, because the Court has concluded that at least one Plaintiff has standing to maintain this action, the Court concludes that it can, and should, address Plaintiffs' constitutional challenge to the Reasonable Cause Provision.

FN20. In letters (D.I. 111; D.I. 112; D.I. 113)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the parties directed the Court's attention to *Griffin v. State*, 47 A.3d 487 (Del.2012) (*see* D.I. 111–1). In *Griffin,* the Delaware Supreme Court reversed a conviction based on the defendant's carrying a concealed knife in his home and remanded for a new trial, stating that "Griffin's constitutional right to bear arms authorized his carrying a concealed knife in his home." *Id.* at 491. In reaching its decision, the *Griffin* Court observed that "[u]nder the Delaware Constitution ... Delaware citizens have a constitutional right to keep and bear arms for the defense of themselves, their families, and their homes." *Id.* at 488. This same right is the "core" of the right protected by the Second Amendment. *See Marzzarella,* 614 F.3d at 89.

FN21. While Plaintiffs acknowledge that "Second Amendment jurisprudence is instructive" (D.I. 100 at 2; Tr. at 32), they also contend that the Delaware Constitution affords greater protections than the Second Amendment (*see* D.I. 87 at 17) (citing Randy J. Holland, *The Delaware Constitution: A Reference Guide* at 67 (2002)). In the Court's view, although Article I, Section 20 is more specific than the Second Amendment—explicitly calling out self-defense, other defensive purposes, hunting, and recreational uses of firearms—none of the linguistic differences are relevant to the policies in dispute here.

FN22. For purposes of its analysis, the Court assumes, without deciding, that Plaintiffs may pursue a cause of action based on preemption.

FN23. For purposes of its analysis, the Court assumes, without deciding, that Plaintiffs may pursue a cause of action based on lack of authority.

FN24. Plaintiffs acknowledge in their briefing that they "do not assert declaratory relief as an independent cause of action." (D.I. 100 at 39) *See also Smith v. BCE, Inc.,* 225 Fed.Appx. 212, 216 (5th Cir.2007) ( " 'Although the petition formally stated two independent causes of action for breach of

contract and declaratory judgment, the latter ground is merely a theory of recovery for the former.' ") (quoting *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746, 752 n. 3 (5th Cir.1996)).

D.Del.,2012.
Doe v. Wilmington Housing Authority
--- F.Supp.2d ----, 2012 WL 3065285 (D.Del.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.