IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-3433

JANE DOE and CHARLES BOONE,

Appellants,
Plaintiffs Below,

v.

WILMINGTON HOUSING AUTHORITY and FREDERICK S. PURNELL, SR.,
in his official capacity as executive director of the Wilmington Housing Authority,

Appellees,
Defendants Below.

On Appeal from the United States District Court
for the District of Delaware
(C.A. No. 10-473-LPS)

**APPELLEES' ANSWERING BRIEF**

Barry M. Willoughby, Esquire (DE Bar No. 1016)
Lauren E.M. Russell, Esquire (DE Bar No. 5366)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail:  bwilloughby@ycst.com
*Attorneys for Appellees Wilmington Housing Authority
and Frederick S. Purnell, Sr.*

Dated:  November 26, 2012

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... iv

Statement of Issues Presented for Review ...................................................... 1

Statement of Related Cases and Proceedings ................................................. 2

Statement of Facts ........................................................................................... 3

    I.    The NRA Contacts WHA and Threatens Litigation if WHA Does Not Immediately Eliminate Any Restriction upon Possession of Firearms by WHA Tenants ......................................................................... 3

    II.   The NRA Institutes Litigation Through Two Straw Plaintiffs .................... 4

    III.  Following the Supreme Court's Decision in *McDonald v. City of Chicago*, WHA Undertakes the Process of Reviewing and Revising Its Firearms Policy .......................................................................... 5

    IV.  WHA Adopts the Revised Policy, Based on Legal Advice and Comments from WHA's Residents During the Public Hearing Process ........................................................................................... 6

    V.   Following Amendment of the WHA Lease, the NRA Continues Its Challenge, Objecting to Any Restriction upon the Possession or Use of Firearms ............................................................................... 8

    VI.  The NRA Seeks to Circumvent the District Court's Award of Summary Judgment by Eliminating Federal Questions from Its Appeal ............................................................................................. 9

Summary of the Argument ............................................................................ 11

Argument ....................................................................................................... 12

    I.    Standard of Review ................................................................................. 12

    II.   Certification or Dismissal of the Pendent State Law Claims Is Not Appropriate at This Late Stage .............................................................. 12

          A.   Principles Governing Certification Do Not Favor Resolution of Issues Under the Circumstances Presented in This Case ................... 13

1. None of the Proposed Questions for Certification Present Novel Legal Issues ...................................................................14

2. Plaintiffs Have Not Established the Requisite Urgency..............16

3. Policy Considerations Dictate that Plaintiffs' Request for Certification Be Denied...............................................................17

B. Equity and Judicial Economy Militate Against Dismissal of the Pendent State Law Claims ................................................................19

1. Plaintiffs Have Waived Any Objection to Supplemental Jurisdiction ..................................................................................19

2. The District Court's Exercise of Supplemental Jurisdiction Was Proper ....................................................................................20

III. The District Court Applied the Proper Analysis to Plaintiffs' Article I, § 20 Claim, and Its Holding Should Be Affirmed....................................22

A. The District Court Properly Concluded that the Delaware Supreme Court Would Rely on Federal Case Law to Construe Article I, § 20 ....................................................................................22

1. Under the Facts of this Case, the State and Federal Rights to Bear Arms Are Coextensive....................................................22

2. Intermediate Scrutiny Is Appropriate Under Established Delaware Law and the Facts of This Case ...................................24

B. The District Court Appropriately Applied Intermediate Scrutiny to Its Review of Plaintiffs' State Constitutional Claim .....................28

1. The Revised Policy Survives Strict Scrutiny Because It Is a Narrowly Tailored Response to WHA's Compelling Interest in Its Residents' Safety..................................................29

2. The Revised Policy Survives Intermediate Scrutiny..................33

C. The Revised Policy Does Not Predicate Receipt of Governmental Benefits upon Waiver of Fundamental Rights............36

IV. The Doctrine of Preemption Is Inapplicable Because A Lease Is Not Legislative Conduct ....................................................................38

    A. Preemption Does Not Govern Lease-Making Procedures .................38

    B. Delaware Law Does Not Expressly Preempt WHA's Lease-Making Authority...............................................................................40

    C. Delaware Law Does Not Reflect the General Assembly's Intent to Impliedly Preempt WHA's Lease-Making Authority ...................42

V. WHA Acted Within the Bounds of Its Authority Under State and Federal Law in Establishing the Revised Policy ........................................43

Conclusion ...................................................................................................45

Certificate of Compliance ..........................................................................46

# TABLE OF AUTHORITIES

**Cases**

*A.W. Fin. Servs., S.A. v. Empire Res., Inc.*,
   981 A.2d 1114 (Del. 2009) ..................................................................38

*Achtermann v. Bussard*,
   No. 05C-04-198 RRC,
   2007 Del. Super. LEXIS 399 (Del. Super. Ct. Apr. 10, 2007)..................... 14, 15

*Ball v. Joy Mfg. Co.*,
   755 F. Supp. 1344 (S.D. W. Va. 1990) ...............................................18

*Ball v. Joy Mfg. Co.*,
   940 F.2d 651 (4th Cir. 1991) .............................................................18

*Boyle v. Christina Sch. Dist. Bd. of Educ.*,
   No. 07C-07-248 JAP,
   2010 Del. Super. LEXIS 5 (Del. Super. Ct. Jan. 8, 2010) ...................14

*Burson v. Freeman*,
   504 U.S. 191 (1992) .........................................................................35

*Cantinca v. Fontana*,
   884 A.2d 468 (Del. 2005).............................................................. 42, 43

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) .........................................................................38

*Combs v. Homer-Center Sch. Dist.*,
   540 F.3d 231 (3d Cir. 2008) .............................................................21

*Croteau v. Olin Corp.*,
   884 F.2d 45 (1st Cir. 1989) ..............................................................16

*Dep't of Servs. for Children, Youth & Their Families v. SS*,
   No. CN11-01239,
   2012 Del. Fam. Ct. LEXIS 7 (Del. Fam. Ct. Feb. 21, 2012) ...............16

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ......................................................... 23, 29, 30, 32

*Doe v. Portland Hous. Auth.*,
    656 A.2d 1200 (Me. 1995) ...................................................................41

*Dorsey v. State*,
    761 A.2d 807 (Del. 2000) .......................................................... 26, 27

*Enfield v. A.B. Chance Co.*,
    228 F.3d 1245 (10th Cir. 2000) .........................................................18

*Fed. Deposit Ins. Corp. v. Farmers Bank of Del.*,
    599 F. Supp. 684 (D. Del. 1984) .......................................................18

*Fiat Motors of N. Am. v. Wilmington*,
    498 A.2d 1062 (Del. 1985) .................................................................15

*Foucha v. Louisiana*,
    504 U.S. 71 (1992) ..............................................................................24

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ............................................................................38

*Goldstein v. Johnson & Johnson*,
    251 F.3d 433 (3d Cir. 2001) ...............................................................31

*Gregory v. Dillard's Inc.*,
    565 F.3d 464 (8th Cir. 2009) ..............................................................22

*Griffin v. State*,
    47 A.3d 478 (2012) ................................................................ 27, 29, 31

*Hayward v. Gaston*,
    542 A.2d 760 (Del. 1988) ...................................................................42

*Hetherton v. Sears, Roebuck & Co.*,
    652 F.2d 1152 (3d Cir. 1981) .............................................................36

*Holt v. Richmond Redevelopment & Hous. Auth.*,
    266 F. Supp. 397 (E.D. Va. 1966) .............................................. 36, 37

*IMS Health Inc. v. Ayotte*,
    550 F.3d 42 (1st Cir. 2008) .................................................................35

*In re: Paoli Railroad Yard*,
　35 F.3d 717 (3d Cir. 1994) ...............................................................................21

*Int'l Soc'y for Krishna Consciousness v. Lee*,
　505 U.S. 672 (1992) ...........................................................................................30

*Jones v. State*,
　745 A.2d 856 (Del. 1999)...................................................................................27

*Lacy v. G.D. Searle & Co.*,
　No. 83C-SE-123,
　1988 Del. Super. LEXIS 205 (Del. Super. Ct. June 22, 1988) ............................42

*Mann v. Oppenheimer & Co.*,
　517 A.2d 1056 (Del. 1986).................................................................................43

*McDonald v. City of Chicago*,
　130 S. Ct. 3020 (2010) .........................................................................................3

*Nite Moves Entm't, Inc. v. City of Boise*,
　153 F. Supp. 2d 1198 (D. Idaho 2001)...............................................................40

*Orr v. Orr*,
　440 U.S. 268 (1979) ...........................................................................................25

*Orson, Inc. v. Miramax Film Corp.*,
　189 F.3d 377 (3d Cir. 1999) ...............................................................................15

*Pagan v. Fruchey*,
　492 F.3d 766 (6th Cir. 2007)..............................................................................34

*Peruta v. County of San Diego*,
　758 F. Supp. 2d 1106 (S.D. Cal. 2010) ..............................................................25

*Pickering v. Bd. of Educ.*,
　391 U.S. 563 (1968) ..................................................................................... 37, 38

*Rales v. Blasband*,
　626 A.2d 1364 (Del. 1993)..................................................................................16

*Revised Jersey Tpk. Auth. v. PPG Indus.*,
　197 F.3d 96 (3d Cir. 1999) .................................................................................20

*Richland Bookmart, Inc. v. Knox County, Tenn.*,
   555 F.3d 512 (6th Cir. 2009) ...............................................................35

*Sanders v. State*,
   585 A.2d 117 (Del. 1990) ......................................................... 26, 28

*Schaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*,
   730 F.2d 910 (3d Cir. 1984) .............................................................22

*Skomorucha v. Wilmington Hous. Auth.*,
   504 F. Supp. 831 (D. Del. 1980) ......................................................40

*Smith v. State*,
   882 A.2d 762 (Del. 2005) ...............................................................31

*State v. Mitchell*,
   No. IK00-10-0349,
   2001 Del. Super. LEXIS 498 (Del. Super. Ct. Nov. 27, 2001) ...........27

*State v. Super. Ct. of New Castle County*,
   141 A.2d 468 (Del. 1958) ................................................................14

*State v. Wilmington Hous. Auth.*,
   No. N92-02-1177,
   1993 Del. Super. LEXIS 43 (Del. Super. Ct. Feb. 10, 1993) ..............43

*Thompson v. Dover Downs, Inc.*,
   887 A.2d 458 (Del. 2005) ...............................................................25

*Thompson v. Paul*,
   547 F.3d 1055 (9th Cir. 2008) ........................................................18

*Tudor Dev. Group v. U.S. Fidelity & Gaur. Co.*,
   968 F.2d 357 (3d Cir. 1992) .............................................................12

*Turnbull v. Fink*,
   668 A.2d 1370 (Del. 1995) ..............................................................24

*U.S. v. Cruikshank*,
   92 U.S. 542 (1976) ...........................................................................3

*U.S. v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ....................................................... 25, 28

*U.S. v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011) ........................................................ 33, 35

*U.S. v. Ponton*,
  407 Fed. App'x 622 (3d Cir. 2011) ....................................................12

*U.S. v. Skoien*,
  587 F.3d 803 (7th Cir. 2009) ............................................................34

*U.S. v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) ............................................................34

*U.S. v. Skoien*,
  No. 08-3770,
  2010 U.S. App. LEXIS 6584 (7th Cir. Feb. 22, 2010).........................34

*Wilmington Hous. Auth. v. Williamson*,
  228 A.2d 782 (Del. 1967) ............................................... 15, 40, 41, 43

## Constitutional Provisions

Del. Const. art IV, § 11(8) ...................................................................13

Del. Const. art. I, § 20 ................................................................... 22, 23

## Other Authorities

Del. Op. Att'y Gen.,
  No. 79-F013,
  1979 Del. AG LEXIS 13 ....................................................................40

Tx. Op. Att'y Gen.,
  No. DM-71,
  1991 Tex. AG LEXIS 87 (Dec. 31, 1991) ..........................................41

## Regulations

24 C.F.R. § 966.3 ..................................................................................5

39 C.F.R. § 232.1 ................................................................................30

## Rules

Del. Supr. Ct. R. 41(b) .................................................................. 13, 14

L.A.R. 110.1 ............................................................................ 13, 17

**Statutes**

9 *Del. C.* § 330(c) ................................................................. 39, 40

11 *Del. C.* § 1256 .......................................................................30

18 U.S.C. § 922(q)(2)(A) ..........................................................30

22 *Del. C.* § 111 .................................................................. 39, 40

28 U.S.C. § 1331 ........................................................................20

28 U.S.C. § 1367 ........................................................................20

31 *Del. C.* § 4302 .....................................................................44

31 *Del. C.* § 4308 ................................................................. 43, 44

66 Del. Laws ch. 10 ...................................................................17

Dover, Del., Code § 70-2 ..........................................................30

New Castle County, Del., Code § 24.01.014 .............................30

**Treatises**

16 Moore's Federal Practice – Civil § 106.66 (2012) ...............21

17A Moore's Federal Practice – Civil § 124.22[7][d] (2012) .................18

Eugene Volokh,
  *Implementing the Right to Keep and Bear Arms for Self-Defense*,
  56 U.C.L.A. L. Rev. 1443 (2009) ...........................................31

Randy J. Holland,
  *The Delaware Constitution: A Reference Guide* (2002) .......................23

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether Appellants' Jane Doe and Charles Boone (collectively "Plaintiffs") acceptance of the District Court's exercise of supplemental jurisdiction, and their failure to request certification of their state law claims before the District Court, make dismissal or certification inappropriate at this juncture.

2.      Whether the District Court properly determined and applied the law to Plaintiffs' state law claims to hold that Defendants-Appellees Wilmington Housing Authority and Executive Director Frederick S. Purnell, Sr. (collectively "WHA") acted within the scope of their authority and the bounds of the law to impose reasonable restrictions upon the possession and use of firearms on WHA property.

01:12811480.2

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Appellees are not aware of any other completed or pending case or proceeding that is in any way related to this case.

## STATEMENT OF FACTS

**I.**  **The NRA Contacts WHA and Threatens Litigation if WHA Does Not Immediately Eliminate Any Restriction upon Possession of Firearms by WHA Tenants**

This matter arises from the restrictions that WHA, as a public housing authority, imposes upon tenants who occupy its rental units.  On February 1, 2010, Robert Dowlut, General Counsel for the National Rifle Association ("NRA"), sent a letter to WHA's Executive Director Fred Purnell, claiming that portions of the WHA Lease and Grievance Procedure (the "WHA Lease") violated the Second Amendment to the Constitution of the United States.  (A40-41.)  Purnell responded by seeking legal advice and conferring with the members of WHA's Board of Commissioners (the "Board").  (A390-92; A659-60.)

An internal debate among members of the Board followed, regarding the proper course of action.  (A416; A409-10; A661-62; A658.)  As Board member Geoff Langdon testified in his deposition, the Board ultimately concluded that it should not rush into amending the policy.  *Id.*  Based on existing law at the time of Dowlut's letter, the Second Amendment did not apply to the states or their instrumentalities.  *See*, *e.g.*, *U.S. v. Cruikshank*, 92 U.S. 542, 553 (1976) (holding that the Second Amendment restricts the U.S. Congress only).  The then-pending U.S. Supreme Court case of *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) was expected to address anew the question of whether the Second Amendment was

applicable to the states.  (A425-26.)  Because of the important public policy concerns and the paramount importance of the safety and well-being of WHA residents, WHA decided to await the outcome of the *McDonald* decision before taking further action.  (A418.)

## II.    The NRA Institutes Litigation Through Two Straw Plaintiffs

On May 27, 2010, Plaintiff Jane Doe instituted this action by filing a complaint with the Delaware Court of Chancery, seeking to invalidate the sections of the WHA Lease addressing firearms.  (A53, ¶ 6.)  Doe is a resident of The Park View, which is a privately owned, WHA-managed property.  (A100, ¶ 6.)  The Park View is not governed by the WHA Lease.  (A108, ¶¶ 4-8.)  Instead, its tenants are subject to The Park View House Rules, which contained a provision substantively identical to the provisions of the WHA Lease to which the NRA objected.

WHA removed the case to the U.S. District Court for the District of Delaware, and timely answered the Complaint.  (A52; A99.)  On June 17, 2010, the District Court temporarily stayed the action, pending the Supreme Court's decision in *McDonald*.  On June 28, 2010, the Supreme Court issued its ruling in *McDonald*, holding for the first time that the Second Amendment was applicable to the states through the Due Process Clause of the Fourteenth Amendment.  In response to the Court's holding, Executive Director Purnell immediately

suspended operation of applicable provisions of the WHA Lease and The Park View House Rules, pending WHA's review and adoption of a new policy. (A109, ¶ 13; A111, ¶ 25; A306-07, ¶ 30.)

At the same time, upon concluding that Jane Doe was not a resident in public housing or subject to the WHA Lease, Plaintiff's counsel filed an Amended Complaint adding Plaintiff Charles Boone. (A290; see also A274-75.) Both Plaintiffs were recruited by Lee Williams, a member of the Caesar Rodney Institute and NRA supporter, to be plaintiffs in this action. (A380; A668-70; A672-74.) Notably, when the Complaint was amended to include Boone, WHA had already suspended the firearms provisions of the WHA Lease. Boone was not informed of this fact when Mr. Williams asked him to become a plaintiff. (A379; compare A106 with A290.)

## III. Following the Supreme Court's Decision in *McDonald v. City of Chicago*, WHA Undertakes the Process of Reviewing and Revising Its Firearms Policy

On September 7, 2010, the District Court again stayed the proceedings, allowing WHA to complete the process of amending the WHA Lease in keeping with the *McDonald* decision. (A312.) The U.S. Department of Housing and Urban Development ("HUD") requires that public housing authorities provide a 30-day period for public comment prior to amending a public housing lease. 24 C.F.R. § 966.3. With the advice of counsel, WHA drafted a proposed revision

to the WHA Lease, and gave notice of a public hearing on the proposed policy. (A313-14; A320.)

WHA held the public hearing on October 14, 2010. Surprisingly, neither Plaintiffs nor their counsel attended the public hearing or submitted any written comment about the proposed policy. (A379; A321-22.) WHA also notified the NRA about the public hearing. The NRA expressly refused to participate or to submit written comments to the proposed policy. (A375; A315-16; A317-18.) Ironically, Robert Dowlut, the same NRA General Counsel who sent WHA the letter in February claiming that the WHA Lease was unconstitutional and threating litigation, became agitated and questioned why the NRA was invited to comment on the proposed policy. (A663.)

## IV. WHA Adopts the Revised Policy, Based on Legal Advice and Comments from WHA's Residents During the Public Hearing Process

In response to comments made at the public hearing, the Board conferred and modified the proposed policy. (A425; A426; A421-22; A664-66.) On October 25, 2010, the Board adopted the WHA Firearms and Weapons Policy (the "Revised Policy"), thereby amending the terms of the WHA Lease.[1] (A363-66.)

---

[1] The Revised Policy contains the following provisions at issue on appeal:

"The resident, members of the resident's household, and guests: . . .

3.      Shall not display or carry a firearm or other weapon in any common area, except where the firearm or other weapon is being

The Park View House Rules were simultaneously amended to bring them into line with the Revised Policy.

The Revised Policy permits residents to possess weapons in their residences for the purpose of self-defense. The Common Areas Provision prohibits the possession or display of weapons in common areas. There is an exception that allows residents to transport firearms into and out of the building. (A365-66.) In the course of such transportation, a resident may use a weapon in self-defense. Any other possession or use of weapons in common areas is prohibited.

The possession and display of weapons in the community rooms was one of WHA's primary concerns. (A427; A397-99; A400-02; A403; A411-12.) The community rooms include communal entertainment facilities such as large-screen television sets and other appliances. Testimony of the Board members shows that WHA was concerned for the safety and welfare of residents because of the risk of accidental or intentional shootings, and the alarm caused to other residents from

---

transported to or from the resident's unit [the "Common Areas Provision"].

4.      Shall have available for inspection a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership, possession, or transportation of any firearm or other weapon, including a license to carry a concealed weapon as required by 11 *Del. C.* § 1441, upon request, when there is reasonable cause to believe that the law or this Policy has been violated [the "Reasonable Cause Provision"]."

7

having weapons displayed in the community room.  (A427; A417; A406; A412-13; A369; A374; A676-77; A382.)

The Reasonable Cause Provision of the Revised Policy also requires residents to follow all applicable federal and state laws with respect to ownership and possession of firearms, and to exercise reasonable care in the possession and use of guns and ammunition.  The Revised Policy further permits WHA to ask for a copy of a resident's license to carry a concealed deadly weapon ("CCDW") when there is reasonable cause to believe that the resident has violated the Revised Policy or the law.  (A365-66.)

## V. Following Amendment of the WHA Lease, the NRA Continues Its Challenge, Objecting to <u>Any</u> Restriction upon the Possession or Use of Firearms

After the adoption of the Revised Policy, and despite the fact that the Policy allows the possession and use of weapons in a tenant's unit, the NRA, acting through Plaintiffs, elected to continue this action.  They contended that any restriction on the possession or use of weapons on WHA property, beyond those imposed by law, violates state and federal constitutional rights.

Thereafter, discovery began and Plaintiffs were deposed.  Their testimony shows that the NRA solicited both Plaintiffs through its local operative, Lee Williams, to become "straw" plaintiffs in the case.  (A380; A668-70; A672-74.) Indeed, both Plaintiffs testified that Mr. Williams and Plaintiffs' counsel literally

came knocking at their doors to seek their involvement as plaintiffs in the case. (A380; A669-70.) Plaintiffs further testified that, at the time of their depositions, neither of them possessed a weapon. (A378; A675; A682.) Neither had ever sought a CCDW license. (A378; A678.) In fact, neither had ever requested information from WHA about whether they could possess a weapon in their home or on WHA property, either before or during this lawsuit. (A378; A671; A675.)

Finally, Plaintiffs testified that they did not have a problem with any of the restrictions set forth in the Revised Policy. (A382-86.) Jane Doe further testified that other residents would likely be alarmed by the presence of weapons in common areas, such as the community room. (A676-77.) Plaintiffs' testimony echoed the concerns of the Board members, who unanimously voted to adopt the Revised Policy.

## VI. The NRA Seeks to Circumvent the District Court's Award of Summary Judgment by Eliminating Federal Questions from Its Appeal

It is against this backdrop that Plaintiffs challenged the Revised Policy as allegedly in violation of the Second Amendment of the U.S. Constitution and Article I, § 20 of the Delaware State Constitution. Following their unsuccessful attempts to have the Revised Policy declared unconstitutional, Plaintiffs now ask this Court to vacate the District Court's decision with respect to their state law claims by seeking an order dismissing the pendent state law claims or certifying

them to the Delaware Supreme Court.  For the following reasons, the Court should

reject Plaintiffs' request and affirm the District Court's decision.

# SUMMARY OF THE ARGUMENT

1.      Certification to the Delaware Supreme Court is inappropriate because the legal issues presented are not novel, and Plaintiffs did not request certification before the District Court.

2.      Dismissal of the pendent state law claims is not proper because Plaintiffs consented to the District Court's exercise of supplemental jurisdiction.

3.      The District Court properly relied upon persuasive federal law to construe Article I, § 20 of the Constitution of the State of Delaware. The Court correctly concluded that intermediate scrutiny is the appropriate standard of review, and that the Revised Policy survives Plaintiff's constitutional challenge because WHA imposed reasonable restrictions that were narrowly tailored to its compelling interest in the safety of its residents and the general public.

4.      WHA's implementation of the Revised Policy is not preempted by state law, because it is not the result of legislative action. Furthermore, state law does not indicate a clear intent to expressly or impliedly preempt WHA's lease-making powers.

5.      At all times, WHA acted within the bounds of its extensive authority to effectuate state law.

**ARGUMENT**

## I.  Standard of Review

Questions of law are subject to *de novo* review.  *U.S. v. Ponton*, 407 Fed. App'x 622, 623-24 (3d Cir. 2011) ("Our standard of review over questions of law is plenary.").  Determinations of fact are subject to review for clear error.  *Tudor Dev. Group v. U.S. Fidelity & Gaur. Co.*, 968 F.2d 357, 359 (3d Cir. 1992).

## II.  Certification or Dismissal of the Pendent State Law Claims Is Not Appropriate at This Late Stage

Plaintiffs have not appealed the District Court's decision upholding the Revised Policy under the Second Amendment to the U.S. Constitution.  The District Court's Second Amendment rulings are therefore the law of the case and constitute precedent in the District of Delaware.  The only issue before this Court is whether WHA's policy violates state law, notwithstanding their validity under the U.S. Constitution.  Op. Br. At 16 ("Only state-law issues are presented in this appeal.").

Plaintiffs now ask this Court to certify all questions of state law to the Delaware Supreme Court or, in the alternative, to dismiss without prejudice the pendent state law claims.  Certification and dismissal, however, are inappropriate for several reasons.  First, the District Court has already ruled on the state law issues and rejected Plaintiffs' claims that Delaware law should be read more broadly than the Second Amendment.  Second, Plaintiffs have waived their right to

seek certification or dismissal by not raising the issues below.  Finally, considerations of judicial economy and basic notions of fairness dictate that a party not be permitted to "gamble" on a District Court ruling with respect to state law issues legitimately before it, only to seek certification or dismissal when the ruling is not to their liking.

### A. Principles Governing Certification Do Not Favor Resolution of Issues Under the Circumstances Presented in This Case

Plaintiffs seek certification of three questions to the Delaware Supreme Court:

1. Do the Common Area and Reasonable Cause Provisions [of the Revised Policy] violate the Delaware Constitution?

2. Are WHA's provisions preempted by state law?

3. Did the WHA exceed the scope of authority granted to it by its state enabling statute?

This Court permits certification of questions of law where "the procedures of the highest court of a state provide for certification."  L.A.R. 110.1.  Delaware's Supreme Court permits certification by a federal appellate court where "there is an **important and urgent** reason for an immediate determination of such question or questions."  Del. Supr. Ct. R. 41(b) (emphasis added).  *See also* Del. Const. art IV, § 11(8) (granting jurisdiction to determine questions of law certified by federal appellate courts).  This Court's certification of a question of law, and the Delaware Supreme Court's acceptance of the certified question, lie exclusively within the

respective courts' discretion. *State v. Super. Ct. of New Castle County*, 141 A.2d 468, 471 (Del. 1958).

### 1. None of the Proposed Questions for Certification Present Novel Legal Issues

Plaintiffs correctly note that novel or unsettled issues of law are generally appropriate subjects for certification. *See* Del. Supr. Ct. R. 41(b)(i) and (iii). They fail to acknowledge, however, that the issues they present for certification are not novel questions of law; they merely require the application of established legal principles to novel facts. Delaware courts have made clear that decisions requiring "the application of a unique set of facts to established principles of [] law" do not satisfy the requirements of Supreme Court Rule 41(b). *Achtermann v. Bussard*, No. 05C-04-198 RRC, 2007 Del. Super. LEXIS 399, at *3 (Del. Super. Ct. Apr. 10, 2007); *see also Boyle v. Christina Sch. Dist. Bd. of Educ.*, No. 07C-07-248 JAP, 2010 Del. Super. LEXIS 5, at *11 (Del. Super. Ct. Jan. 8, 2010) (noting that questions regarding a Court's correct application of statutes involve "an application of law to fact" and are not proper subjects of certification).

Plaintiffs ask to certify three questions of law, none of which is novel. First, Plaintiffs ask whether the Common Area and Reasonable Cause Provisions of the Revised Policy violate Article I, § 20 of the Delaware Constitution. While Section 20 has not been previously applied to a public housing authority, as discussed in detail below, there is ample persuasive precedent developed by federal

courts that provides solid guidance to this Court in resolving Plaintiffs' challenge. *See* § III, *infra*. The District Court properly relied upon that precedent to reach a fair and reasoned holding on Plaintiffs' state constitutional challenge.

Plaintiffs next ask that this Court certify the question of whether WHA's lease-making authority is preempted by state law. The law of preemption is well-established, and does not require guidance from the Delaware Supreme Court for application. *See*, *e.g.*, *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 385 (3d Cir. 1999) (addressing the "well-established legal principles" of preemption). Because this question merely requires the application of established law to novel facts, it is not proper for certification. *Achtermann*, 2007 Del. Super. LEXIS 399, at *3.

Finally, Plaintiffs ask this Court to certify the question of WHA's authority to establish the Revised Policy. The question posed requires the application of clear and unambiguous statutory language to a limited factual scenario. Delaware courts have previously noted the "extensive powers" conferred upon WHA by Title 31, Chapter 43 of the Delaware Code. *Wilmington Hous. Auth. v. Williamson*, 228 A.2d 782, 786 (Del. 1967) *superseded on other grounds by Fiat Motors of N. Am. v. Wilmington*, 498 A.2d 1062 (Del. 1985). The only question before the District Court, therefore, is whether those broad statutory powers include within their ambit the authority to establish the Revised Policy.

## 2. Plaintiffs Have Not Established the Requisite Urgency

Moreover, Plaintiffs have not established an urgent need for the Delaware Supreme Court to address the state law challenges to the Revised Policy. Indeed, Plaintiffs have waited more than two years since the case was filed to raise the issue of certification. This action was instituted on May 27, 2010, and removed to the U.S. District Court for the District of Delaware on June 1, 2010. (A47.) Notably, at no time during the proceedings before the U.S. District Court did Plaintiffs seek certification. *Rales v. Blasband*, 626 A.2d 1364, 1366 (Del. 1993) (noting amendment of the Delaware Constitution in 1993 to permit certification by **any** Article III federal court); *Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir. 1989) (commenting that "the extent of any *entitlement* to certification is 'considerably weakened' by the fact that plaintiff did not request certification below") (emphasis in original). It was not until after an adverse ruling before the District Court that Plaintiffs asserted that there was an "urgent" need for the Delaware Supreme Court to address the state law issues. *See*, *e.g.*, *Dep't of Servs. for Children, Youth & Their Families v. SS*, No. CN11-01239, 2012 Del. Fam. Ct. LEXIS 7, at *15-16 (Del. Fam. Ct. Feb. 21, 2012) (considering litigants' failure to act swiftly in determining that "no urgent and important reasons exist for certification").

In addition, the provision of the Delaware Constitution on which Plaintiffs rely became effective in 1987. 66 Del. Laws ch. 10 (amending Article I, § 20). Yet, prior to institution of this litigation in 2010, no WHA resident had ever sought review of the state law issues raised by Plaintiffs. Moreover, at deposition both Plaintiffs further admitted that they do not keep a gun on WHA premises nor have they sought a state license to carry a concealed deadly weapon. (A378; A671; A675; A678; A682.) Both conceded that they agreed with WHA's restrictions on weapons in common areas. (A382-83; A683-86.) Thus, the facts presented simply do not meet the urgency requirement for certification.

### 3. Policy Considerations Dictate that Plaintiffs' Request for Certification Be Denied

Finally, Plaintiffs' request for certification should be denied for policy reasons. Applying a rule substantively identical to Local Rule of Appellate Procedure 110.1, the Tenth Circuit declined to give an appellant a second bite at the apple after it lost on summary judgment, writing:

> While certification is appropriate where the legal question at issue is novel and the applicable state law is unsettled, it is never compelled. Under the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain. We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court. Applying these general principles to the circumstances presented here, we deny the [appellant]'s motion for certification. Although the issues raised by the

> [appellant] are novel and somewhat difficult, the
> [appellant] did not seek certification until after it received
> an adverse decision from the district court. That fact
> alone persuades us that certification is inappropriate.

*Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (internal

quotations omitted).  The Tenth Circuit's position reflects the general rule:

"appellate courts are not receptive to certification requests that first arise on

appeal; absent a timely request in district court, the party seeking certification must

advance a compelling reason for certification on appeal."  17A Moore's Federal

Practice – Civil § 124.22[7][d] (2012).  Other Circuit Courts have adopted a

similar stance, holding in essence that equity does not support a litigant's efforts to

seek a more favorable ruling in a different forum.  *Thompson v. Paul*, 547 F.3d

1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question

to a state supreme court after the federal district court has issued a decision.  A

party should not be allowed 'a second chance at victory' through certification by

the appeals court after an adverse district court ruling"); *Ball v. Joy Mfg. Co.*, 755

F. Supp. 1344, 1373 (S.D. W. Va. 1990) *aff'd* 940 F.2d 651 (4th Cir. 1991).

The rationale behind the Tenth Circuit's position has been outlined by

Delaware's District Court:  putting a final decision "to the Delaware Supreme

Court now would be in effect an appeal from [the District Court], something the

state court clearly does not have the jurisdiction to entertain."  *Fed. Deposit Ins.*

*Corp. v. Farmers Bank of Del.*, 599 F. Supp. 684, 686 (D. Del. 1984).  The same is

true here.  Plaintiffs, backed by the NRA, have doggedly pursued this litigation

despite WHA's good-faith efforts to craft a reasonable weapons policy.  Following

the District Court's decision on the parties' cross-motions for summary judgment,

based on 71 pages of briefing filed by Plaintiffs' counsel, Plaintiffs now seek to

have this Court set aside the District Court's decision and certify questions to the

Delaware Supreme Court.  At no time prior to their loss in the District Court did

Plaintiffs raise the issue of certification before the District Court.  Considerations

of judicial economy and basic notions of fairness dictate that Plaintiffs not be

permitted to fully litigate the issue before the District Court only to seek

certification when they do not agree with the Court's decision.

**B.    Equity and Judicial Economy Militate Against Dismissal of the Pendent State Law Claims**

Plaintiffs' argument in favor of dismissal suffers from the same weaknesses

as their request for certification—it seeks nothing more than another opportunity to

litigate an issue that was decided by the District Court in WHA's favor.  Once

again, Plaintiffs failed to request this form of relief before the District Court, and

have therefore waived their objection.

**1.    Plaintiffs Have Waived Any Objection to Supplemental Jurisdiction**

Federal law gives the District Court discretion to dismiss pendent state

claims where (1) the claim raises a novel or complex issue of State law, or (2) the

district court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c). Significantly, Plaintiffs did not raise the issue of supplemental jurisdiction before the District Court. "A district court's decision to determine such claims is discretionary, and where a party has failed to object to the district court's exercise of this jurisdiction, in the absence of special circumstances, the challenge is waived." *Revised Jersey Tpk. Auth. v. PPG Indus.*, 197 F.3d 96, 113 (3d Cir. 1999). Because Plaintiffs have identified no special circumstances justifying their failure to raise this issue below, they may not raise it now.

### 2. The District Court's Exercise of Supplemental Jurisdiction Was Proper

There is no dispute that the state and federal law issues presented below arise out of a common nucleus of operative facts over which the District Court had subject matter jurisdiction. 28 U.S.C. §§ 1331, 1367. The District Court invested significant time and resources into the litigation of this hotly contested case without any suggestion that Plaintiffs objected to the Court's exercise of supplemental jurisdiction. During the nearly two and a half years of litigation below, the parties took sixteen depositions, participated in multiple hearings before Judge Stark, and fully briefed and orally argued the state and federal law issues. The District Court became thoroughly familiar with the facts and issues in the case. Dismissal of the state law claims after an appeal would require that many of those efforts be duplicated. Principles of judicial economy, combined with other factors

such as forum shopping, require that Plaintiffs' belated attempt at dismissal be rejected.  16 Moore's Federal Practice – Civil § 106.66 (2012) (noting that jurisdiction may be retained where significant judicial resources have already been invested and the moving parties' actions indicate an intent to forum shop).

The facts in this case are analogous to those in *In re: Paoli Railroad Yard*, in which this Court declined to dismiss pendent state law claims.  35 F.3d 717 (3d Cir. 1994).  In that matter, the plaintiffs voluntarily dismissed their federal causes of action following an adverse summary judgment ruling, and asked the District Court to decline pendent jurisdiction over the remaining state law claims.  *Id.* at 738.  The District Court refused, and continued to exercise pendent jurisdiction. *Id.*  In reviewing and upholding the District Court's decision, this Court noted that, because "[p]laintiffs dismissed their [federal] claims and argued against federal jurisdiction only after the district court had first granted summary judgment against them[, . . .] plaintiffs' dismissal of their [federal] claims may well constitute an attempt to forum shop by divesting the district court of jurisdiction."  *Id.*

All of the cases cited by Plaintiffs in support of dismissal are inapposite. None of the cases involved a situation such as this, in which the Appellants sought dismissal after adverse rulings in an effort to select a more favorable forum after the fact.  *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 252-54 (3d Cir. 2008) (addressing appellants' substantive contentions and electing not to exercise

supplemental jurisdiction); *Gregory v. Dillard's Inc.*, 565 F.3d 464, 477 (8th Cir.

2009) (same); *Schaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*,

730 F.2d 910, 911 (3d Cir. 1984) (discussing Third Circuit's order that district

court consider supplemental jurisdiction). Because Plaintiffs offer no compelling

authority to the contrary, this Court should continue to exercise supplemental

jurisdiction over the pendent state law claims.

## III. The District Court Applied the Proper Analysis to Plaintiffs' Article I, § 20 Claim, and Its Holding Should Be Affirmed

If the Court elects to review Plaintiffs' Article I, § 20 clam, the District

Court's decision should be affirmed because it reflects a carefully considered

application of persuasive precedent to the facts of this case.

### A. The District Court Properly Concluded that the Delaware Supreme Court Would Rely on Federal Case Law to Construe Article I, § 20

#### 1. Under the Facts of this Case, the State and Federal Rights to Bear Arms Are Coextensive

Plaintiffs contend that Article I, § 20 of the Constitution of the State of

Delaware provides broader rights than the Second Amendment, and should

therefore be subject to a heightened standard of scrutiny. Section 20 provides that

a citizen may "keep and bear arm for the defense of self, family, home, and State,

and for hunting and recreational uses." While it is true that the language is not

identical to the Second Amendment, the facts in this case do not implicate any

material differences between Section 20 and the Second Amendment.

There is no precedent comparing addressing the breadth of the rights protected by Section 20. Delaware Supreme Court Justice Randy Holland has opined that the reference to hunting and recreational uses "*appear[s]* to afford greater protections" than the Second Amendment, but the Court has not had occasion to formally consider that question. Randy J. Holland, *The Delaware Constitution: A Reference Guide*, 67 (2002) (emphasis added). In the case at bar, however, there is no claim that residents should be permitted to possess or use firearms on WHA property for hunting or recreational uses. Consequently, there is no basis to conclude that—for purposes of this case—Section 20 provides any broader protections to Plaintiffs than the Second Amendment.

The remaining provisions of § 20, which entitle the Plaintiffs to "keep and bear arms for the defense of self, family, home and State," are similar in purpose to the rights protected by the Second Amendment. *C.f. District of Columbia v. Heller*, 554 U.S. 570, 577 (2008) (noting that reference to militia in prefatory clause does not limit right to bear arms to military service). Section 20 was adopted in 1987, before the U.S. Supreme Court had held the Second Amendment applicable to the states in *McDonald*. It is therefore reasonable to conclude that the purpose of Section 20 was to ensure protections similar to those of the Second Amendment with regard to state and municipal governments. The District Court reliance on Second Amendment jurisprudence is, consequently, appropriate.

Further, regardless of whether § 20 of the Delaware Constitution provides broader protections than the Second Amendment, Plaintiffs provide no support for their assertion that the breadth of § 20 requires application of strict scrutiny. It is the nature and history of the right asserted, not its breadth, that dictates the level of scrutiny applied. *See*, *e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 118-19 (1992) (remarking that it is the existence of a fundamental right that triggers strict scrutiny). Given the fact that WHA is acting in the role of a landlord, responsible for reasonable regulation of common areas open to all tenants, and over which no individual has exclusive dominion, its actions should be reviewed under intermediate scrutiny standards. *See* Section III.A.2. *infra*. Consequently, the District Court's analysis, which gave careful consideration to the language of Section 20 and jurisprudence construing similar provisions of the Second Amendment, should be affirmed.

### 2. Intermediate Scrutiny Is Appropriate Under Established Delaware Law and the Facts of This Case

Plaintiffs assert that the District Court should have applied strict scrutiny, relying on a statement in *Turnbull v. Fink* that intermediate scrutiny is "intended primarily for cases involving classifications based upon gender or illegitimacy." 668 A.2d 1370, 1379 (Del. 1995). Plaintiffs fail to mention, however, that the Court in *Turnbull* was discussing a challenge made under the U.S. Constitution, and citing to the U.S. Supreme Court's decision in *Orr v. Orr*, 440 U.S. 268

(1979).  It was not articulating principles particular to Delaware law.

Notwithstanding the Supreme Court's proclamation regarding gender and

illegitimacy, the Third Circuit went on to find that intermediate scrutiny was

appropriate in reviewing Second Amendment cases.  *U.S. v. Marzzarella*, 614 F.3d

85, 96 (3d Cir. 2010); *see also Peruta v. County of San Diego*, 758 F. Supp. 2d

1106, 1116 (S.D. Cal. 2010) (citing cases and noting that "[t]o date, a majority of

cases citing to *McDonald* and employing some form of heightened scrutiny . . .

have employed intermediate scrutiny.").  The Delaware Supreme Court's

comments in *Turnbull* are not, therefore, indicative of any difference between state

and federal law with regard to constitutional standards of scrutiny.  Indeed,

Plaintiffs identify no case law addressing the application of intermediate scrutiny

under Delaware law, or indicating that the Delaware Supreme Court would break

from existing Second Amendment precedent.

In the absence of any Delaware law to the contrary, it is reasonable to

believe that the Delaware Supreme Court would look to federal precedent for

guidance.  *See*, *e.g.*, *Thompson v. Dover Downs, Inc.*, 887 A.2d 458, 461, 465 (Del.

2005) (noting that where state and federal statutes are "substantially the same,"

reliance on federal precedent is proper).  State and federal provisions need not be

"mirror images," as Plaintiffs contend, for the Delaware Supreme Court to look to

federal precedent for guidance.  *Id.*  As noted above, the Delaware Constitution

and the Second Amendment provide the same rights in all respects material to this case. In such cases, Delaware courts have acknowledged that they willingly look to federal case law in the absence of Delaware precedent. *See*, *e.g.*, *Sanders v. State*, 585 A.2d 117, 144 (Del. 1990) (concluding that, in the absence of Delaware precedent and because "the core concern of Article I, Section 11 and the Eighth Amendment is the same," the Court's "interpretation of Article I, Section 11 has been, and should be, guided by the same general principles that have guided the Supreme Court's interpretation of the Eighth Amendment").

Plaintiffs' unsupported declaration that Section 20 is "far more extensive" than the Second Amendment does not provide sufficient grounds to disregard federal case law on this issue. Op. Br. at 33. Nor does the Delaware case law cited by Plaintiffs require that this Court disregard federal jurisprudence in construing Section 20. Instead, it requires that this Court act with deliberation in determining whether state and federal rights are similar, and then apply persuasive precedent appropriately. *Dorsey v. State*, 761 A.2d 807, 814 (Del. 2000) (holding that "Delaware judges cannot faithfully discharge the responsibilities of their office by simply holding that the Declaration of Rights in Article I of the Delaware Constitution is necessarily in 'lock step' with the United States Supreme Court's construction of the federal Bill of Rights" and rejecting the State's request for the Court to overrule established state law in favor of federal construction). Those

cases rejecting federal guidance are distinguishable from the case at bar because they address constitutional provisions for which the Delaware Supreme Court has clearly articulated divergences from federal law. *Id.* at 817 (noting "that the history of the search and seizure provisions in the Delaware Constitution reflected different and broader protections than those guaranteed by the Fourth Amendment"); *Jones v. State*, 745 A.2d 856, 863-64 (Del. 1999) (construing the same provision); *State v. Mitchell*, No. IK00-10-0349, 2001 Del. Super. LEXIS 498, at *5 (Del. Super. Ct. Nov. 27, 2001) (same).

These cases do not support Plaintiffs' contention that "Section 20 should be read in a manner consistent with Delaware's tradition of robustly interpreting state constitutional rights as superseding the often less protective federal jurisprudence."[2] Op. Br. at 40-41. Instead, they indicate that Delaware has developed a significant body of case law construing the state constitutional analogue to the Fourth Amendment, which extends boarder rights to Delaware citizens than the Fourth Amendment. Plaintiffs have not pointed to similar treatment of other provisions of the Constitution of the State of Delaware. By contrast, when faced with novel issues of constitutional law and similar

---

[2] Plaintiffs' extensive discussion of *Griffin v. State*, 47 A.3d 478 (2012) is puzzling, as that case does not diverge from established Second Amendment case law such that it would require a broader reading of Section 20. Indeed, it does not even mention the Second Amendment.

constitutional provisions, the Delaware Supreme Court has willingly accepted guidance from federal precedent. *Sanders*, 585 A.2d at 144.

Plaintiffs summary assertion that, "even under the federal standards, the District Court should have applied strict scrutiny to Plaintiffs' state-law claims" is similarly unavailing. Op. Br. at 36. This Court's holding in *U.S. v. Marzzarella* indicates that an intermediate standard of means-end scrutiny is appropriate in reviewing restrictions upon the right to bear arms. 614 F.3d at 96-97. Plaintiffs provide no authority for their contention to the contrary, and it should therefore be rejected.

### B. The District Court Appropriately Applied Intermediate Scrutiny to Its Review of Plaintiffs' State Constitutional Claim

For the reasons discussed above, the District Court properly concluded that Plaintiffs' Article I, § 20 challenge was subject to intermediate scrutiny. Even assuming, however, that strict scrutiny was appropriate, the Revised Policy survives because it is narrowly tailored and WHA has a compelling interest in the safety of its residents.[3] Plaintiffs' argument to the contrary fails to acknowledge that their right to bear arms must necessarily be diminished in the common areas, where other residents have countervailing rights to safe enjoyment and to be free from the presence and use of firearms.

---

[3] Plaintiffs acknowledge that WHA has a compelling interest in the safety of its residents. Op. Br. at 45.

### 1. The Revised Policy Survives Strict Scrutiny Because It Is a Narrowly Tailored Response to WHA's Compelling Interest in Its Residents' Safety

The right to keep and bear arms, as most thoroughly defined in *Heller*, is much narrower than Plaintiffs' assert.  First, the Supreme Court only addressed the possession of firearms in the home, nowhere else.  *Heller*, 554 U.S. at 635.  The Supreme Court specifically held that the District of Columbia "must permit [Heller] to register his handgun and must issue him a license to carry it **in the home**."  *Id.* (emphasis added).  The Court stated nothing about Heller's right to carry a firearm in public spaces.  In fact, the Court expressly acknowledged the limited nature of its holding, writing that "whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.*  Therefore, *Heller* only establishes a right to bear arms in one's home, not in common areas of a building shared with other residents.

Furthermore, even the limited right defined by the Court in *Heller* may be circumscribed by government regulation.  *Id.* at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited. . . . [T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"); *see also Griffin*, 47 A.3d at 491 (noting that the state's interest in public safety may outweigh the individual right to bear arms **even in the home**).

There is a well-established right on the part of governments to restrict the use or possession of firearms on government property.  *See*, *e.g.*, 18 U.S.C. § 922(q)(2)(A) (prohibiting possession of firearms in school zones); 39 C.F.R. § 232.1(l) (prohibiting possession of firearms on postal property); 11 *Del. C.* § 1256 (prohibiting deadly weapons in a detention facility); New Castle County, Del., Code § 24.01.014 (prohibiting possession or discharge of firearms in county parks); Dover, Del., Code § 70-2 (requiring a license for possession or use of a firearm).  As the *Heller* Court noted, "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  554 U.S. at 626-27.

The government also enjoys broader discretion where it is acting as a landlord rather than as a legislative body.  *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992) ("Where the government is acting as a proprietor, managing its internal operations, rather than acting as lawmaker with the power to regulate or license, its action will not be subjected to the heightened review to which its actions as a lawmaker may be subject.").  Here, WHA acts in the capacity of a proprietor and landlord.  It must, therefore, be granted greater latitude in regulating the possession and use of firearms on its property than would a governmental entity operating in a legislative capacity, seeking to limit gun rights generally.  *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for*

*Self-Defense*, 56 U.C.L.A. L. Rev. 1443, 1473-75 (2009) ("there is both precedent and reason for allowing the government acting as proprietor extra power to restrict the exercise of many constitutional rights on its property").

Plaintiffs attempt to circumvent the limiting language of *Heller*, and the tradition of reasonable restrictions on the possession of firearms in public spaces, by asserting that the common areas are part of Plaintiffs' hearth and home. This is a factual conclusion that was rejected by the District Court. (A17-18.) *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 441 (3d Cir. 2001) ("we review [the district court's] factual conclusions for clear error").

Plaintiffs' reliance on the Delaware Supreme Court's decision in *Griffin* is unavailing. The Court's analysis of where one "lives" related to a traditional home, and has no application to the common areas at issue in this matter. 47 A.3d 487, 489 (Del. 2012). In fact, the Court's decision in *Griffin* supports the position adopted by the District Court—there is a difference between the extent of an individual's constitutional rights inside and outside of the home. *Compare Griffin*, 47 A.3d at 491 (finding a constitutional right to carry a concealed deadly weapon in the home) *with Smith v. State*, 882 A.2d 762 (Del. 2005) (holding that Article I, § 20 does not create a right to carry concealed). The Delaware Supreme Court's holding in *Griffin* is further consistent with the public-private distinction made by

the U.S. Supreme Court in *Heller*. 554 U.S. at 628 (2008) (noting that the right to self-defense is "most acute" in the home).

What Plaintiffs fail to grasp is that their rights under Article I, § 20 do not supersede the rights of others in common areas. While Plaintiffs have a constitutional right to possess weapons, it **must be balanced** against the rights of other tenants to use the common areas safely and without fear of injury due to the presence of weapons. WHA properties include various community spaces such as daycare facilities, libraries, and community rooms that play host to many of WHA's most vulnerable residents: the elderly and children. (A370-73.) Common areas are not tantamount to a tenant's residential unit. The mere fact that tenants may use some common areas, such as laundry facilities, to conduct activities that others conduct inside the home does not render them "hearth and home." Millions of Americans collect their mail in post offices or do their laundry in laundromats. This reality does not render those spaces, which are owned and operated by third parties and open to the public, part of the user's hearth and home and beyond the bounds of regulation.

Recognizing the hybrid nature of its common areas, WHA was careful to craft a balanced policy that guarantees tenants' Article I, § 20 rights while also protecting other tenants' right to safe use and enjoyment. The Revised Policy permits the possession of firearms in a tenant's residence, but limits the tenant's

use of any firearm to circumstances of self-defense. In common areas, however, weapons may only be possessed to the extent they are being transported to and from a tenant's unit, and may only be used to the extent they are used in self-defense.

Thus, the Common Areas Provision is carefully tailored to permit Plaintiffs to exercise their constitutional rights, while simultaneously preserving the rights and safety of others. The solution proposed by Plaintiffs—that WHA should not be permitted to impose any lease restrictions more extensive than those imposed by law—sacrifices the rights of the many for those of the few. No WHA resident should be forced to be subject to a needlessly increased risk of harm from firearms in common areas. *U.S. v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) ("as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense").

### 2. The Revised Policy Survives Intermediate Scrutiny

For the same reasons that the Common Area Provision survives strict scrutiny, it must also survive intermediate scrutiny. Plaintiffs further challenge, for the first time, the Reasonable Cause Provision of the Revised Policy. Because both Plaintiffs expressly stated in their depositions that they did not oppose the Reasonable Cause Provision, Plaintiffs have no basis to now challenge it. (A383; A684.) Moreover, Plaintiffs did not contest the constitutionality of the Reasonable

Cause Provision in the cross-motions for summary judgment before the District Court. (A473-78; A480-81 (limiting discussion to the Common Area Provision); A612-13 (same).) Consequently, any challenge at this stage of the litigation is disingenuous and improper.

Assuming, for the sake of argument, that the Reasonable Cause Provision is a proper subject of appeal, Plaintiffs advance only one argument: that the Revised Policy cannot be shown to be narrowly tailored to WHA's compelling governmental interests absent statistical evidence. Op. Br. at 48-49 (citing *U.S. v. Skoien*, 587 F.3d 803 (7th Cir. 2009) (vacated by No. 08-3770, 2010 U.S. App. LEXIS 6584 (7th Cir. Feb. 22, 2010))). However, Plaintiffs' interpretation of the Seventh Circuit's decision in *Skoien* is contradicted by that Court's subsequent *en banc* opinion in the same case.

In that decision, the Court analogized the federal firearms statute at issue— banning possession of firearms by those convicted of domestic violence misdemeanors—to similar categorical limits on free speech. The Court held that hard evidence of a tie to public safety is not required to sustain a law against constitutional attack. *U.S. v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*); *see also Pagan v. Fruchey*, 492 F.3d 766, 773 (6th Cir. 2007) ("the Supreme Court has made quite clear that the evidentiary requirement the state must meet under intermediate scrutiny does not prescribe the manner by which evidence must be

gathered or the precise form that it must take"). The *Skoien en banc* decision is in line with the case law of other Circuit Courts of Appeals. For example, the Sixth Circuit noted, in the context of the First Amendment, that "the kind of evidence required to establish that a regulation furthers a substantial government interest depends on [the] character of the interest. A content-neutral regulation of conduct, such as the prohibition on public nudity or on the destruction of draft cards, requires no evidentiary showing at all that the threatened harm was real." *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 522 (6th Cir. 2009). Similarly, the First Circuit has held that empirical data is not required to survive intermediate scrutiny, and that "[a] state need not go beyond the demands of common sense to show that a statute promises directly to advance an identified governmental interest." *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 55 (1st Cir. 2008) (*citing Burson v. Freeman*, 504 U.S. 191, 211 (1992)).

The case at bar is one in which common sense will suffice: the presence of firearms increases the risk of firearms-related injuries, and their absence decreases that risk. *Masciandaro*, 638 F.3d at 473 ("loaded firearms are surely more dangerous than unloaded firearms"). Similarly, WHA must have some method of ensuring that its tenants are complying with the Revised Policy and the law. It is therefore reasonable for WHA to request to review a tenant's permits, where the tenant is required by law to possess such permits, and where WHA has good cause

to believe that the Policy or the law has been violated.  WHA carefully considered applicable law, public policy considerations, and public comment in tailoring the Revised Policy to its compelling interest in protecting public safety.  In light of these facts, the Revised Policy survives intermediate scrutiny.

### C.     The Revised Policy Does Not Predicate Receipt of Governmental Benefits upon Waiver of Fundamental Rights

Because the Revised Policy is constitutional, Plaintiffs' argument that they are being required to waive their fundamental rights must fail.  Compliance with reasonable restrictions upon the exercise of a right is not a waiver.

Plaintiffs cite only one analogous case in support of their position:  *Holt v. Richmond Redevelopment & Housing Authority*, 266 F. Supp. 397 (E.D. Va. 1966).[4]  In that case, the district court held that the plaintiff could not be required to forego his First Amendment rights in exchange for continued residency in public

---

[4] Plaintiffs' citation to *Hetherton v. Sears, Roebuck & Co.* is misguided.  652 F.2d 1152 (3d Cir. 1981).  They incorrectly assert that *Hetherton* addressed firearms restrictions upon leaseholders.  Op. Br. at 50.  In fact, the statute at issue applied to all Delaware residents, regardless of land ownership, requiring that prior to purchasing a firearm the purchaser must present two Delaware freeholders to identify him.  652 F.2d at 1154 n.2.  The holding in *Hetherton* has no bearing on WHA's actions in imposing reasonable restrictions upon the possession and use of firearms on WHA property, intended to balance Plaintiffs' right to bear arms against others' interest in personal safety.  The facts of *Hetherton* are further distinguishable because the statute at issue operated to bar the purchase of a firearm altogether.  The Revised Policy, by contrast, is a reasonable restriction upon the location of possession, which permits WHA tenants to bring firearms onto WHA property and use them in defense of self and home, while limiting use in common areas where third parties are most likely to be adversely affected.

housing facilities.  *Id.* at 401.  *Holt*, however, is clearly distinguishable because the tenant's threatened eviction in that case was the result of the landlord's retaliation for the exercise of First Amendment rights.  *Id.* at 400.  The defendant housing authority did not have an articulated policy regarding the speech at issue, and it never argued that it had a compelling interest in limiting the speech.

In contrast, the Revised Policy is clearly articulated, narrowly tailored, and neutrally applied to all WHA tenants.  Moreover, the Revised Policy imposes constitutional restrictions consistent with established Second Amendment case law.  As a result, the limits at issue in this case are more analogous to those addressed in *Pickering v. Board of Education* and its progeny, where the Supreme Court has repeatedly recognized an employer's right to limit the workplace speech of its employees.  391 U.S. 563, 568 (1968).  In addressing the argument raised by Plaintiffs, the *Pickering* Court wrote:

> The theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.  At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.  The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* at 568 (internal quotations omitted). *See also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (holding that a public employee's speech is unprotected by the First Amendment where he does not speak "as a citizen on a matter of public concern").

Here, WHA has established reasonable limits upon the exercise of Plaintiffs' Article I, § 20 rights. The Revised Policy is akin to a reasonable "time, place, and manner" restriction under the First Amendment. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) ("Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions."). Such restrictions are lawful, and do not constitute a waiver of the underlying rights.

## IV. The Doctrine of Preemption Is Inapplicable Because A Lease Is Not Legislative Conduct

Plaintiffs' efforts to overcome the District Court's ruling on the issue of preemption must fail for several reasons.

### A. Preemption Does Not Govern Lease-Making Procedures

As a threshold matter, the theory of preemption is inapplicable in this case. "Preemption refers to circumstances where the law of a superior sovereign takes precedence over the laws of a lesser sovereign." *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1121 (Del. 2009). By contrast, the issue in this case is

WHA's legal authority to impose lease provisions upon Plaintiffs—WHA has not engaged in any legislative activity.

The Revised Policy is, in essence, a contractual provision. WHA is unaware of—and Plaintiffs fail to cite—any precedent holding that the principles of preemption apply to the terms of a contract generally, or a lease specifically. The proper manner for challenging a contractual obligation is to challenge its legality under existing law, an approach that Plaintiffs have already adopted by challenging the Revised Rule under federal and state constitutional provisions.

The distinction between legislative and lease-making authority is emphasized by the express preemption statutes cited by Plaintiffs: both prohibit local governments from enacting laws, regulations, or ordinances governing firearms. 22 *Del. C.* § 111, 9 *Del. C.* § 330(c). WHA, by contrast, has not enacted, nor is it capable of enacting, laws, regulations, or ordinances. Instead, WHA has established a mere lease provision. Such conduct is not subject to the doctrine of preemption.

Nor is there any inconsistency resulting from WHA's being allowed to enact lease provisions when a municipal or county government may not regulate firearms—the nature of the conduct engaged in by WHA is completely distinguishable. There is no basis to conclude that the exercise of WHA's lease-making authority is in any way inconsistent with statutory regulation of firearms in

Delaware.  *C.f. Nite Moves Entm't, Inc. v. City of Boise*, 153 F. Supp. 2d 1198, 1207 (D. Idaho 2001) ("the doctrine of implied preemption does not go so far as to preclude local governments from targeting, through different means, the social ills that the legislature seeks to remedy").

**B.   Delaware Law Does Not Expressly Preempt WHA's Lease-Making Authority**

As the District Court correctly identified, in reliance on established Delaware law, WHA is a state agency.  *Williamson*, 228 A.2d at 787.  It is not a municipality or a county.  It is not, therefore, subject to express preemption under Delaware law.  22 *Del. C.* § 111; 9 *Del. C.* § 330(c).  (A25.)

Significantly, Plaintiffs do not cite any authority holding that WHA is a municipality or county.  While they cite Delaware authority holding that WHA is not a state agency, those decisions are limited to specific legal principles.  In *Skomorucha v. Wilmington Housing Authority*, for example, the question was limited to whether WHA is an alter ego of the state such that it is immune from suit under Section 1983.  504 F. Supp. 831, 836 (D. Del. 1980).  While the Court declared that "for purposes of suit under § 1983, the Housing Authority is not a state agency," that was not truly the issue before the Court, and the declaration is mere dicta.  *Id.*; *see also* Del. Op. Att'y Gen., No. 79-F013, 1979 Del. AG LEXIS 13, at *2 (defining "state agency" for limited purposes of application of 29 *Del. C.* § 2504, and finding that the state and WHA are not alter egos).

By contrast, the proposition outlined in *Williamson* reflects the state of the law generally—WHA is a state agency and not a municipal corporation. 228 A.2d at 787. The Court's holding is clearly articulated and well-reasoned. Plaintiffs' brief asks this Court to directly contravene the *Williamson* holding by concluding that WHA is a municipal corporation. Op. Br. at 57. Such a request exceeds this Court's authority, and conflicts with Plaintiffs' acknowledgement, in their Second Amended Complaint, that WHA is a state agency. (A336 ¶ 16; A338, ¶ 28 (citing *Williamson*).)

Plaintiffs' arguments in reliance on foreign law are strained. The classification of administrative agencies as municipalities or counties is an issue of state law, and the holdings in Maine and Texas are not relevant. Moreover, neither of the decisions cited holds that a housing agency is a **municipality** or a **county**, such that WHA would be subject to the express preemption statutes cited. *Doe v. Portland Hous. Auth.*, 656 A.2d 1200, 1204 (Me. 1995) (holding that the Portland Housing Authority is a political subdivision); Tx. Op. Att'y Gen., No. DM-71, 1991 Tex. AG LEXIS 87, at *3 (Dec. 31, 1991) (finding that municipal housing authorities are divisions of a municipality and expressly acknowledging law to the contrary in other states).

### C. Delaware Law Does Not Reflect the General Assembly's Intent to Impliedly Preempt WHA's Lease-Making Authority

In the absence of express preemption, Delaware recognizes a strong presumption against implied preemption. *Lacy v. G.D. Searle & Co.*, No. 83C-SE-123, 1988 Del. Super. LEXIS 205, at *12 (Del. Super. Ct. June 22, 1988). "In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict." *Cantinca v. Fontana*, 884 A.2d 468, 473 (Del. 2005). An entity's actions will only be considered in conflict, and therefore impliedly preempted, where they "hinder the objectives of the state statute." *Id.*

WHA's actions in effecting the Revised Policy do not conflict with the State's regulation of firearms. The provisions cited by Plaintiffs in support of implied preemption fall into two categories: professional regulations governing firearms dealers (Title 24), and criminal provisions (Title 11). Neither has any relation to WHA's authority to impose lease provisions. Nor is the effect of state legislation hindered by WHA's efforts to impose reasonable restrictions upon the possession and use of firearms by its tenants. *C.f. Hayward v. Gaston*, 542 A.2d 760, 767 (Del. 1988) (holding that county zoning ordinance, limiting location of residential treatment centers, did not conflict with state law authorizing creation of the centers). Consequently, there is no basis on which to conclude that the General Assembly intended to preempt WHA's lease-making authority by passing laws

located in far-flung portions of the Delaware Code unrelated to public housing. *See*, *e.g.*, *Cantinca*, 844 A.2d at 474 ("concurrent regulation of the same subject matter, without more, does not create a preemption justifying conflict").

## V.     WHA Acted Within the Bounds of Its Authority Under State and Federal Law in Establishing the Revised Policy

Finally, Plaintiffs argue that WHA has exceeded the scope of its authority under 31 *Del. C.* § 4301, *et seq.*, in establishing the Revised Policy.  Chapter 43 does not provide any private right of action against WHA, beyond those that exist at common law.  Nor do Plaintiffs assert any basis for their cause of action for "exceeding the scope of authority."  *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1064 (Del. 1986) (applying a four-part test to determine whether a private remedy may be inferred from a statute).

Even if such a claim existed, Plaintiffs' allegations are baseless. The scope of WHA's authority is defined by 31 *Del. C.* § 4308, which provides that WHA shall have "**all the powers necessary or convenient** to carry out and effectuate the purposes and provisions of this chapter."  *Id.* at § 4308(a) (emphasis added). The Delaware Supreme Court has further stated that "extensive powers are conferred upon" a state housing authority under Chapter 43.  *Williamson*, 228 A.2d at 786; *see also State v. Wilmington Hous. Auth.*, No. N92-02-1177, 1993 Del. Super. LEXIS 43, at *5 (Del. Super. Ct. Feb. 10, 1993) (describing "broad terms in

§ 4308"). Thus, it is clear that WHA possess the authority to establish the Revised Policy, which directly relates to its duties to administer public housing projects.

Plaintiffs' argument to the contrary is unnecessarily literal. It is unrealistic to expect that the Delaware General Assembly would outline each and every power that WHA possesses with regard to the regulation and administration of public housing. Instead, WHA was granted broad discretion to take those steps necessary to "lease or rent . . . housing or other accommodations," and, in so doing, to "promote and protect the health, safety, morals and welfare of the public." 31 *Del. C.* §§ 4308, 4302. WHA did just that when, in keeping with the Supreme Court's decisions in *Heller* and *McDonald*, and following public comment on proposed revisions to its firearms policy, it established the Revised Policy. WHA has acted, at all times, with the utmost care and consideration for **all** of its residents— balancing the conflicting rights of those residents who want to bear arms against those who wish to be free from the threat of gun violence.

## CONCLUSION

For the reasons set forth in the brief above, Appellees respectfully request that the Court affirm the District Court's award of summary judgment.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*

Barry M. Willoughby, Esquire (DE Bar No. 1016)
Lauren E.M. Russell, Esquire (DE Bar No. 5366)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail: bwilloughby@ycst.com

*Attorneys for Appellees Wilmington Housing Authority and Frederick S. Purnell, Sr.*

Dated: November 26, 2012

# CERTIFICATE OF COMPLIANCE

I, Barry M. Willoughby, Esquire hereby certify as follows:

1.      The undersigned counsel are members in good standing of the Bar of this Court.

2.      This Brief complies with the requirements of Fed. R. App. P. 32(a), because it contains 9,984 words.  This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14 point font.

3.      On November 26, 2012, a true and correct copy of Appellees' Answering Brief and this Certificate of Compliance was electronically filed and served via CM/ECF upon the following counsel:

> Francis G.X. Pileggi, Esquire
> Penelope B. O'Connell, Esquire
> Eckert Seamans Cherin & Mellott, LLC
> 300 Delaware Avenue, Suite 1210
> Wilmington, DE 19801

4.      The text of the electronic Brief is identical to the text in the paper copies.

5.      On November 26, 2012, ten paper copies of the Brief were sent by Federal Express to the Clerk of the Court.

6.     The electronic file containing the Brief was scanned for viruses and no virus was detected.  The virus detection program used was Microsoft Security Essentials.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*
Barry M. Willoughby, Esquire (I.D. No. 1016)
Lauren E. Moak, Esquire (I.D. No. 5366)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail: bwilloughby@ycst.com
Attorneys for Appellees

Dated:  November 26, 2012