No. 12-3433

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DOE, *et al.*,
*Plaintiffs-Appellants*,

v.

WILMINGTON HOUSING AUTHORITY, *et al.*,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Delaware,
No. 1:10-cv-00473 (Hon. Leonard P. Stark)

## REPLY BRIEF FOR APPELLANTS JANE DOE AND CHARLES BOONE

Francis G.X. Pileggi
Penelope O'Connell
Jill Agro
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667

*Attorneys for Appellants Jane Doe and Charles Boone*

Dated: December 17, 2012

# Table of Contents

Page

I.   CERTIFICATION TO THE DELAWARE SUPREME COURT OR
     REMAND AND DISMISSAL OF THE STATE-LAW CLAIMS IS
     APPROPRIATE ................................................................................. 1

     A.   Certification is Proper Because the Issues Presented are Novel
          and Have the Requisite Urgency................................................. 1

     B.   If this Court Does Not Certify the State-Law Questions to the
          Delaware Supreme Court, Then Remand to the District Court
          with an Instruction to Dismiss is Proper.. .................................. 5

II.  ARTICLE I, § 20 IS NOT A "SUBSTANTIALLY SIMILAR"
     COUNTERPART TO THE SECOND AMENDMENT...................... 8

     A.   Delaware Courts Recognize Broader Protection for State
          Constitutional Guarantees. ........................................................ 9

     B.   The District Court Should Not Have Relied on Federal
          Precedent to Construe the Delaware Constitution. .................. 11

III. STRICT SCRUTINY IS REQUIRED BECAUSE THE WHA
     PROVISIONS INFRINGE ON RESIDENTS' RIGHT TO SELF-
     DEFENSE IN THE HOME............................................................... 13

     A.   Article I, § 20 Protections are Not Limited to the Home......... 14

     B.   The Right to Self-Defense is the Core of the Second
          Amendment.. ............................................................................. 16

     C.   The Infringement of Core Constitutional Rights Implicates
          Strict Scrutiny.......................................................................... 17

          1.   The Common Area Provision is Not Narrowly Tailored.
               ....................................................................................... 20

          2.   The "Reasonable Regulation" Test is Not Applicable
               Where State Action Infringes on the Core Fundamental
               Right to Self-Defense...................................................... 24

ii

IV.    GOVERNMENT PROPRIETORS DO NOT HAVE CARTE BLANCHE TO INFRINGE ON CONSTITUTIONALLY GUARANTEED FUNDAMENTAL RIGHTS................................... 26

V.    WHA'S POLICIES ARE PREEMPTED BY STATE LAW............. 27

VI.    CONCLUSION .................................................................. 30

# Table of Authorities

**CASES**

*Achtermann v. Bussard*,
2007 WL 1152720 (Del. Super. Apr. 10, 2007)...............................1-2

*Baynard v. Delaware*, 518 A.2d 682 (Del. 1986)........................ 25

*Boyle v. Christina Sch. Dist. Bd. of Educ.*,
2010 WL 60126 (Del. Super. Jan. 8, 2010)......................... 2

*Bryan v. Delaware*, 571 A.2d 170 (Del. 1990)......................... 10-11

*Claudio v. Delaware,* 585 A.2d 1278 (Del. 1991) ...................... 10

*Combs v. Homer-Ctr. Sch. Dist.*,
540 F.3d 231 (3d Cir. 2008) ............................................6-7

*Contractors Ass'n of E. Pa. v. City of Phila.*,
6 F.3d 990 (3d Cir. 1993) ........................................... 21, 22

*Daniel v. City of Tampa*, 38 F.3d 546 (11th Cir. 1994) .............. 27

*Delaware v. Holden*,
54 A.3d 1123 (Del. Super. Dec. 14, 2010)........................8-9

*Delaware v. Ranken*, 25 A.3d 845 (Del. Super. 2010)................... 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...........*passim*

*Doe v. Wilmington Hous. Auth.*,
2012 WL 3065285 (D. Del. July 27, 2012)................................*passim*

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ............................. 17, 18

*Griffin v. Delaware*, 47 A.3d 487 (Del. 2012) .......................25-26

*Hammond v. Delaware,* 569 A.2d 81 (Del. 1989)........................ 10

*Int'l Soc'y for Krishna Consciousness v. Lee*,
    505 U.S. 672 (1992) ............................................................. 26

*Jones v. Delaware*, 745 A.2d 856 (Del. 1999) ............................ 10

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010) .......................................... 5, 11, 13

*Moore v. Madigan*, --- F.3d ----,
    2012 WL 6156062 (7th Cir. Dec. 11, 2012) .............................. *passim*

*NAACP v. Button*, 371 U.S. 415 (1963) ......................................... 4

*Pagan v. Fruchey*, 492 F.3d 766 (6th Cir. 2007) ......................... 22

*Richmond Tenants Org., Inc. v. Richmond Redev. & Hous. Auth.*,
    751 F. Supp. 1204 (E.D. Va. 1990) ..................................... 24

*San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) ............... 4

*Sanders v. Delaware*, 585 A.2d 117 (Del. 1990) ..................... 9, 11

*Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*,
    730 F.2d 910 (3d Cir. 1984) ........................................... 7, 8

*Thompson v. Ashe*, 250 F.3d 399 (6th Cir. 2001) ...................... 27

*Turnbull v. Fink*,
    1994 WL 89641 (Del. Super. Feb. 17, 1994) ..................... 18

*Turnbull v. Fink*, 668 A.2d 1370 (Del. 1995) ................... 18-19, 20

*United States v. Kokinda*, 497 U.S. 720 (U.S. 1990) ............... 27

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ............ 19, 20

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ............ 16

*United States v. Rybar*, 103 F.3d 273 (3d Cir. 1996) ................... 12

*United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009) ................................. 21

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ................................ 21

*United States v. Tot*, 131 F.2d 261 (3d Cir. 1942)........................................ 12

*Van Arsdall v. Delaware,* 524 A.2d 3 (Del. 1987) ...................................... 10

*Williamson v. New Castle Cnty.*,
    2003 WL 549082 (Del. Ch. Feb. 20, 2003)................................. 18-19

*Wilmington Hous. Auth. v. Williamson*,
    228 A.2d 782 (Del. 1967)................................................... 28

*Wisconsin v. Hamdan*, 665 N.W.2d 785 (Wis. 2002) ................................ 25

*Woollard v. Sheridan*, 863 F. Supp. 2d 462 (D. Md. 2012) ........................ 16


**STATUTES**
28 U.S.C. § 1367...................................................................... 5, 7

42 U.S.C. § 1983......................................................................... 4


**OTHER AUTHORITIES**
Cong. Globe, 42nd Cong., 2d Sess. (1872) .................................... 4

David B. Kopel, *Limited Preemption of Firearms Laws: A Good Step for
    Civil Rights*, Independence Instit. Issue Backgrounder, No. 2003-B,
    Mar. 11, 2003, available at http://www.davekopel.org/2A/IB/
    Limited-Preemption.htm .................................................. 29

David B. Kopel, *The Right to Arms in the Living Constitution*,
    2010 Cardozo L. Rev. De Novo 99 (2010) .................................28-29

Del. Const., Preamble ................................................................ 15

Del. Const., art. I, § 7................................................................ 10

Del. Const., art. I, § 20........................................................*passim*

Jamie L. Wershbale, *The Second Amendment Under a Governmental Landlord: Is There a Right to Keep and Bear Legal Firearms in Public Housing?*, 84 St. John's L. Rev. 995 (2010) .......................... 29

Philip J. Cook, Jens Ludwig, & Adam M. Samaha, *Gun Control After* Heller: *Threats and Sideshows from a Social Welfare Perspective,* 56 U.C.L.A. L. REV. 1041 (2009)..................................................... 23

Robert Hahn, *et al., Firearms Laws and the Reduction of Violence: A Systematic Review,* 28 AM. J. PREV. MED. 40 (2005) ................... 23

U.S. Const. amend II.............................................................................. *passim*

U.S. Dept. of Hous. & Urban Dev., *In the Crossfire: The Impact of Gun Violence on Public Housing Communities* (1999) ....................... 21, 22

# I. CERTIFICATION TO THE DELAWARE SUPREME COURT OR REMAND AND DISMISSAL OF THE STATE-LAW CLAIMS IS APPROPRIATE

WHA's arguments in some respects do not acknowledge the nature of the appellate process. If this Court were to certify the questions enumerated in Residents' Opening Brief to the Delaware Supreme Court, and the Delaware Supreme Court decides the state-law issues, that is no more a "second bite at the apple" than if this Court were to decide the issues or if this Court were to remand to the District Court to decide the issues.

## A. Certification is Proper Because the Issues Presented are Novel and Have the Requisite Urgency.

WHA argues that the three questions of state law that Residents ask this Court to certify to the Delaware Supreme Court do not have the requisite novelty required by Delaware Supreme Court Rule 41. (Answering Br. at 13, 14).

WHA cites to *Achtermann v. Bussard*, where the Delaware Superior Court denied certification of an interlocutory appeal, to support its contention. 2007 WL 1152720, at *1 (Del. Super. Apr. 10, 2007) (finding that issues presented were firmly grounded in principles of negligence law). *Achtermann* is distinguishable because the movant's "proffered legal basis for certification" was a "generalized statement" that the issues before the court related to an

1

original question of law. In the present case, both parties and *amicus curiae*, The Brady Center, agree that the state-law issues presented in this appeal are novel, as they have not been decided by the Delaware Supreme Court.

Further, in *Boyle v. Christina School District Board of Education*, another case cited by WHA, the Delaware Superior Court found that factual disputes relating to a contract interpretation did not warrant certification based on an alleged original question of law. 2010 WL 60126, at * 3 (Del. Super. Jan. 8, 2010). Such is not the case here, where there are no settled principles of law authorizing WHA to legislate restrictions affecting a Delaware citizen's fundamental and natural right to protect herself in her government-subsidized residential building.

WHA states in its own Answering Brief: "There is no precedent comparing addressing [sic] the breadth of the rights protected by Section 20" of the Delaware Constitution.[1] (Answering Br. at 23).

_____

[1]     WHA argues contradictory positions within its Answering Brief on the issue of whether the issues presented on appeal (and for certification to the Delaware Supreme Court) are novel legal issues. (Answering Br. at 14, 15, 25). For instance, WHA initially asserts that the issues presented for certification "merely require the application of established legal principles to novel facts." (Answering Br. at 14). But later in its brief, WHA describes, inconsistently: the "absence of any Delaware law" on the issue of whether the Delaware Supreme Court would look to federal precedent for guidance on the appropriate level of scrutiny to apply. (Answering Br. at 25). WHA

That statement alone evidences WHA's agreement that the issues presented concerning the protections afforded by the Delaware Constitution are unsettled. The District Court could not resolve these state-law issues based solely on federal precedent.

The Delaware Supreme Court has not specifically addressed the issue presented here: whether the Delaware Constitution provides greater rights to its citizens to bear arms than the federal constitution—a "critical issue" presented to the District Court. A24-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 21).

While it is true that Residents did not raise the issue of certification before the District Court, it was not necessary for Residents to do so. Residents appropriately raise at this time the issue of certification on appeal based on the District Court's failure to apply state law in granting WHA's motion for summary judgment.[2]

---

then states, irrelevantly, that those established legal principles of state law are guided by "**persuasive** precedent developed by **federal courts** . . . ." (Answering Br. at 15).

[2]     WHA asserts that Residents failed to contest the constitutionality of WHA's Reasonable Cause Provision in the District Court and should not be permitted to challenge it now. (Answering Br. at 33-34). Not only did Residents raise the issue below, but the District Court issued a decision on the constitutionality of the Reasonable Cause Provision under the Delaware Constitution. A24 (*Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, * 21 (D. Del. July 27, 2012).

As for urgency, Residents posit that this request for certification is timely and necessary in order for this appeal to be properly heard. Not only is this Court's time precious, but so too is the interest of the citizens of Delaware, living in publicly-subsidized housing, whose fundamental right to self-defense rests upon the outcome of this appeal.[3]

That right to self-defense, which the United States Supreme Court recently ruled was at the core of the right to bear arms, is so fundamental

---

[3] WHA attributes this litigation to the National Rifle Association ("NRA") based on thin reeds such as a letter of concern by an NRA attorney and the role of an investigative reporter who happens to be an NRA member in communicating with Residents. (Answering Br. at 4-5). The District Court was not swayed by these assertions when WHA advanced them to challenge Residents' standing in this case. A443-A445. And these assertions are even more frivolous now because Residents' standing has not been presented as an issue on appeal.

But even if the innuendo was accurate, it would be irrelevant. The Supreme Court has recognized that public interest organizations may provide representation to others because "the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." *NAACP v. Button*, 371 U.S. 415, 429 (1963).

"Some litigation seeks to advance political or other ideas; litigation by the NAACP seeking to eliminate public school segregation is an example." *San Filippo v. Bongiovanni*, 30 F.3d 424, 440-41 n.20 (3d Cir. 1994) (adding that "communications designed to acquaint individuals with their legal rights are within the scope of the First Amendment") (citation omitted). In debate on the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, a member of Congress observed that the Ku Klux Klan targeted the African American who would "tell his fellow blacks of their legal rights, as for instance their right to carry arms and defend their persons and homes." Cong. Globe, 42nd Cong., 2d Sess., 3589 (1872) (remarks of Senator Daniel Pratt). It can hardly be suggested with justification here that counsel did anything wrong in assisting his clients regarding their constitutional rights of self-defense.

that it is one of the few rights to enjoy the exalted status of being a **natural**

right that the United States Constitution did not grant—rather, it **recognized**

a pre-existing natural right. *See District of Columbia v. Heller*, 554 U.S. 570,

585 (2008); *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3063-64 (2010).

**B.** **If this Court Does Not Certify the State-Law Questions to the Delaware Supreme Court, Then Remand to the District Court with an Instruction to Dismiss is Proper.**

Although the District Court exercised supplemental jurisdiction over

the state-law claims raised in this matter, it has since dismissed the federal

claims—which initially empowered it to assert supplemental jurisdiction,

and which are not being appealed. In this circumstance, if this case is not

certified to the Delaware Supreme Court, the state-law claims should be

remanded to the District Court with an instruction to dismiss the state-law

claims without prejudice.

The United States Code provides that where a district court has

original jurisdiction of a civil action, it also has supplemental jurisdiction

over related claims. 28 U.S.C. § 1367(a). However, § 1367(c) provides in

part that a district court "may decline to exercise supplemental jurisdiction

over a claim" if "the claim raises a novel or complex issue of State law" or

"**the district court has dismissed all claims over which it has original**

**jurisdiction** . . . ." (emphasis added). Until the District Court dismissed the

federal claims, Residents did not have this argument that Residents now present.

In this case, the District Court disposed of the federal claims over which it had original jurisdiction, and incorrectly applied federal law to decide the state-law claims over which it had supplemental jurisdiction. A23-A25 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 19 - * 22). Those state-law claims, however, involve novel and complex issues of Delaware law that should be decided by the Delaware courts as a matter of first impression.

Arguing that Residents waived any objection to supplemental jurisdiction and that the District Court's exercise of supplemental jurisdiction was proper, WHA now claims: "All of the cases cited by Residents in support of dismissal are inapposite. None of the cases involved a situation such as this, in which the Appellants sought dismissal after adverse rulings . . . ." (Answering Br. at 19-22). To the contrary, these cases involved the same situation presented in this appeal.

The relief sought in this case is fully consistent with *Combs v. Homer-Center School District,* 540 F.3d 231 (3d Cir. 2008) (*per curiam*), *cert. denied*, 555 U.S. 1138 (2009). The district court in that case granted summary judgment for defendants on both federal and state-law claims.

Rather than object to the district court deciding the state-law claims, plaintiffs pressed both claims in the district court[4] as well as in the court of appeals. *Combs*, 540 F.3d at 252-53. After affirming the district court's decision on the federal claims, the court of appeals said that the state claim was "an issue of first impression and a matter of Pennsylvania law." *Id*. at 253. Rather than decide the state-law issue, or suggest that it must decide that claim because plaintiffs did not object to the district court's supplemental jurisdiction below, this Court, citing § 1367(c), held:

> Parents' only remaining claim involves the interpretation of a state statute on which there is no Pennsylvania precedent. Because all federal issues have been decided on summary judgment and since Parents' RFPA claim raises a novel and potentially complex issue of State law, we will decline to exercise supplemental jurisdiction over Parents' pendent state law claim.

*Id*. at 254 (citing *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910 (3d Cir. 1984)). Accordingly, the Court "vacate[d] the District Court's holding regarding the pendent RFPA [state-law] claim . . . ." *Id*.

---

[4]     *Combs v. Homer Ctr. Sch. Dist.,* 468 F. Supp. 2d 738, 740, 761-62 (W.D. Pa. 2006).

So, too, in *Shaffer*, plaintiffs did not object to the district court's initial exercise of supplemental jurisdiction over their state-law claims.[5] On appeal, this Court held that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'" In *Shaffer*, the parties were openly concerned about the time and resources already expended in litigating the state cause of action in federal court; however, this Court found those concerns "an insufficient reason to sustain the exercise of pendent jurisdiction," and added:

> Needless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. **Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.**

*Id*. at 913, 921 (citation omitted; emphasis added). The Court thus **"remand[ed] with directions to dismiss plaintiffs' pendent state claims without prejudice."** *Id*. (emphasis added).

## II.  ARTICLE I, § 20 IS NOT A "SUBSTANTIALLY SIMILAR" COUNTERPART TO THE SECOND AMENDMENT

Delaware courts generally interpret the state Bill of Rights more broadly than federal courts interpret the Federal Bill of Rights, and § 20 is

---

[5]     *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 570 F. Supp. 698 (W.D. Pa. 1983).

no exception to that jurisprudential methodology. *See, e.g., Delaware v. Holden*, 54 A.3d 1123, 1128 (Del. Super. Dec. 14, 2010) (acknowledging that "the Delaware Constitution affords greater protection than the United States Constitution" and compiling supportive Delaware authority).

A.   **Delaware Courts Recognize Broader Protection for State Constitutional Guarantees.**

Even where state and federal provisions are similar, Delaware is entitled to shape and interpret its own laws, and historically has relished in its sovereignty to afford greater rights and protections than provided by the Federal Constitution. *See Delaware v. Ranken*, 25 A.3d 845, 855 (Del. Super. 2010) (recognizing that "Delaware has a history of expanding and jealously guarding the rights of its citizens in different areas of constitutional law . . . ."); *see also Sanders v. Delaware*, 585 A.2d 117, 145-46 (Del. 1990) (acknowledging that Delaware's " judicial branch should not be foreclosed from interpreting our Constitution merely because the United States Supreme Court has interpreted similar provisions of the Federal Constitution").

According to WHA, Residents overemphasize the vast Delaware precedent interpreting its constitution to provide broader protections than the Fourth Amendment because they "have not pointed to similar treatment of other provisions of the Constitution of the State of Delaware." (Answering

Br. at 27). WHA simply has not done its homework; the Delaware courts have in no way limited their independence to interpretations of what is an unlawful search and seizure.

Indeed, in *Jones v. Delaware*, 745 A.2d 856, 863-64 (Del. 1999), the Delaware Supreme Court listed several examples of the Delaware Constitution granting individuals greater rights than those afforded by the United States Constitution:

> [T]he Delaware Constitution provides greater rights than the United States Constitution in the preservation of evidence used against a defendant [*Hammond v. Delaware,* 569 A.2d 81, 87 (Del. 1989)], the right of confrontation [*Van Arsdall v. Delaware,* 524 A.2d 3, 6–7 (Del. 1987)], the right to counsel [*Bryan v. State*, 571 A.2d 170, 176 (Del. 1990)], and the right to trial by jury [*Claudio v. State,* 585 A.2d 1278, 1289–1301 (Del. 1991)].

In one of those examples, *Bryan*, 571 A.2d at 176-77, while acknowledging that it had "not in the past construed Art. I, § 7 of the Delaware Constitution as affording defendants greater rights than the federal constitution," the Delaware Supreme Court departed from federal precedent on the issue of whether "events occurring outside the presence of a suspect have no bearing on his ability to knowingly, voluntarily and intelligently waive his right to counsel . . . ." *Id.* at 177. In addition, citing "independent State grounds," the Delaware Supreme Court diverged from the practice of interpreting Article I, § 7 in line with federal precedent, and held that the

Delaware Constitution provides broader protections than its federal counterpart. *Id.*

Indeed, in stark contrast to the *Sanders* case, no Delaware court has stated or even implied that § 20 and the Second Amendment are "essentially identical," or that they provide the same protections. Of course, a plain reading of the text of each provision reveals obvious and substantial differences.

### B. The District Court Should Not Have Relied on Federal Precedent to Construe the Delaware Constitution.

WHA also argues that the District Court's reliance on federal precedent was appropriate because "Section 20 was adopted in 1987, before the U.S. Supreme Court had held the Second Amendment applicable to the states,"[6] and "[i]t is therefore reasonable to conclude that the purpose of Section 20 was to ensure protections similar to those of the Second Amendment with regard to state and municipal governments." (Answering Br. at 23).

To the contrary, when Delaware adopted § 20 in 1987, federal precedent held that the Second Amendment did not even protect individual rights, much less a right to have arms for self-defense, hunting, and

---

[6]     *McDonald v. City of Chicago,* 130 S. Ct. 3020,  made the Second Amendment applicable to the states in 2010.

recreational use. *See United States v. Rybar*, 103 F.3d 273, 286 (3d Cir. 1996) (holding that the Second Amendment would protect possession of a firearm only for "militia-related activity"); *United States v. Tot*, 131 F.2d 261, 266 (3d Cir. 1942) (averring that the Second Amendment "was not adopted with individual rights in mind, but as a protection for the States in the maintenance of their militia organizations"). As history reveals, and cited cases confirm, Delaware has always protected the individual right to bear arms—both before and after the Second Amendment was made applicable to the states[7]—and Delaware's General Assembly could not have intended to incorporate federal case law into § 20.

However, the fact remains that there is no federal precedent on which the District Court could have relied in deciding the issue of whether the common areas of a residential building managed by a public housing authority are "hearth and home," or similar areas, such that those areas fall within the "core" of the Second Amendment's protections. A17 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 11) (holding that the common areas are not the "hearth and home").

---

[7]     It was not until 2008, in *Heller*, 554 U.S. at 599, that the U.S. Supreme Court held that the Second Amendment guarantees an individual right to keep and bear arms for self-defense, hunting, and other lawful activities. That was more than twenty years after § 20 was adopted. The District Court's reliance on federal case law that did not take the foregoing into consideration was error.

In short, the Delaware courts generally interpret the Delaware Bill of Rights more broadly than federal courts interpret the Federal Bill of Rights, and there is no reason to believe that the Delaware courts would deviate from that practice with regard to § 20. Accordingly, the District Court should not have relied on federal precedent to adjudicate a novel issue of state law.

## III. STRICT SCRUTINY IS REQUIRED BECAUSE THE WHA PROVISIONS INFRINGE ON RESIDENTS' RIGHT TO SELF-DEFENSE IN THE HOME

The District Court erred in rejecting Residents' argument that their claims should be analyzed using strict scrutiny, which is appropriate when a challenged provision regulates conduct within the "core" of the Second Amendment's protections, i.e., the "hearth and home." A17 (D.I. 114, *Doe v. Wilmington Hous. Auth.*, 2012 WL 3065285, at * 11); *see also Heller*, 554 U.S. at 634; *McDonald*, 130 S. Ct. at 3036.

While it has always been Residents' contention that the common areas of the residential building are a part of their residences and should therefore be considered their "hearth and home," the crux of Residents' fundamental right under § 20 is the right to **self-defense**—whether or not the common areas are considered part of their homes, because "the interest in self-protection is as great outside as inside the home." *Moore v. Madigan*, ---

F.3d ----, 2012 WL 6156062, at * 8 (7th Cir. Dec. 11, 2012) (Posner, J.)

(striking down Illinois' ban on carrying a gun as unconstitutional under the

Second Amendment).[8]

**A.    Article I, § 20 Protections are Not Limited to the Home.**

The U.S. Supreme Court's holding in *Heller*—that the rights provided

by the Second Amendment are "most acute" in the home—implies that those

rights are still acute (to a lesser degree) elsewhere. 554 U.S. at 679. *See also*

*Moore*, 2012 WL 6156062, at * 2 ("Both *Heller* and *McDonald* do say that

'the need for defense of self, family, and property is most acute' in the

home, but that doesn't mean it is not acute outside the home.") (citation

omitted). Indeed, the Seventh Circuit interprets *Heller* to mean that the

Second Amendment **"confers a right to bear arms for self-defense, which**

**is as important outside the home as inside."** *Moore*, 2012 WL 6156062, at

* 9 (emphasis added). *See also id.* at * 8 (criticizing the Second Circuit's

opinion in *Kachalsky v. County of Westchester*, WL 5907502, at *6 (2d Cir.

Nov. 27, 2012) for suggesting "that the Second Amendment should have

much greater scope inside the home than outside simply because other

provisions of the Constitution have been held to make that distinction.").

---

[8]    Notably, this recently issued opinion was not available when
Residents submitted their Opening Brief in this case.

Section 20 provides: "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." Del. Const. art. I, § 20. By its very terms, the right to "bear arms" is not limited to one's home in Delaware. *See Moore*, 2012 WL 6156062, at * 2 ("*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' Confrontations are not limited to the home.") (quoting *Heller*, 554 U.S. at 592). "While the defense of home would have that nexus, the defense of self, family, and state is certainly not limited to one's house." *Moore*, 2012 WL 6156062, at * 3. **"To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*."** *Id.* (emphasis added). *See also* Del. Const., Preamble ("all men have by nature the rights of . . . defending life and liberty, of acquiring and protecting reputation and property.").

While § 20 is not an absolute and unfettered right, by definition it extends to areas outside of the home. The recent Seventh Circuit decision in *Moore*, *supra*, underscores this core point. The need for self-defense may arise wherever a person happens to be, and the right of self-defense must

follow. *See United States v. Masciandaro*, 638 F.3d 458, 468 (4th Cir. 2011) (Niemeyer, J., concurring) ("If the Second Amendment right were confined to self-defense in the home, the Court would not have needed to express a reservation for 'sensitive places' outside of the home." )). *See also Woollard v. Sheridan*, 863 F. Supp. 2d 462, 470-71 (D. Md. 2012) (relying on *Heller* to hold "that the right to bear arms is not limited to the home").

Residents are entitled to the same rights as other Delaware citizens, i.e., to keep and bear arms consistent with the laws of Delaware and the United States. WHA has suggested no principled basis for limiting the constitutional rights of public housing residents in a manner not applicable to other citizens who are not dependent on the government for a place to live.

## B.     The Right to Self-Defense is the Core of the Second Amendment.

The core of the Second Amendment is the right of law-abiding citizens to bear firearms for their own protection: self-defense is the "*central component* of the right itself." *Heller*, 554 U.S. at 599 (original emphasis); *see also id.* at 628 ("the inherent right of self-defense has been central to the Second Amendment right"); *id.* at 630 ("core lawful purpose of self defense"). *See also Moore*, 2012 WL 6156062, at * 8 (holding that "the interest in self-protection is as great outside as inside the home").

The Brady Center's argument that: "The Delaware Constitution simply provides no basis for expanding that authority into a broad constitutional right to carry and use guns for *non-defensive* purposes on state-owned or managed public housing property," is irrelevant because Residents, of course, are asserting a right to carry firearms for *defensive* purposes within areas that are part of their residential spaces, even if outside the four walls of their apartments. (Brady Br. at 18) (emphasis added).

### C. The Infringement of Core Constitutional Rights Implicates Strict Scrutiny.

*Heller* forecloses the application of mere intermediate scrutiny to a regulation, such as the restriction in this case, that impinges upon law-abiding citizens' core constitutional right to self-defense. *Heller*, 554 U.S. at 689 (Breyer, J. dissenting) (the majority rejected Justice Breyer's proposed interest-balancing test, which is just another name for intermediate scrutiny). That is not to say that Residents' right to bear arms for self-defense is unfettered; however, a burden on that right cannot be easily justified.

In support of the District Court's holding, WHA cites *Foucha v. Louisiana*, 504 U.S. 71, 118-19 (1992), for the proposition that "the nature and history of the right asserted, not its breadth, [] dictates the level of scrutiny applied," and "that it is the existence of a fundamental right that triggers strict scrutiny." (Answering Br. at 24). However, both *Foucha* and

WHA's synopsis of *Foucha* contradict WHA's argument that intermediate scrutiny should apply, and instead support the application of strict scrutiny.[9] *See Turnbull v. Fink*, 668 A.2d 1370, 1379 (Del. 1995) (holding that "where the state action infringes upon a 'fundamental right' . . . , the more rigorous 'strict scrutiny' test will be applied").

WHA also criticizes Residents' reliance on *Turnbull*, one of the few Delaware cases discussing the appropriate standard of review to be applied when government action infringes on constitutionally protected fundamental rights. 668 A.2d at 1379. *Turnbull* involved a constitutional challenge under both the Delaware and Federal Constitutions, and required a discussion of the Equal Protection Clause of the Fourteenth Amendment. *Turnbull v. Fink*, 1994 WL 89641, at * 2 (Del. Super. Feb. 17, 1994). "[W]henever a governmental act is challenged under the Equal Protection Clause, the Court must first determine the level of scrutiny under which the act will be evaluated:" strict scrutiny, intermediate scrutiny, or rational basis.

---

[9]     Residents note that WHA cited the dissent in *Foucha* rather than the majority opinion delivered by the U.S. Supreme Court, which (as noted by the dissent) did not indicate (i) whether the right at issue in that case was fundamental or (ii) which level of scrutiny the Court was actually applying to that right. *Foucha*, 504 U.S. at 116 (dissent).

*Williamson v. New Castle Cnty.*, 2003 WL 549082, at * 2 (Del. Ch. Feb. 20, 2003); *see also Turnbull*, 668 A.2d at 1379.[10]

Nonetheless, WHA and The Brady Center repeatedly assert that intermediate scrutiny is the only level of scrutiny applicable to Second Amendment cases, and therefore, to § 20. (Answering Br. at 25, 28 (citing *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010); Brady Br. at 7-8). This characterization is inaccurate and overbroad. *Marzzarella* expressly recognized that the Second Amendment, like the First Amendment, "is susceptible to several standards of scrutiny . . . ." 614 F.3d at 96-97. Contrary to WHA's implication, *Marzzarella* does not stand for the position that intermediate scrutiny is always appropriate. Further, as explained, it is not clear whether Delaware will follow in lock-step with federal Second Amendment precedent, including *Marzzarella*, based on the broader rights granted by § 20 and Delaware's history of interpreting its state's own constitutional guarantees more broadly.

---

[10]    Despite an exhaustive search, Residents were unable to locate any case where a Delaware court employed the familiar federal levels of scrutiny to Delaware legislation challenged **only** under the Delaware Constitution (i.e., no corresponding Federal Constitution claims that require Equal Protection analysis). Accordingly, it is unclear whether the Delaware courts employ those Equal Protection levels of scrutiny if the Equal Protection Clause is not invoked, or what levels of scrutiny the Delaware courts would apply. This is yet another reason to seek guidance from the Delaware Supreme Court in this unchartered area of Delaware constitutional law.

Indeed, in *Marzzarella*, this Court was overtly concerned about infringing on law-abiding citizens' core fundamental right to use arms for the lawful purpose of self-defense. *Marzzarella*, 614 F.3d at 89. There, the Court applied intermediate scrutiny to a statute criminalizing the use of a firearm with an obliterated serial number. *Id.* at 97. The Court specifically noted that the plaintiff in *Marzzarella* was not a **law-abiding** citizen and was not using the weapon for a **lawful purpose**; therefore, strict scrutiny was not implicated because the statute at issue did not burden the core purpose of the Second Amendment. *Id.* at 98.

In this case, strict scrutiny of WHA's Policies is required because they infringe on law-abiding citizens' core fundamental right to self-defense.

## 1. The Common Area Provision is Not Narrowly Tailored.

To survive strict scrutiny, governmental action must be narrowly tailored to advance a compelling government interest. *Turnbull*, 668 A.2d at 1379. WHA's Provisions cannot satisfy that requirement. Although safety is a compelling governmental objective, it is not an absolute, unrestricted objective that invalidates all other concerns; and it cannot, as a matter of law, justify restricting Residents' fundamental right to self-defense where it is most necessary—in public housing where residents "are over twice as likely to suffer from firearm-related victimization . . . ." U.S. Dept. of Hous.

& Urban Dev., *In the Crossfire: The Impact of Gun Violence on Public Housing Communities* (1999), available at https://www.ncjrs.gov/pdffiles 1/nij/181158.pdf (cited in Brady Brief at 11-12).

In retort, WHA argues that it tailored the Common Area Provision to ensure the safety of all of its tenants, and adds that "No WHA resident should be forced to be subject to a needlessly increased risk of harm from firearms in common areas." However, as Residents asserted in their Opening Brief, mere recitation of unsubstantiated concerns about safety without supportive evidence is insufficient to withstand intermediate scrutiny. (Opening Br. at 39 (citing *United States v. Skoien*, 587 F.3d 803, 814 (7th Cir. 2009)).[11] WHA provides no sound basis to support its defective syllogism attempting to connect firearms with an increase in harm to residents.

---

[11]    WHA correctly points out that *Skoien* was vacated (Answering Br. at 34); however, the single proposition for which Residents cite *Skoien*—that there must be actual evidence that the challenged restriction will inure to a public benefit—remains intact. *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010); *Moore*, 2012 WL 6156062, at * 6 (expressing the need for a "stronger showing" of empirical evidence than the "extensive empirical evidence" that was required in *Skoien* to justify less curtailment of gun rights). The Third Circuit also applies this standard. *See Contractors Ass'n of E. Pa. v. City of Phila.*, 6 F.3d 990, 1011 (3d Cir. 1993) (holding that intermediate scrutiny requires the government to present "probative evidence in support of its stated rationale for [infringing on equal rights]," and a "three-page affidavit alleging gender discrimination in the construction industry" and conclusory allegations were insufficient evidence).

The case cited by WHA, *Pagan v. Fruchey*, 492 F.3d 766, 777-78 (6th Cir. 2007), supports Residents' argument that WHA must provide evidence that the Provisions are justified. In *Pagan*, the court held that intermediate scrutiny "charges the government with the burden of justifying its chosen form of regulation. Thus, even common sense decisions require some justification." *Id.* As such, WHA's contention that "common sense will suffice" in this case is wrong. (Answering Br. at 35). Actual evidence is required. *Contractors Ass'n of E. Pa.*, 6 F.3d at 1011. And the actual evidence does not support WHA's position in this case.

What the available evidence shows is that Residents have a substantial need to protect themselves: "Persons residing in public housing are over twice as likely to suffer from firearm-related victimization as other members of the population. There is a strong correlation between income and violent crime; thus the low-income population in public housing is especially vulnerable to gun violence." U.S. Dept. of Hous. & Urban Dev., *In the Crossfire: The Impact of Gun Violence on Public Housing Communities* (1999), available at https://www.ncjrs.gov/pdffiles1/nij/181158.pdf (cited in Brady Brief at 11-12). In fact, **the evidence available "is consistent with concluding that a right to carry firearms in public may promote self-defense."** *Moore*, 2012 WL 6156062, at * 9 (emphasis added).

Further, there is no convincing evidence that gun control regulations such as the Common Area and Reasonable Cause Provisions at issue here reduce criminal violence. *See Moore*, 2012 WL 6156062, at * 4 (citing Robert Hahn, *et al., Firearms Laws and the Reduction of Violence: A Systematic Review,* 28 AM. J. PREV. MED. 40, 59 (2005) ("Based on findings from national law assessments, cross-national comparisons, and index studies, evidence is insufficient to determine whether the degree or intensity of firearms regulation is associated with decreased (or increased) violence.")). Indeed, **the *Moore* Court, relying on the available empirical data, found that laws that prohibit gun carrying outside the home have little impact on public safety in states that utilize a permit system for public carry, like Delaware.** 2012 WL 6156062, at * 4 (quoting Philip J. Cook, Jens Ludwig, & Adam M. Samaha, *Gun Control After* Heller: *Threats and Sideshows from a Social Welfare Perspective,* 56 U.C.L.A. L. REV. 1041, 1082 (2009)) (acknowledging that there would be "'relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home, assuming that some sort of permit system for public carry is allowed to stand.'").

The Brady Center counters that "courts have repeatedly upheld states' constitutional authority to enforce terms of use of their public housing

facilities in the interests of safety," including "the right to enforce specific gun restrictions." (Brady Br. at 12). But the only case it cites upheld a total ban on firearms on public housing property—even in individual units, which The Brady Center incorrectly maintains "would be constitutional." (Brady Br. at 12, citing *Richmond Tenants Org., Inc. v. Richmond Redev. & Hous. Auth.*, 751 F. Supp. 1204, 1214 (E.D. Va. 1990)).[12] The *Richmond Tenants* case does not survive the reasoning of the Seventh Circuit in the recent decision of *Moore v. Madigan*.

Further, The Brady Center has not provided any authority to suggest that Delaware would use a "rationally related" analysis to construe fundamental constitutional protections.

### 2. The "Reasonable Regulation" Test is Not Applicable Where State Action Infringes on the Core Fundamental Right to Self-Defense.

The Brady Center argues that the "reasonable regulation" test—by which it really means nothing more than "rational basis"—should apply to Residents' challenge to the WHA Provisions. (Brady Br. at 8-9). This is not

---

[12] The *Richmond Tenants* court noted that the provision at issue in that case "prohibit[ing] the possession of any weapons, does not usually appear in public housing leases. The Court has found no evidence that HUD or any court has considered the propriety of such provisions." *Id*.

accurate.[13] Under established Delaware law, the reasonable regulation test is applied to statutory privileges, not constitutional guarantees. *See Baynard v. Delaware*, 518 A.2d 682, 685 (Del. 1986) (holding that ". . . because peremptory challenges are a creature of statute rather than of constitution, they are privileges which are subject to reasonable regulation as to the manner of their exercise.").

This case expressly concerns Residents' fundamental rights guaranteed by the Delaware Constitution. Accordingly, the reasonable regulation test is inapplicable.

The Brady Center incorrectly asserts that Delaware applied the reasonable regulation test (articulated in *Wisconsin v. Hamdan*, 665 N.W.2d 785, 820 (Wis. 2002)) in *Griffin*.[14] (Brady Br. at 9). While the Delaware Supreme Court adopted the three-part test set out in *Hamdan* to determine

---

[13]    "Obviously, the same [rational-basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." *Heller,* 554 U.S. at 628 n.27.

[14]    *Hamdan*'s use of the term "reasonableness" had teeth, unlike The Brady Center's consistent position that all infringements of rights are always "reasonable." *See Hamdan*, 665 N.W.2d at 790 ("Strict application of the CCW statute effectively disallowed the reasonable exercise of Hamdan's constitutional right to keep and bear arms for the lawful purpose of security."); *id.* at 799 n.19 ("the legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of this right where the governmental purpose can be more narrowly achieved.") (citation omitted).

"whether the CCDW statute is unconstitutional as applied," that test does not concern the reasonableness of a regulation. Further, even if the test applied in *Griffin* was coined "reasonable regulation," (which it is not), the Delaware Supreme Court did not adopt that test to review **all** challenges implicating § 20 of the Delaware Constitution. *Griffin*, 47 A.3d at 491.

## IV. GOVERNMENT PROPRIETORS DO NOT HAVE CARTE BLANCHE TO INFRINGE ON CONSTITUTIONALLY GUARANTEED FUNDAMENTAL RIGHTS

WHA argues that as a government landlord, it can enforce lease provisions that violate Residents' constitutional rights, without being "subjected to the heightened review to which its actions as a lawmaker may be subject." (Answering Br. at 30 (quoting *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992))). While WHA does not (and could not) legislatively enact laws, its lease provisions nonetheless regulate the possession and use of firearms beyond what is permissible under the Delaware Constitution.

WHA relies on *Lee*, a First Amendment case concerning the freedom of speech (solicitation) in an airport, which is both factually and legally irrelevant to the present case. 505 U.S. 672. Foremost, a government-proprietor's ability to limit free speech on its property consistent with First Amendment principles depends on the nature of the forum, i.e., whether the

property is public or nonpublic. *United States v. Kokinda*, 497 U.S. 720, 726 (U.S. 1990). Given the United States Supreme Court's holding in *Heller* that the right to bear arms is most acute in the home, it is legally impractical to use comparable First Amendment precedent on the government-as-proprietor issue to the Second Amendment, leaving the authority cited by WHA for this issue irrelevant. 554 U.S. at 679

Similarly, The Brady Center argues that a state may "control the use of its own property," and cites the example of a post office, as if that bears any resemblance to housing. (Brady Br. at 9-10). Relying on *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) and *Daniel v. City of Tampa*, 38 F.3d 546, 550 (11th Cir. 1994), The Brady Center argues that WHA has the authority to restrict gun carrying on its property (a government building) in the interest of safety. (Brady Br. at 2). Those cases, which involve trespassing on public housing authority property by a non-resident, do not implicate any constitutional or fundamental rights, and are immaterial to the constitutional state-law issues presented in this appeal, regarding Residents' right of self-defense.

## V.  WHA'S POLICIES ARE PREEMPTED BY STATE LAW

WHA argues that lease provisions of a public housing authority are not "legislative activity," and therefore, are not susceptible to preemption.

(Answering Br. at 38-39). Further, relying on *Wilmington Housing Authority v. Williamson*, 228 A.2d 782, 788 (Del. 1967), WHA asserts that since it is neither a municipality nor a county, the Provisions are not expressly preempted by Delaware law. (Answering Br. at 40-41).

First, while WHA is technically correct that it has not authoritatively been called a "municipality" or "county," that is a distinction without a difference. (Answering Br. at 40). The Delaware Attorney General and the District of Delaware have explicitly stated that WHA is "not a state agency" for specific purposes.[15] (Opening Br. at 47). Those authorities did not go beyond the issue presented to them and provide dicta on an alternative categorical title; they decided the issue presented: whether the WHA is a state agency. In both instances the answer was "no." (Opening Br. at 47).

Further, as explained by noted constitutional law scholar, David Kopel, it is understood that state law limiting or prohibiting municipalities from promulgating gun restrictions is an express form of preemption for public housing authorities. David B. Kopel, *The Right to Arms in the Living Constitution*, 2010 Cardozo L. Rev. De Novo 99, 123 (2010) ("Forty-six states [including Delaware] now have limited or complete preemption of

---

[15] Both authorities cited by Residents were decided after *Williamson*, and therefore contradict WHA's assertion that *Williamson* "reflects the state of the law generally." (Answering Br. at 41).

local firearms laws."); *see also* Jamie L. Wershbale, *The Second Amendment Under a Governmental Landlord: Is There a Right to Keep and Bear Legal Firearms in Public Housing?*, 84 St. John's L. Rev. 995, 1030 (2010) ("A form of preemption adopted in many states is a limitation or prohibition on the ability of counties and municipalities to exercise "home-rule power" to enact firearm restrictions."). These state-law preemption statutes "protect[] citizens from infringement of their federal Second Amendment rights, and from infringements of their state constitutional rights to arms and rights to self-defense." David B. Kopel, *Limited Preemption of Firearms Laws: A Good Step for Civil Rights*, Independence Instit. Issue Backgrounder, No. 2003-B, Mar. 11, 2003, available at http://www.davekopel.org/2A/IB /Limited-Preemption.htm.

WHA further challenges Residents' preemption claim by arguing that "[t]he proper manner for challenging a contractual obligation is to challenge its legality under existing law . . . ." (Answering Br. at 39). This argument is made wholly disingenuous by WHA's subsequent argument that Residents are not statutorily authorized to assert a private right of action against WHA to challenge the Provisions because WHA acted within its statutorily granted authority. (Answering Br. at 43).

## VI.    CONCLUSION

For the reasons stated above and in Residents' Opening Brief,

Residents respectfully request that this Court certify the questions of state-

law in this case to the Delaware Supreme Court. In the alternative, this Court

should reverse the District Court's judgment on the state-law claims and

remand the case to the District Court with directions to dismiss the state-law

claims without prejudice.

Respectfully submitted,

By:    /s/ Francis G.X. Pileggi
Francis G.X. Pileggi (Del. No. 2624)
Penelope O'Connell (Del. No. 4898)
Jill Agro (Del. No. 4629)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667
*Attorneys for Appellants Jane Doe*
Dated: December 17, 2012    *and Charles Boone*

# CERTIFICATIONS

I certify that I am a member of the bar of the United States Court of Appeals for the Third Circuit and am authorized to practice in this Court.

Pursuant to Local Rule 31.1(c), I certify that the text of the electronic brief is identical to the text in the paper copies, and that the virus detection program, Symantec version 10.1.5, has been run on each file electronically filed via CM/ECF and that no virus was detected.

Pursuant to Fed. R. App. P. 32(a)(7)(c), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,967 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 7 in 14-point Times New Roman font.

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Del. No. 2624)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
302.655.3667
*Attorney for Appellants Jane Doe*
*and Charles Boone*

Dated: December 17, 2012