UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3433
_____

JANE DOE; CHARLES BOONE,
                                                  Appellants

v.

WILMINGTON HOUSING AUTHORITY; FREDERICK S. PURNELL, SR., in his
official capacity as executive director of the Wilmington Housing Authority

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. Action No. 1:10-cv-00473)
District Judge: The Honorable Leonard P. Stark
_____

Argued May 23, 2013
_____

Before: RENDELL and GREENAWAY, JR., *Circuit Judges*,
and ROSENTHAL[*], *District Judge*

Francis G.X. Pileggi, Esq. [ARGUED]
Penelope B. O'Connell, Esq.
Jill K. Agro, Esq.
Eckert, Seamans, Cherin & Mellott, LLC
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801

*Counsel for Appellants*

Barry M. Willoughby, Esq. [ARGUED]

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

Lauren E.M. Russell, Esq.
Teresa A. Cheek, Esq.
Young, Conway, Stargatt & Taylor, LLP
100 North King Street
Rodney Square
Wilmington, DE 19801

      *Counsel for Appellees*

Adam K. Levin
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, D.C. 20004

      *Counsel for The Brady Center to Prevent Gun Violence, Amicus Appellee*

_____

## CERTIFICATION OF QUESTIONS OF LAW
_____

This is an appeal to the United States Court of Appeals for the Third Circuit from a final order entered by the United States District Court for the District of Delaware.  We believe that this appeal raises unresolved questions about how Article I, § 20 of the Delaware Constitution limits restrictions that may be placed on the right to bear arms.  We submit these questions to the Supreme Court of Delaware through the certification procedure outlined in Third Circuit Local Appellate Rule 110 and Third Circuit Internal Operating Procedure 10.9.  We respectfully request that your Court accept this certification under Rule 41 of the Rules of the Supreme Court of the State of Delaware

2

and provide us guidance in resolving these questions under Article I, § 20 of the Delaware Constitution.

## I. Factual and Procedural Background

This appeal concerns provisions in leases for apartments that a public housing authority owns or manages. The lease provisions restrict when residents, their household members, and their guests may carry and possess firearms in the common areas of the apartment buildings.

Appellants Jane Doe and Charles Boone filed this suit in the Delaware Court of Chancery against the Wilmington Housing Authority (WHA), a nonprofit agency of the State of Delaware that provides housing to low-income individuals and families, and against its Executive Director, Frederick Purnell. Jane Doe lived in the Park View, a privately owned housing facility managed by the WHA. Doe's lease required her to follow the "House Rules." The original version of House Rule 24, in effect when the suit was filed, stated, "Tenant is not permitted to display or use any firearms, BB guns, pellet guns, slingshots, or other weapons on the premises." Charles Boone lived in the Southbridge Apartments, a public housing facility owned and operated by the WHA. Boone's lease stated that residents are "[n]ot to display, use, or possess . . . any firearms, (operable or inoperable) or other dangerous instruments or deadly weapons as defined by the laws of the State of Delaware anywhere on the property of the Authority." Residents

were subject to eviction if they, their household members, or their guests violated the lease provisions and rules.

Doe and Boone alleged that the restrictions on gun use and possession violated their right to bear arms as provided in the Second Amendment to the United States Constitution and in Article I, § 20 of the Delaware Constitution. They also alleged that the WHA firearms rules and policies were preempted by Delaware law and that the WHA exceeded its statutory authority by enacting them.

The defendants removed the suit to the United States District Court for the District of Delaware on June 1, 2010. On June 28, 2010, the Supreme Court of the United States decided *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), holding that the Second Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. The defendants informed the District Court that they were reevaluating the constitutionality of the WHA firearm rules and policies in light of *McDonald*.

On October 25, 2010, the WHA adopted a new firearms policy for its public housing units, including Southbridge. The Revised Policy provides in relevant part that residents, household members, and guests:

> 3. Shall not display or carry a firearm or other weapon in any common area, except where the firearm or other weapon is being transported to or from the resident's unit, or is being used in self-defense.
>
> 4. Shall have available for inspection a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership, possession, or transportation of any firearm or other weapon, including a license to carry a concealed weapon as required by 11 Del. C. § 1441, upon

4

>request, when there is reasonable cause to believe that the law or this Policy has been violated.

On December 13, 2010, the WHA replaced the Park View's House Rule 24 with amended Rule 24, which was substantively identical to the Revised Policy.

Doe and Boone filed an amended complaint challenging paragraph 3, the Common Area Provision, and paragraph 4, the Reasonable Cause Provision. The parties filed cross-motions for summary judgment.

The District Court granted the summary judgment motion filed by the WHA and denied the motion filed by Doe and Boone. *Doe v. Wilmington Hous. Auth.*, 880 F. Supp. 2d 513 (D. Del. 2012). The District Court found no Second Amendment violation, and there is no appeal from that ruling. The District Court applied the same analysis to the challenge under § 20 of the Delaware Constitution and found no violation. The District Court found no legal merit to the preemption and scope-of-authority challenges.[1] The questions on which this panel seeks guidance from your Court concern the § 20 analysis.

In addressing the § 20 claims, the District Court noted that "[t]here is scant judicial authority interpreting Delaware's constitutional right to bear arms, and none is directly relevant to the issue now before this Court." *Id*. at 538. The District Court granted summary judgment on the § 20 claims for the same reasons it granted summary judgment on the Second Amendment claims. *Id*. at 539.

---

[1] Doe and Boone timely appealed the District Court's denial of the preemption and scope-of-authority challenges. However, those issues do not form part of this certification request.

## II. The Second Amendment

The District Court analyzed the Second Amendment issues under recent Supreme Court decisions, including *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald*, 130 S. Ct. 3020. *See Doe*, 880 F. Supp. 2d at 525–26. The District Court also examined the circuit court cases applying *Heller* and *McDonald*, including our opinion in *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 958 (2011). The District Court noted that all had adopted a form of intermediate rather than strict scrutiny to analyze laws and policies that restrict firearm possession in public spaces as opposed to in the home. *Doe*, 880 F. Supp. 2d at 533–35 (citing *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 756; *Marzzarella*, 614 F.3d at 97; *United States v. Skoien*, 587 F.3d 803, 814 (7th Cir. 2009), *rev'd en banc*, 614 F.3d 638 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1674 (2011)); *see also Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96–97 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (decided after *Doe* and applying intermediate scrutiny to a state law restricting an individual's ability to carry firearms in public); *cf. Moore v. Madigan*, 702 F.3d 933, 941–42 (7th Cir. 2012) (holding that the Second Amendment protects the right to bear arms outside the home, without deciding the appropriate level of scrutiny to apply to a law that burdens that right).

The District Court followed *United States v. Marzzarella*, examining:

whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is

6

> complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

*Doe*, 880 F. Supp. 2d at 526–27 (quoting *Marzzarella*, 614 F.3d at 89). Applying this analysis, the District Court first assumed that the Revised Policies fell within the Second Amendment's scope, *Doe*, 880 F. Supp. 2d at 528–30, then applied intermediate scrutiny, *id*. at 533. The District Court applied intermediate scrutiny to assess the constitutionality of the Revised Policies on the basis that those policies do not prohibit residents from possessing firearms in their homes, but rather regulate "the manner in which Plaintiffs may lawfully exercise their Second Amendment rights." *Id.* at 533–34 (citing *Masciandaro*, 638 F.3d at 470–71 ("[T]his longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable. . . . [A] lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home.")). The District Court concluded that the two challenged paragraphs of the Revised Policies were reasonably related to important government interests in promoting and protecting the safety of public housing residents, guests, and employees. *Id*. at 535. The District Court found a reasonable fit between the Common Area Provision and the promotion of safety in shared areas of public housing complexes. *Id*. at 536. The District Court also found a reasonable fit between the Reasonable Cause Provision and the promotion of safety because obtaining a concealed-weapon permit requires training in gun safety and is a "reasonable mechanism for assisting with enforcement of the

7

Common Area Provision." *Id*. at 538. Doe and Boone did not appeal the District Court's ruling dismissing their Second Amendment claims, so this analysis remains the law of the case.

### III. Section 20 of the Delaware Constitution

The District Court dismissed the § 20 claims for the same reasons it dismissed the Second Amendment claim, applying the same analysis. Doe and Boone timely appealed the District Court's rulings on their state constitutional claims.

In 1987, before the Supreme Court of the United States decided *Heller* and *McDonald*, Delaware enacted Article I, § 20 of the Delaware Constitution. Section 20 provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." Delaware courts have considered § 20 on only a few occasions, most recently in *Griffin v. State*, 47 A.3d 487, 488–89 (Del. 2012). That case involved an as-applied challenge to a conviction for carrying a concealed deadly weapon without a license in the home. The defendant had been using a knife to open a box when police arrived in response to a domestic-disturbance call. The *Griffin* opinion noted that the right to bear arms "is not absolute." *Id*. at 488. *Griffin* applied a three-part test borrowed from the Wisconsin Supreme Court to decide whether § 20 protected the individual's right to carry a deadly concealed weapon in the home, so as to make the conviction unconstitutional:

> First, the court must compare the strength of the state's interest in public safety with the individual's interest in carrying a concealed weapon.

> Second, if the individual interest outweighs the state interest, the court must determine, "whether an individual could have exercised the right in a reasonable, alternative manner that did not violate the statute." Third, the individual must be carrying the concealed weapon for a lawful purpose.

*Id*. at 490–91 (citing *State v. Hamdan*, 665 N.W.2d 785, 808 (Wis. 2003)). Under the first part of that test, the defendant's interest before he was arrested outweighed the State's interest because "[h]e was in his home, using a knife to carry out the everyday household activity of opening a box." *Griffin*, 47 A.3d at 491. The defendant's interest outweighed the State's interest under the second part of the test because "it would be unreasonable to 'restrict the manner in which one could carry a legal weapon from room to room within one's home. . . .'" *Id*. (ellipses in original) (quoting *State v. Stevens*, 833 P.2d 318, 319 (Or. Ct. App. 1992)). The third part of the test was satisfied because opening a box was a lawful purpose. *Griffin*, 47 A.3d at 491. The opinion stated that "Griffin's constitutional right to bear arms authorized his carrying a concealed knife in his home," but "that does not end the inquiry." *Id.* After the police arrived, "the balance between [the defendant's] interest in carrying a concealed weapon in his home and the State's interest in public safety shifted in favor of the State." *Id*. "Griffin was no longer using the knife for household purposes, and his failure to reveal that he was carrying a weapon could have represented a serious threat to both the police and his girlfriend." *Id*. Your Court reversed the conviction and remanded the case for a new trial. Although your Court decided *Griffin* after the Supreme Court's decisions in *Heller* and *McDonald* and

9

our decision in *Marzzarella*, the opinion does not consider federal Second Amendment decisions in the § 20 analysis.

The few other § 20 cases that your Court has decided involved circumstances and issues far different from this case. *See Dickerson v. State*, 975 A.2d 791, 796 (Del. 2009) (affirming a conviction for carrying a concealed weapon without a license outside of the home); *Smith v. State*, 882 A.2d 762 (Del. 2005) (table cite) (concluding that § 20's passage did not alter the constitutionality of Delaware's license requirement for carrying concealed weapons); *Short v. State*, 586 A.2d 1203 (Del. 1991) (table cite) (holding that the right to bear arms "may be subject to reasonable restrictions for the public safety, including limitations on possession by persons with criminal records"). None of these cases analyzed the issues raised by the Common Area Provision and the Reasonable Cause Provision in the Revised Policies, including whether a "home" extends to a multi-family residential building's common areas; whether § 20 guarantees individuals a right to carry firearms outside the home or the scope of that right; whether and how the levels of scrutiny used in federal constitutional analysis apply in analyzing the balance of state and individual interests; and whether Delaware's authority to restrict constitutional rights such as the right to bear arms is different when it acts as a landlord rather than as a sovereign.[2]

---

[2] On the last issue, federal courts have recognized a difference when the government acts as a landlord in certain contexts. *See, e.g.*, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–79 (1992) (holding that the government

It is unclear from Delaware Supreme Court precedents whether, as the District Court assumed, your Court would follow federal Second Amendment jurisprudence in evaluating the challenges to the Revised Policies under § 20. On some occasions, your Court has interpreted provisions of the Delaware Constitution consistently with the federal analogs. *See, e.g.*, *Sanders v. State*, 585 A.2d 117, 144 (Del. 1990) (holding that the Eighth Amendment and Delaware's state constitutional counterpart both "demand[] that a death sentence be proportionate to a defendant's culpability and that it accomplish some legitimate penological end"). But your Court's decisions have also stated that the Declaration of Rights in the Delaware Constitution cannot always be interpreted identically to similar provisions in the federal Bill of Rights:

> The Declaration of Rights in the Delaware Constitution is not a mirror image of the federal Bill of Rights. Consequently, Delaware judges cannot faithfully discharge the responsibilities of their office by simply holding that the Declaration of Rights in Article I of the Delaware Constitution is necessarily in "lock step" with the United States Supreme Court's construction of the federal Bill of Rights.

*Dorsey v. State*, 761 A.2d 807, 814 (Del. 2000) (footnote omitted).[3]  So we seek your guidance.

---

may impose reasonable content-based speech restrictions in nonpublic forum property, as long as those restrictions are viewpoint-neutral); s*ee also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 U.C.L.A. L. Rev. 1443, 1475 (2009) ("[T]here is both precedent and reason for allowing the government acting as proprietor extra power to restrict the exercise of many constitutional rights on its property.").

[3]*See also Jones v. State*, 745 A.2d 856, 864–65 (Del. 1999) (identifying nonexhaustive criteria for determining whether a federal constitutional provision has an

## IV. Reasons for Certification

Under Rule 41 of the Rules of the Supreme Court of Delaware, this Court may certify questions of law to the Supreme Court of Delaware "if there is an important and urgent reason for an immediate determination of such questions by [the Supreme Court] and the certifying court or entity has not decided the question or questions in the matter." Del. Supr. Ct. Rule 41(a)(ii). We request certification because this case involves an original question of Delaware law, relating to the construction and interpretation of the Delaware Constitution. *See* Del. Supr. Ct. Rule 41(b).

The panel has examined the decisions of the Delaware state courts but has found none addressing whether Article I, § 20 of the Delaware Constitution protects a tenant's right to bear firearms in a public housing facility's common areas. Nor has this panel found Delaware court decisions providing guidance on the scope of protection under Article I, § 20 for an individual's right openly to carry a deadly weapon, either inside or outside the home. The cases do not give us clear guidance on what analysis Delaware courts would use when determining the constitutionality of policies and regulations that

---

identical meaning to a state counterpart, including: text, legislative history, preexisting state law, structural differences, matters of local concern, state traditions, and public attitudes); *Sanders*, 585 A.2d at 145 ("Delaware . . . remains a sovereign State, governed by its own laws and shaped by its own unique heritage. An examination of those laws and that heritage may, from time to time, lead to the conclusion that Delaware's citizens enjoy more rights, more constitutional protections, than the Federal Constitution extends to them. If we were to hold that our Constitution is simply a mirror image of the Federal Constitution, we would be relinquishing an important incident of this State's sovereignty.").

potentially infringe on an individual's rights under Article I, § 20. The answers to these questions determine the outcome of the present case.

The panel recognizes that if your Court does not grant this Petition, the panel may decide this appeal based on its best estimate of how the Delaware courts would interpret the state's Constitution. That decision would bind only the parties in the instant case. Because the panel's decision would not bind the Delaware courts, questions about the scope of Article I, § 20 and its application to other similarly situated tenants would remain undecided. In addition, principles of federalism and comity make this Court hesitant to opine on a matter of first impression of Delaware constitutional law.

The panel unanimously agreed to certify questions about whether the Revised Policies issued by the WHA are permissible under Article I, § 20 of the Delaware Constitution. The panel therefore respectfully requests that the Supreme Court of Delaware grant this petition.

## V. Conclusion

The following questions of law are certified to your Court for disposition:

(1) Whether, under Article I, § 20 of the Delaware Constitution, a public housing agency such as the WHA may adopt a policy prohibiting its residents, household members, and guests from displaying or carrying a firearm or other weapon in a common area, except when the firearm or other weapon is being transported to or from a resident's housing unit or is being used in self-defense.

(2) Whether, under Article I, § 20 of the Delaware Constitution, a public housing agency such as the WHA may require its residents, household members, and guests to have available for inspection a copy of any permit, license, or other documentation required by state, local, or federal law for the ownership,

possession, or transportation of any firearm or other weapon, including a license to carry a concealed weapon, as required by 11 Del. C. § 1441, on request, when there is reasonable cause to believe that the law or policies have been violated.

This court will retain jurisdiction of the appeal pending resolution of this certification.

By the Court,

/s/ Marjorie O. Rendell
Circuit Judge

Dated: July 18, 2013

cc: Jill K. Argo, Esq.
    Penelope B. O'Connell, Esq.
    Francis G.X. Pileggi, Esq.
    Lauren E. Moak Russell, Esq.
    Barry M. Willoughby, Esq.
    Adam K. Levin, Esq.

A True Copy:

Marcia M. Waldron, Clerk